William M. Simpich SB #106672
Attorney at Law
1736 Franklin Street, 10th Floor
Oakland, CA 94612
Telephone (415) 542-6809
E-mail: bsimpich@gmail.com

Stephen R. Jaffe SB #49539
The Jaffe Law Firm
101 California, Suite 2710
San Francisco, CA 94110
Telephone: (415) 618-0100
E-mail: stephen.r.jaffe@jaffetriallaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VOTING RIGHTS DEFENSE PROJECT, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ALEX PADILLA, et al., <br><br> Defendants. | Case No. C-16-02739 <br><br> DECLARATION OF WILLIAM SIMPICH AND REQUEST FOR LEAVE TO AMEND THE COMPLAINT TO CONFORM TO PROOF |

I, WILLIAM SIMPICH, declare:

1. I am one of the attorneys for the Plaintiffs.

2. As I mentioned in my request to shorten time, our intention in this case was to remedy the faulty application to vote by mail notices that came to my attention two weeks ago.

DECLARATION OF WILLIAM SIMPICH           1

3. I knew that time was of the essence, as I stated in my declaration to shorten time and will not repeat that discussion here. I will say that Mr. Joshua White was unwilling to admit that the elections department had made any mistakes on their materials and tried to convince me that I was 100% wrong on every issue. I could see a little room for debate but I thought his approach to this situation was not fact-based.

4. At Exhibit 11A-D of the Roguski Declaration, counsel has provided documents in my possession that are a major basis of our contentions regarding San Francisco. Exhibit 11A is a notice informing the voters how "to request a ballot that includes the presidential primary contest of one of these parties, mark the name of the party on the attached postage-paid postcard, and sign and return the postcard no later than April 18. If you do not request the ballot of one of these parties, your ballot will not include a contest for President." The impact to the reasonable voter is clear – if you don't return the postcard by April 18, your ballot will not include a contest for President. Ms. Mena, in her declaration, explains that she changed her registration from NPP to Democrat to heighten the chance she could vote for President after seeing this notice shortly after April 18.

5. I went to the Elections office on Thursday, May 19 and obtained a copy of the postcard that was attached to Exhibit 11-A by showing 11-A to the election worker and asking for a copy of the attached postcard. That copy is attached as Exhibit 11B to the Roguski Declaration. It contains a request for a vote-by-mail ballot but provides the wrong date – pursuant to Elections Code 3006, any application for a vote by mail ballot such as Exhibit 11B must be requested by May 31. This application states that the deadline is June 1. The consequence of

DECLARATION OF WILLIAM SIMPICH                 2

missing this deadline will mean that voters by mail will not receive by mail their ballot to vote for President, even though they are expecting it. It is a matter of common knowledge that a high percentage of California voters vote by mail. On information and belief, my understanding is that the number varies between ½ to 2/3 of the populace. Similarly, it is common knowledge that a substantial number of voters in the state are no party preference; my understanding is that number is somewhere between 23% to 25%. This indicates that hundreds of thousands of NPP votes are at stake in this primary election; especially in light of a recent May 25 US News & World Report article stating that at that time 50% of the NPP voters are Democrats, but only 14% of them at that time had received vote-by-mail ballots back in the mail. This statistics are found in this widely circulated US News and World Report article: http://www.usnews.com/news/articles/2016-05-24/bernies-ballot-burden-in-california. Although this article contends that Bernie Sanders may be aided by greater NPP or independent turnout, others may be able to argue that Hillary Clinton will benefit from greater NPP or independent voter turnout. The fact that some of the Plaintiffs support Sanders or the American Independent Party, or that plaintiffs' counsel likes Sanders, or that City Attorney Dennis Herrera has been identified publicly as a Clinton supporter should not matter in the slightest. It is understandable that passions might run high and people might have strong feelings, but what is at stake is the right to vote and applicable laws and procedures that protect that right.

6. Yet another problem with the City and County of San Francisco is that they sent out the Voter Information Pamphlet and Sample Ballot in early May. I discussed my problem with this Mr. White in mid-May in our letter exchange. It is his

belief that the Elections Code 3006(c) to all voter only needs to be given to NPP voters. It is my belief it needs to be given to all voters pursuant to the statute and the statutory scheme of which 3006 is a part. Section 3000 states in essence that it is to be construed in a light most helpful to voters. I believe that all voters need to have access to the 3006 notice in the statute, because some of those voters may have switched to NPP status or may be considering such a switch, and they are entitled to this information in order to make an informed decision. Mr. White is of the completely opposite opinion, saying that providing such a notice in an application to vote by mail would be more confusing to voters. It is clear that careful wordsmithing can address that issue while ensuring the rights of all. For the record, I went online and noticed that the County of Santa Barbara took the same approach on its sample ballot materials as CCSF did, and I am concerned that this error is being replicated throughout the state. A document contrasting the party and NPP sample ballot in San Francisco is attached as Exhibit 11C in the Roguski declaration, I provided these materials to Mr Roguski.

