William M. Simpich SB #106672
Attorney at Law
1736 Franklin Street, 10th Floor
Oakland, CA 94612
Telephone (415) 542-6809
E-mail:  bsimpich@gmail.com

Stephen R. Jaffe SB #49539
The Jaffe Law Firm
101 California, Suite 2710
San Francisco, CA 94110
Telephone:  (415) 618-0100
E-mail:  stephen.r.jaffe@jaffetriallaw.com

Attorneys for Plaintiffs


UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA


| | |
|---|---|
| VOTING RIGHTS DEFENSE PROJECT, et al.,<br><br>                    Plaintiffs,<br><br>           v.<br><br>ALEX PADILLA, et al.,<br><br>                    Defendants. | Case No**.  C-16-02739-WHA**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF**<br><br>Date:  6/1/16<br>Time: 11:00 am<br>Dept:  8, Hon. William Alsup |

The Plaintiffs have stated the essential relief sought in their Notice of Motion, which is summarized here.

1.   A public service announcement to all on the mailing lists used by the Defendants for their customary communications, including communications about this case, which enunciate the central points set forth in our Notice of Motion – essentially, to inform NPP voters of the key things they must do to assure their right to vote for President, and to notify poll workers and election officials that these NPP voters shall have the right to be informed that they may receive a Presidential primary ballot.

DECLARATION OF CLARA DAIMS

2. Plaintiffs ask that this be a statewide injunction, informing the Secretary of State and all county officials to use email, internet, radio and TV to get a consistent and concise message out so that the defects detailed in this brief and the declarations be resolved.

3. Plaintiffs also seek that the defendants be enjoined to order their poll workers to inform all NPP voters of their right to receive a presidential ballot and that this be enforced statewide against all election officials.  Plaintiffs do not have evidence that this is being done in San Francisco, but have contradictory evidence in Alameda County and by the Secretary of State's failure to enforce what is apparently its own policy.

    Plaintiffs' intention in this case was to remedy the faulty application to vote by mail notices that came to counsel's attention two weeks ago.  For ease this argument is taken directly from counsel's declaration:

4.  I knew that time was of the essence, as I stated in my declaration to shorten time and will not repeat that discussion here.  I will say that Mr. Joshua White was unwilling to admit that the elections department had made any mistakes on their materials and tried to convince me that I was 100% wrong on every issue.  I could see a little room for debate but I thought his approach to this situation was not fact-based.

5. At Exhibit 11A-D of the Roguski Declaration, counsel has provided documents in my possession that are a major basis of our contentions regarding San Francisco.  Exhibit 11A is a notice informing the voters how "to request a ballot that includes the presidential primary contest of one of these parties, mark the name of the party on the attached postage-paid postcard, and sign and return the postcard no later than April 18. If you do not request the ballot of one of these parties, your ballot will not include a contest for President."   The impact to the reasonable voter is clear – if you don't return the postcard by April 18, your ballot will not include a contest for President. Ms. Mena, in her declaration, explains that she changed her registration from NPP to

DECLARATION OF CLARA DAIMS

Democrat to heighten the chance she could vote for President after seeing this notice shortly after April 18.

6.  I went to the Elections office on Thursday, May 19 and obtained a copy of the postcard that was attached to Exhibit 11-A by showing 11-A to the election worker and asking for a copy of the attached postcard.  That copy is attached as Exhibit 11B to the Roguski Declaration.  It contains a request for a vote-by-mail ballot but provides the wrong date – pursuant to Elections Code 3006, any application for a vote by mail ballot such as Exhibit 11B must be requested by May 31.  This application states that the deadline is June 1.  The consequence of missing this deadline will mean that voters by mail will not receive by mail their ballot to vote for President, even though they are expecting it.  It is a matter of common knowledge that a high percentage of California voters vote by mail.  On information and belief, my understanding is that the number varies between ½ to 2/3 of the populace.  Similarly, it is common knowledge that a substantial number of voters in the state are no party preference; my understanding is that number is somewhere between  23% to 25%.   This indicates that hundreds of thousands of NPP votes are at stake in this primary election; especially in light of a recent May 25 US News & World Report article stating that at that time 50% of the NPP voters are Democrats, but only 14% of them at that time had received vote-by-mail ballots back in the mail.   This statistics are found in this widely circulated US News and World Report article:  http://www.usnews.com/news/articles/2016-05-24/bernies-ballot-burden-in-california.    Although this article contends that Bernie Sanders may be aided by greater NPP or independent turnout, others may be able to argue that Hillary Clinton will benefit from greater NPP or independent voter turnout. The fact that some of the Plaintiffs support Sanders or the American Independent Party, or that plaintiffs' counsel likes Sanders, or that City Attorney Dennis Herrera

DECLARATION OF CLARA DAIMS

has been identified publicly as a Clinton supporter should not matter in the slightest. It is understandable that passions might run high and people might have strong feelings, but what is at stake is the right to vote and applicable laws and procedures that protect that right.