7. Yet another problem with both counties is that they are distributing the applications to vote by mail by electronic mail on their website. See Exhibit 8-9, Roguski Declaration. Counsel inform me that in both counties, if you enter your data into the form, then the NPP data is provided to you and you get that information. However, it is a "distribution" to post these forms on a public website where citizens perusing the website and trying to make intelligent decisions are not given the NPP information unless they log their data into the site and push "submit". This violates Election Code 3006© and 3007.7, which incorporates 3006(c) in its provisions in the electronic context of "distribution". I

DECLARATION OF WILLIAM SIMPICH                                    4

have been unable to get San Francisco or Alameda to change this practice, but I did convince San Mateo County to do so and we did not sue them as a result of that positive gesture.  The Roguski Declaration, as a general matter, chronicles from Exhibits 1-14 defects in applications pursuant to 3006 as well as faulty instructions throughout the state, and shows why we ask the court to strongly consider statewide relief in this case.

8. I should also add that San Francisco failed to inform their voters pursuant to 3006(b)(3) that voters applying to vote by mail have the right to deliver their application directly to the elections county office by May 31.  They are not limited to having to do it by mail.  On a day such as today, May 28, it is not practical to submit the application by mail.  Far better to go in during these last slow days of the election period by May 31 and review the materials in a calm setting before deciding how to return the ballots to a polling place.

9. Voters are suffering from great confusion.  Besides the aforementioned Ms. Mena's confusion that led to her switch from NPP to Democratic, plaintiff and NPP registrant Ms. Daims is concerned as well about whether she will be able to vote the Democratic ballot.  Also concerned is Gary Remer, a voter in Monterey, whose declaration shows that he made a similar switch and witnessed great confusion in this county board of elections about who gets to vote in this election for President and how.   Also concerned is Richard Troy, a voter in Alameda County:  His detailed declaration shows that despite his deep interest in the process of voting, his experiences with the county board of elections in Alameda left him completely confused.  Mimi Kennedy, a veteran poll worker in Los Angeles County, recounts how many people have made mistakes in the past about

thinking that the American Independent Party was the same as no party preference; how many voters are forced to vote provisionally due to failure to bring their vote-by-mail ballots with them to the polls to "surrender" for a replacement ballot; and several other issues that illustrate why voters are suffering from great confusion with this primary.

10. As I never heard from Alameda County counsel despite my post and my call to the defendant Tim Dupuis on May 13, 2016, I filed suit against both entities and the Secretary of State on May 20. I learned that there was an issue in counties about forcing NPP voters to vote provisionally if they wanted to vote for President, as in San Diego (see Declaration of Jennifer Abreu and Exhibits – even the training materials include this admonition to give NPP presidential voters provisional ballots – on information and belief, these votes are not included in the count until two to four weeks after the election, and only 85% of the time according to leading voter analyst Paul Mitchell), so I amended the complaint to include that issue. A colleague served the Secretary of State on May 23, I served Alameda County on May 25, and I had the City served on May 28 even though Mr. White had the amended complaint and we have been in steady communication since May 13 (unfortunately, we agree on very little).

11. However, in the days ahead I was provided a number of very serious reports stating that in some counties the poll workers were being trained to not inform NPP voters that they had the right to receive a Presidential primary ballot. I sifted through these reports and obtained declarations from the aforementioned Ms. Abreu of San Diego, Jeff Lewis of Santa Clara County, and Ashley Beck of Orange County. All of them said that they were told not to inform the voter of

this right, but to provide the Presidential primary ballot only when the voter asked for it.

12. Conversely, witnesses such as Michelle Jenab stated that they were trained to ask the NPP voter if they would like a Presidential primary ballot.  (Note that despite my best efforts I was able to include where she signed the document, but she informed me that she signed it in the County of Los Angeles on May 26 – the date is reflected in the electronic signature.) Joshua White, the attorney for the City and County of San Francisco on election matters as I understand it from my conversations with him, has told me that the City is informing NPP voters that they can request a Presidential primary ballot, and that it is reflected in their training materials, and I presently have no evidence to dispute this assertion and do not make this request regarding the San Francisco defendants.