7.  Yet another problem with the City and County of San Francisco is that they sent out the Voter Information Pamphlet and Sample Ballot in early May. I discussed my problem with this Mr. White in mid-May in our letter exchange. It is his belief that the Elections Code 3006(c) to all voter only needs to be given to NPP voters. It is my belief it needs to be given to all voters pursuant to the statute and the statutory scheme of which 3006 is a part. Section 3000 states in essence that it is to be construed in a light most helpful to voters. I believe that all voters need to have access to the 3006 notice in the statute, because some of those voters may have switched to NPP status or may be considering such a switch, and they are entitled to this information in order to make an informed decision. Mr. White is of the completely opposite opinion, saying that providing such a notice in an application to vote by mail would be more confusing to voters. It is clear that careful wordsmithing can address that issue while ensuring the rights of all. For the record, I went online and noticed that the County of Santa Barbara took the same approach on its sample ballot materials as CCSF did, and I am concerned that this error is being replicated throughout the state. A document contrasting the party and NPP sample ballot in San Francisco is attached as Exhibit 11C in the Roguski declaration, I provided these materials to Mr Roguski.

8.  Yet another problem with both counties is that they are distributing the applications to vote by mail by electronic mail on their website. See Exhibit 8-9, Roguski Declaration. Counsel inform me that in both counties, if you enter your data into the form, then the NPP data is provided to you and you get that information. However, it

DECLARATION OF CLARA DAIMS

is a "distribution" to post these forms on a public website where citizens perusing the
website and trying to make intelligent decisions are not given the NPP information
unless they log their data into the site and push "submit".  This violates Election Code
3006© and 3007.7, which incorporates 3006(c) in its provisions in the electronic
context of "distribution".  I have been unable to get San Francisco or Alameda to
change this practice, but I did convince San Mateo County to do so and we did not sue
them as a result of that positive gesture.  The Roguski Declaration, as a general matter,
chronicles from Exhibits 1-14 defects in applications pursuant to 3006 as well as faulty
instructions throughout the state, and shows why we ask the court to strongly consider
statewide relief in this case.

9.  I should also add that San Francisco failed to inform their voters pursuant to
3006(b)(3) that voters applying to vote by mail have the right to deliver their
application directly to the elections county office by May 31.  They are not limited to
having to do it by mail.  On a day such as today, May 28, it is not practical to submit
the application by mail.  Far better to go in during these last slow days of the election
period by May 31 and review the materials in a calm setting before deciding how to
return the ballots to a polling place.

10. Voters are suffering from great confusion.  Besides the aforementioned Ms. Mena's
confusion that led to her switch from NPP to Democratic, plaintiff and NPP registrant
Ms. Daims is concerned as well about whether she will be able to vote the Democratic
ballot.  Also concerned is Gary Remer, a voter in Monterey, whose declaration shows
that he made a similar switch and witnessed great confusion in this county board of
elections about who gets to vote in this election for President and how.   Also
concerned is Richard Troy, a voter in Alameda County:  His detailed declaration
shows that despite his deep interest in the process of voting, his experiences with the

DECLARATION OF CLARA DAIMS

county board of elections in Alameda left him completely confused.  Mimi Kennedy, a

veteran poll worker in Los Angeles County, recounts how many people have made

mistakes in the past about thinking that the American Independent Party was the same

as no party preference; how many voters are forced to vote provisionally due to failure

to bring their vote-by-mail ballots with them to the polls to "surrender" for a

replacement ballot; and several other issues that illustrate why voters are suffering

from great confusion with this primary.

11. As I never heard from Alameda County counsel despite my post and my call to the

defendant Tim Dupuis on May 13, 2016, I filed suit against both entities and the

Secretary of State on May 20.  I learned that there was an issue in counties about

forcing NPP voters to vote provisionally if they wanted to vote for President, as in San

Diego (see Declaration of Jennifer Abreu and Exhibits – even the training materials

include this admonition to give NPP presidential voters provisional ballots – on

information and belief, these votes are not included in the count until two to four

weeks after the election, and only 85% of the time according to leading voter analyst

Paul Mitchell), so I amended the complaint to include that issue. A colleague served

the Secretary of State on May 23, I served Alameda County on May 25, and I had the

City served on May 28 even though Mr. White had the amended complaint and we

have been in steady communication since May 13 (unfortunately, we agree on very

little).