13. However, the Secretary of State's counsel Ms. Sharon O'Grady informed me on May 27 that it is her understanding that the law is that the voter must request the ballot and that there is no duty of the official to offer the ballot – that was my understanding of my conversation with her on that point.  She did not inform me of the statute, if there is one.  Her own training materials illustrate that her office states that NPP voters should be advised of the right to obtain a Presidential ballot, a copy is attached as Exhibit 1 to this declaration, see page 3.

14. The County of Alameda has written me and states that their training materials show that poll workers are trained to inform the NPP voter of their right to receive a Presidential ballot.  Our two Alameda County poll worker witnesses are Gabrielle Dolphin (who is a poll worker judge) and pollworker Dawn DelMonte.  Ms. Dolphin came away from her training with the understanding that individual

poll workers were free to do as they liked – to inform or not to inform the NPP voter that they had the right to request a Presidential party ballot.  Ms. DelMonte had the experience of her trainer contradicting the training video which said that the poll worker shall inform the NPP voter of the right to request a Presidential party ballot.  She says the trainer said do not provide that information, but wait for the voter to request a Presidential party ballot.  In the last 24 hours, Ms. DelMonte was contacted by an individual working with elections who engaged in extensive inquiry about Ms. DelMonte's recollection – Ms. DelMonte believes that others may have been listening to this phone call.  Counsel wishes to advise the court that Plaintiffs would like to reserve the right to call one or two of these Alameda County witnesses in order to clarify what happened in this last 24 hours and previous period as well as it appears this sequence of events will be a major matter of contention.

15. We are asking for an order for poll workers to ask NPP voters whether they want to vote for a presidential candidate in any of the three crossover parties. A training manual doesn't provide a remedy for an NPP voter who doesn't know their rights. The manual is not dispositive of what is actually said to voters at the polling places, or how the trainers were actually trained. The words in the manual do not prove what words are said to the voter in the polling place, or what words were said to the trainer in the training.

16. The content of the pages relating to crossover voting for nonpartisan voters in the Alameda County poll worker clerk manual (pp 43-44, which counsel believes is what was cited as guidance by Alameda county counsel yesterday) is the same as the one for judges/inspectors (pp 67-70, see exhibit to Gabrielle Dolphin's

declaration), except visually more material is crammed onto one page for the clerks. In two instances, at the bottom of the respective slides, poll workers are told to "advise the Nonpartisan voters they are entitled to vote nonpartisan or in one of the following parties: American Independent, Democratic, Libertarian." The "Roster-Index Page: Crossover Voting for Nonpartisan Voters" page of the inspector manual appears to be an empty green field below the title. (Page 70 in the judge/inspector manual, and not in the clerk manual at all).

13. In both of the Alameda County poll worker training manuals, there is no mention of Presidential candidates in the nonpartisan crossover voting, unlike in the Los Angeles poll worker training handbook, which specifically instructs poll workers to ask NPP voters whether they wish to vote for the Presidential candidate for the American Independent, Democratic or Libertarian party. This subtle difference points to an example of how low information voters can be confused. They might not understand that their No Party Preference / NP/ Nonpartisan ballot is missing a Presidential candidate, and most importantly, that the only way they get to vote for a Presidential candidate is by casting one of the crossover ballots. They might not realize that the crossover ballots simply only add the Presidential candidate to their choice of down ballot nonpartisan candidates and that they are not betraying their independent status by choosing a crossover ballot.

It is entirely possible that the County of Alameda is working very hard to make the voting experience a positive one, and its efforts should be commended, however, it is in these subtle wording and visual choices whereby important information has been omitted to the serious detriment of Nonpartisan voters. We have identified these subtle differences, and are concerned that many Nonpartisan voters are not informed

in a sufficiently clear manner what their rights and duties are. We realize it is a daunting task, but we also wish to help those voters get all the information they need, in as clear and accurate way as possible, to successfully vote according to their wishes.

I declare under penalty of perjury that the foregoing is true and correct and of my own personal knowledge except for those matters stated on information and belief, and as for those matters I believe them to be true. Executed on May 28, 2016, in San Francisco, California.

_____
WILLIAM SIMPICH

PLAINTIFFS' FIRST AMENDED COMPLAINT

1  Proof of Service

3  I am not a party to this action. On May 20, 2016, I caused a copy of the Summons and Complaint
4  and the ADR packet to be served to:
5  _____

6  I declare under penalty of perjury that the foregoing is true and correct. Executed on May 20,
7  2016, in Oakland, California.

9  _____
10 WILLIAM M. SIMPICH

PLAINTIFF'S OPPOSITION TO DEFENDANTS' DEMURRER