12. However, in the days ahead I was provided a number of very serious reports stating

that in some counties the poll workers were being trained to not inform NPP voters

that they had the right to receive a Presidential primary ballot.  I sifted through these

reports and obtained declarations from the aforementioned Ms. Abreu of San Diego,

Jeff Lewis of Santa Clara County, and Ashley Beck of Orange County.  All of them

DECLARATION OF CLARA DAIMS

said that they were told not to inform the voter of this right, but to provide the Presidential primary ballot only when the voter asked for it.

13.  Conversely, witnesses such as Michelle Jenab stated that they were trained to ask the NPP voter if they would like a Presidential primary ballot.  (Note that despite my best efforts I was able to include where she signed the document, but she informed me that she signed it in the County of Los Angeles on May 26 – the date is reflected in the electronic signature.) Joshua White, the attorney for the City and County of San Francisco on election matters as I understand it from my conversations with him, has told me that the City is informing NPP voters that they can request a Presidential primary ballot, and that it is reflected in their training materials, and I presently have no evidence to dispute this assertion and do not make this request regarding the San Francisco defendants.

14. However, the Secretary of State's counsel Ms. Sharon O'Grady informed me on May 27 that it is her understanding that the law is that the voter must request the ballot and that there is no duty of the official to offer the ballot – that was my understanding of my conversation with her on that point.  She did not inform me of the statute, if there is one.  Her own training materials illustrate that her office states that NPP voters should be advised of the right to obtain a Presidential ballot, a copy is attached as Exhibit 1 to this declaration, see page 3.

15. The County of Alameda has written me and states that their training materials show that poll workers are trained to inform the NPP voter of their right to receive a Presidential ballot.  Our two Alameda County poll worker witnesses are Gabrielle Dolphin (who is a poll worker judge) and pollworker Dawn DelMonte.  Ms. Dolphin came away from her training with the understanding that individual poll workers were free to do as they liked – to inform or not to inform the NPP voter that they had the

DECLARATION OF CLARA DAIMS

right to request a Presidential party ballot.  Ms. DelMonte had the experience of her

trainer contradicting the training video which said that the poll worker shall inform the

NPP voter of the right to request a Presidential party ballot.  She says the trainer said

do not provide that information, but wait for the voter to request a Presidential party

ballot.  In the last 24 hours, Ms. DelMonte was contacted by an individual working

with elections who engaged in extensive inquiry about Ms. DelMonte's recollection –

Ms. DelMonte believes that others may have been listening to this phone call.

Counsel wishes to advise the court that Plaintiffs would like to reserve the right to call

one or two of these Alameda County witnesses in order to clarify what happened in

this last 24 hours and previous period as well as it appears this sequence of events will

be a major  matter of contention.

16. We are asking for an order for poll workers to ask NPP voters whether they want to

vote for a presidential candidate in any of the three crossover parties. A training

manual doesn't provide a remedy for an NPP voter who doesn't know their rights. The

manual is not dispositive of what is actually said to voters at the polling places, or how

the trainers were actually trained. The words in the manual do not prove what words

are said to the voter in the polling place, or what words were said to the trainer in the

training.

17. The content of the pages relating to crossover voting for nonpartisan voters in the

Alameda County poll worker clerk manual  (pp 43-44, which counsel believes is what

was cited as guidance by Alameda county counsel yesterday) is the same as the one for

judges/inspectors (pp 67-70, see exhibit to Gabrielle Dolphin's declaration), except

visually more material is crammed onto one page for the clerks. In two instances, at

the bottom of the respective slides, poll workers are told to "advise the Nonpartisan

voters they are entitled to vote nonpartisan or in one of the following parties:

DECLARATION OF CLARA DAIMS

American Independent, Democratic, Libertarian." The "Roster-Index Page: Crossover Voting for Nonpartisan Voters" page of the inspector manual appears to be an empty green field below the title. (Page 70 in the judge/inspector manual, and not in the clerk manual at all).

13.  In both of the Alameda County poll worker training manuals, there is no mention of Presidential candidates in the nonpartisan crossover voting, unlike in the Los Angeles poll worker training handbook, which specifically instructs poll workers to ask NPP voters whether they wish to vote for the Presidential candidate for the American Independent, Democratic or Libertarian party. This subtle difference points to an example of how low information voters can be confused. They might not understand that their No Party Preference / NP/ Nonpartisan ballot is missing a Presidential candidate, and most importantly, that the only way they get to vote for a Presidential candidate is by casting one of the crossover ballots. They might not realize that the crossover ballots simply only add the Presidential candidate to their choice of down ballot nonpartisan candidates and that they are not betraying their independent status by choosing a crossover ballot.

It is entirely possible that the County of Alameda is working very hard to make the voting experience a positive one, and its efforts should be commended, however, it is in these subtle wording and visual choices whereby important information has been omitted to the serious detriment of Nonpartisan voters. We have identified these subtle differences, and are concerned that many Nonpartisan voters are not informed in a sufficiently clear manner what their rights and duties are. We realize it is a daunting task, but we also wish to help those voters get all the information they need, in as clear and accurate way as possible, to successfully vote according to their wishes.

DECLARATION OF CLARA DAIMS

This action is brought pursuant to 42 U.S.C. § 1983 to secure equitable relief from Defendants' unlawful deprivation of Plaintiffs' rights, privileges and immunities guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; Section 2 of the Voting Rights Act of 1965, 52 U.S.C. 10101(a)(2)(A) and (B); and other laws of the United States and the state of California. This action is also brought pursuant to 28 U.S.C. § 1361 to seek a writ of mandamus. Jurisdiction is conferred pursuant to 28 U.S.C. § 1331 and § 1343. Declaratory relief can be sought pursuant to 28 U.S.C. § 2201 and § 2202.

2. "No right is more precious in a free country than that of having a voice in the election of those who make the laws…" *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). Plaintiffs bring the instant lawsuit to protect the right to vote by mail, early voting, registration, and informational voting rights of millions of California voters. Nearly 70% of ballots cast in the 2014 California special election were by mail, and over 65% of the ballots cast in the 2012 presidential preference primary were by mail. http://www.sos.ca.gov/elections/historical-absentee/

3. The impact of failure to inform NPP voters (no party preference voters) of their right to obtain a "crossover ballot" and to vote in the Presidential primary is significant, as is the failure to inform party-affiliated voters of their right to re-register as no party preference voters and still receive the Presidential primary ballots of the Democratic, American Independent, and Libertarian parties. All Californians' voting rights have been and will continue to be denied or unreasonably infringed upon due to the lack of oversight of the California Secretary of State and county Boards of Elections.

4. This action seeks declaratory and injunctive relief to redress the widespread and ongoing failure to provide information regarding the protected voting rights of "no party preference" voters to receive a Democratic, American Independent or Libertarian presidential ballot. Inadequate information has also been provided regarding the right of "no party preference voters" to personally deliver their application to vote by mail to the county board of elections office by May 31, 2016 in order to mail their ballot in by the last day of the primary on June 7.

5. This failure to provide adequate information is in violation of the Voting Rights Act of 1965, 52 U.S.C.A. § 10101 *et seq*, California Elections Code Section 3000 *et seq.*, and the U.S. Constitution's guarantee of Equal Protection, applied to states pursuant to the Fourteenth Amendment. Plaintiffs are eligible California voters (one Democratic and one no party preference); Voting Rights Defense Project (an organization campaigning to heighten voter education and voter turnout for their candidate Bernie Sanders); and the American Independent Party itself. These Plaintiffs and their associational members have been deprived of voting rights, as have the many similarly situated voters who have complained to their local Boards of Elections regarding applications to vote by mail, early voting, registration, and informational voting rights. Thousands of Californians are in imminent danger of being disenfranchised in the 2016 presidential primary election ending on June 7, 2016, and will continue to be shut out of the democratic process unless and until Defendants reform their voting by mail practices.

6. Congress enacted section 2 of the Voting Rights Act of 1965 to prevent certain types of situations. One situation is where some voters in a county are being treated in a different manner from other voters in the county. 52 U.S.C. § 10101(a)(2)(A). The other situation is where individuals are denied the right to vote "because of an error or omission on any

record or paper" which is "not material in determining whether such individual is qualified under State law to vote." 52 U.S.C. § 10101(a)(2)(B)

7. Defendant Tim Dupuis, the chief of the Alameda County Registrar of Voters, has engaged in a pattern and practice that will disenfranchise thousands of Alameda County voters. During the last two weeks, this Defendant distributed a series of notices to Alameda County voters that did not provide information that is required to be given to California voters pursuant to Elections Code Section 3000 et seq. Because of this failure to provide proper notice, these voters will be unable to vote for the candidate of their choice unless there is prompt and effective intervention by this court. 8. Specifically, both the Defendants Tim Dupuis and John Arntz (chief of the San Francisco Department of Elections) distributed to the voters an electronic application to vote for mail on Dupuis' Oakland website and Artnz's San Francisco website that violated Elections Code § 3006(c) and 3007.7(e). Both of these applications failed to provide the mandatory notice to all voters of their right to state no party preference; and, further, that a no party preference voter shall be provided with a Democratic, American Independent Party or a Libertarian Party Presidential primary ballot.

9. Furthermore, Defendant Arntz (and on information and belief, Defendant Dupuis) violated Elections Code Section 3006 by preparing the Voter Information Pamphlet and Sample Ballot in a non-uniform manner. This time, the aforementioned mandatory notice was properly provided at the back page of the pamphlet to all the no party preference voters. However, the mandatory notice was not provided to the voters that were members of political parties. It was mandatory to provide this information by law to all voters, not just the no party preference voters. 10. The failure to provide this information meant that Bay Area citizens who were

members of political parties were not provided with choices that reasonably could have led them to select no party preference and request a Presidential primary ballot. This same error was committed in Santa Barbara County and other counties throughout the state of California. This statewide error occurred even after the Secretary of State created a uniform vote by mail application that conformed with Elections Code 3007.5 and included the proper language that was missing as described above. For reasons of their own, the Defendants and many of their colleagues throughout the state elected not to use the Secretary of State's uniform vote by mail application, but instead omitted essential terms in their applications.

11. Another essential term that was missing in certain applications created by the Defendants was the mandatory notice contained in Elections Code 3006(b)(3) that applicants to vote by mail have the "legal right" to personally "deliver" the application to the County Elections Office by May 31 rather than rely on mail or fax. These particular application forms would mention the May 31 date, but did not mention the "personal delivery" option or that the applicant had the "legal right" to deliver the application in this fashion. 12. It is reasonable to assume that this omission will result in more late applications and less early voting, as applicants who deliver the application could receive the proper Presidential primary ballot and vote right there on the spot. In turn, it is reasonable to assume that late applications will result in many more citizens failing to obtain a Presidential primary ballot.

**PARTIES TO THE ACTION**

13. Both Defendants Tim Dupuis and John Arntz, as part of their official duties, are responsible for conducting Federal, State, County, special and local elections. Thus, they are sued in their official capacities. Pursuant to the leadership of these Defendants, the Alameda County Registrar of Voters and the San Francisco Department of Elections prepare the published

notices of elections and lists of offices for which candidates are to be nominated. It is the duty of these agencies to prepare and print official and sample ballots; mail sample ballots to registered voters; recruit elecion officers and polling places; and provide the roster and street index and other supplies for use by the election officers at the polls. These agencies are also required to establish and revise voting precincts, provide for the tabulation of returns on election night, and conduct the official canvass of votes cast.

14. Furthermore, these agencies had the duty to prepare applications to vote by mail that complied with the mandatory notices contained in the uniform vote by mail application prepared by the Secretary of State. As described above, the defendants and similar agencies throughout the state failed in providing these mandatory notices. Based on information and belief, the defendants have been involved in training poll workers to provide no preference party voters with provisional ballots; the plaintiffs seek an order that a provisional ballot will be given to a voter only when there is no other alternative. News reports state that a high percentage of provisional ballots never make it into the official count.

15. The Secretary of State Alex Padilla is named as an indispensable party. The Secretary of State created the regulations that the Elections Code rely on. On information and belief, the Secretary of State failed to properly advise the other Defendants, despite the enormous autonomy that the Defendants enjoy in running their own affairs free of interference from the Secretary.

16. Plaintiff Voting Rights Defense Project is an unincorporated association based in Oakland, California. The organizational plaintiff was created to campaign for the success of Bernie Sanders in his quest for votes in the California Presidential primary. It has no formal relationship with the Sanders campaign. This Plaintiff is engaged in taking action of various kinds with like-minded voters to ensure that the turnout for their preferred candidate is as large

as possible. As voting in this primary began on May 9 and will continue until June 7, the primary election has officially begun and the campaigning activity is ongoing.

17. Plaintiff American Independent Party of California is a political party that has obtained ballot space in California. Elections Code Section 7500. The rules governing its ballot access are contained within Elections Code 6500 *et seq.*; in these sections, this Plaintiff is referred to as simply the American Independent Party.

18. Plaintiff Suzanne Bushnell is a registered Democratic voter in the City and County of San Francisco. As a Democratic voter in San Francisco and the state of California, she has been injured due to the failure of the Defendants to comply with the mandatory notice provisions set forth above. She has "informational standing" due to these omissions by the Defendants, and she is entitled to relief designed to restore her to the situation she would have been in if this information was not denied to her. She is uncertain whether she will be able to obtain a Presidential party ballot for Bernie Sanders if she becomes a no party preference voter. Her rights as a voter have been chilled as a result.

19. Plaintiff Clara Daims is a registered no party preference voter in the City and County of San Francisco. As a no party preference voter in San Francisco and the state of California, she has been injured due to the failure of the Defendants to comply with the mandatory notice provisions set forth above. She has "informational standing" due to these omissions by the Defendants, and she is entitled to relief designed to restore her to the situation she would have been in if this information was not denied to her. She is uncertain whether she will be able to obtain a Presidential party ballot for Bernie Sanders if she remains a no party preference voter. Her rights as a voter have been chilled as a result.

**FIRST CAUSE OF ACTION (52 USC 10101(a)(2)(A) and 42 USC 1983)** FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF, ET AL.

20. Paragraphs 1-19 are incorporated by reference.

21. Defendants' actions violate 52 USC 10101(a)(2), generally known as "Section 2" of the Voting Rights Act of 1965.

22. 52 U.S.C. § 10301(a) grants rights to voters by providing, in relevant part: (2) No person acting under color of law shall – (A) in determining whether any individual is qualified under State law or laws to vote in any election, apply any standard, practice, or procedure difference from the standards, practices or procedures applied under such law or laws to other individuals within the same county, parish, or similar political subdivision who have been found by State officials to be qualified to vote. . .

23. Private litigants may enforce their rights under 52 U.S.C. § 10101(a) by bringing a suit under 42 U.S.C. § 1983. Defendants, acting under color of state law, applied different standards, practices, or procedures in determining whether party voters would be given voter informational rights than were applied to no party preference voters.

24. Plaintiffs will continue to suffer the violation of their rights as alleged in the Complaint absent relief granted by the Court.

**SECOND CAUSE OF ACTION (52 USC 10101(a)(2)(B) and 42 USC 1983)**

25. Paragraphs 1-24 are incorporated by reference.

26. 52 USC 10101(a)(2)(B) grants rights to voters by providing, in relevant part: "No person acting under color of state law shall … deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or

DECLARATION OF CLARA DAIMS

DECLARATION OF CLARA DAIMS

omission is not material in determining whether such individual is qualified under State law to vote in such election." See Schwier v. Cox, 412 F. Supp. 2d 1266 (N.D. Ga. 2005) (finding a Georgia requirement that voting registrants disclose Social Security number before voting violated materiality provision of Voting Rights Act), aff'd, 439 F.3d 1285 (11th Cir. 2006).

27. Certain Plaintiffs – or the individuals that they represent - are in imminent danger of being denied the right to vote in the Presidential primary election because of the errors and omissions contained in the mandatory notices containing crucial information necessary in order to obtain the ballot. These errors or omissions are not material in determining whether these individuals are qualified under State law to vote in the June 2016 Presidential primary election.

**THIRD CAUSE OF ACTION (First and Fourteenth Amendments, and 42 USC 1983)**

28. Paragraphs 1-27 are incorporated by reference.

29. Defendants' actions violated the 1st Amendment to the United States Constitution and the equal protection clause of the 14th Amendment to the United States Constitution, as the acts of the defendants towards the no party preference voters constituted arbitrary discrimination of these plaintiffs as well as the associational classes that Voting Rights Defense Project and American Independent Party represent.

30. The First and Fourteenth Amendments of the Constitution require that courts closely scrutinize challenged election regulations, weighing "the character and magnitude of the asserted injury . . . against the precise interests put forward by the State as justifications for the burden imposed by its rule." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).

Word processing errors intervened, as did numerous crashes on an overburdened system both at

ECF and counsel's own computer.   To summarize, plaintiffs will fix the word processing errors

and ask permission to file a modified brief at 5 pm, in one hour.

_____/s/_____

WILLIAM M. SIMPICH

Attorney for Plaintiffs

DECLARATION OF CLARA DAIMS