William M. Simpich SB #106672
Attorney at Law
1736 Franklin Street, 10th Floor
Oakland, CA 94612
Telephone (415) 542-6809
E-mail:  bsimpich@gmail.com

Stephen R. Jaffe SB #49539
The Jaffe Law Firm
101 California, Suite 2710
San Francisco, CA 94110
Telephone:  (415) 618-0100
E-mail:  stephen.r.jaffe@jaffetriallaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VOTING RIGHTS DEFENSE PROJECT, et al.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>ALEX PADILLA, et al.,<br><br>                    Defendants. | Case No**.  C-16-02739-WHA**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF**<br><br>Date:  6/1/16<br>Time: 11:00 am<br>Dept:  8, Hon. William Alsup |

The Plaintiffs have stated the essential relief sought in their Notice of Motion, which is summarized here.

1.   A public service announcement to all on the mailing lists used by the Defendants for their customary communications, including communications about this case, which enunciate the central points set forth in our Notice of Motion – essentially, to inform NPP voters of the key things they must do to assure their right to vote for President, and to notify poll workers and election officials that these NPP voters shall have the right to be informed that they may receive a Presidential primary ballot.

PLAINTIFFS' AMENDED MEMORANDUM OF POINTS AND AUTHORITIES       1

2.  Plaintiffs ask that this be a statewide injunction, informing the Secretary of State and
    all county officials to use email, internet, radio and TV to get a consistent and concise
    message out so that the defects detailed in this brief and the declarations be resolved.

3.  Plaintiffs also seek that the defendants be enjoined to order their poll workers to
    inform all NPP voters of their right to receive a presidential ballot and that this be
    enforced statewide against all election officials.  Plaintiffs do not have evidence that
    this is being done in San Francisco, but have contradictory evidence in Alameda
    County and by the Secretary of State's failure to enforce what is apparently its own
    policy.

**REQUEST FOR RELIEF**

Plaintiffs apply to the court for preliminary injunctive relief.  This motion is based upon
the following facts:

1.  The subject matter of the underlying application for a preliminary injunction
    (submitted to the Court with an *ex parte* application and motion to shorten time)
    concerns the California Democratic Party primary election to occur on June 7, 2016;

2.  Because of the nature of the remedies sought by the preliminary injunction applied for
    by the plaintiffs, to alleviate and mitigate the immediate and irreparable harm
    presently being caused by the dissemination of incorrect, misleading and incomplete
    information by the defendants to California voters who designated "no party
    preference" on their voter registrations and who wish to exercise their right to vote in
    the 2016 Democratic Party presidential primary,[1]  Plaintiffs requested and received a
    hearing on their application for a preliminary injunction be held Wednesday, June 1,
    2016, or on the soonest possible date for this court prior to Tuesday, June 7.

---

[1] The facts setting forth the immediate and irreparable harm to plaintiffs and affected
California voters are set forth in the declarations filed in support of plaintiffs' application for a
preliminary injunction.

3.  Notice of this *ex parte* application was provided to counsel for all defendants on May 26, 2016 by William M. Simpich, counsel for plaintiffs.

4.  The main relief sought by the Plaintiffs is as follows:

   A.  Because of erroneous information spread statewide due to the Secretary of State's omissions regarding its failure to monitor the boards of elections and their numerous failures to adhere to the notice mandated by Elections Code 3006(b)(3), 3006(c), and 3007.7 as stated in the Secretary of State's uniform vote-by-mail application:

   (1)  Public service announcements be sent out statewide to ensure uniformity in voting procedures by email, internet postings, radio and TV, stating as follows:

   (a)  All California voters have the right to receive a Presidential party ballot if they are registered as of May 23, 2016, as stated in Elections Code 3006.

   (b)  All California voters have the right to be informed that the deadline to request a vote by mail ballot is set by statute as May 31, as stated in Elections Code Section 3006(c)

   (c)  All California voters have the right to receive a regular Presidential ballot at the polling place, even if they did not file an application to vote by mail.

   (d)  All California voters have the right to be offered a regular Presidential ballot by the poll workers when they arrive at the polls, although they will have to receive a provisional ballot if they fail to bring to the polls any vote by mail ballot that has been sent to them.

   B.  All poll workers shall inform the no party preference voters of their right to request a Presidential party ballot;

   C.  Sufficient ballots shall be provided at every polling station, which should be higher than the statutory standard set forth in the California Elections Code Section 14102

due to the high influx of no party preference voters registering since the previous
election.

5.   The more ambitious relief sought by the Plaintiffs is that registration to vote be
reopened until as late as Election Day if possible, in an attempt to remedy the failures
in registration caused by the confusion resulting from the errors committed by both
these defendants and statewide, in order to protect the rights set forth in the Voting
Rights Act and in the Equal Protection Clause.

## FACTUAL BACKGROUND

Plaintiffs' intention in this case was to remedy the faulty application to vote by
mail notices that came to counsel's attention two weeks ago.  For ease this argument is
taken directly from counsel's declaration:

Counsel knew that time was of the essence, as stated in his declaration to shorten
time and will not repeat that discussion here.  Mr. Joshua White was unwilling to
admit that the elections department had made any mistakes on their materials and tried
to convince me that counsel was 100% wrong on every issue.  Counsel could see a
little room for debate but counsel thought his approach to this situation was not fact-
based.

At Exhibit 11A-D of the Roguski Declaration, counsel has provided documents
that are a major basis of our contentions regarding San Francisco.  Exhibit 11A is a
notice informing the voters how "to request a ballot that includes the presidential
primary contest of one of these parties, mark the name of the party on the attached
postage-paid postcard, and sign and return the postcard no later than April 18.  If you
do not request the ballot of one of these parties, your ballot will not include a contest
for President."   The impact to the reasonable voter is clear – if you don't return the

postcard by April 18, your ballot will not include a contest for President.  Ms. Mena, in her declaration, explains that she changed her registration from NPP to Democrat to heighten the chance she could vote for President after seeing this notice shortly after April 18.

Counsel went to the Elections office on Thursday, May 19 and obtained a copy of the postcard that was attached to Exhibit 11-A by showing 11-A to the election worker and asking for a copy of the attached postcard.  That copy is attached as Exhibit 11B to the Roguski Declaration.  It contains a request for a vote-by-mail ballot but provides the wrong date – pursuant to Elections Code 3006, any application for a vote by mail ballot such as Exhibit 11B must be requested by May 31.  This application states that the deadline is June 1.  The consequence of missing this deadline will mean that voters by mail will not receive by mail their ballot to vote for President, even though they are expecting it.  It is a matter of common knowledge that a high percentage of California voters vote by mail.  On information and belief, plaintiffs believe that the number varies between ½ to 2/3 of the populace.  Similarly, it is common knowledge that a substantial number of voters in the state are no party preference; my understanding is that number is somewhere between  23% to 25%.   This indicates that hundreds of thousands of NPP votes are at stake in this primary election; especially in light of a recent May 25 US News & World Report article stating that at that time 50% of the NPP voters are Democrats, but only 14% of them at that time had received vote-by-mail ballots back in the mail.

These statistics are found in this widely circulated US News and World Report article:  http://www.usnews.com/news/articles/2016-05-24/bernies-ballot-burden-in-california.   Although this article contends that Bernie Sanders may be aided by

greater NPP or independent turnout, others may be able to argue that Hillary Clinton will benefit from greater NPP or independent voter turnout.   The fact that some of the Plaintiffs support Sanders or the American Independent Party, or that plaintiffs' counsel likes Sanders, or that City Attorney Dennis Herrera has been identified publicly as a Clinton supporter should not matter in the slightest.  It is understandable that passions might run high and people might have strong feelings, but what is at stake is the right to vote and applicable laws and procedures that protect that right.

Yet another problem with the City and County of San Francisco is that they sent out the Voter Information Pamphlet and Sample Ballot in early May .  Counsel discussed his problem with this Mr. White in mid-May in a letter exchange.  It is his belief that the Elections Code 3006(c) to all voter only needs to be given to NPP voters.  It is counsel's belief it needs to be given to all voters pursuant to the statute and the statutory scheme of which 3006 is a part.  Section 3000 states in essence that it is to be construed in a light most helpful to voters.

Counsel believes that all voters need to have access to the 3006 notice in the statute, because some of those voters may have switched to NPP status or may be considering such a switch, and they are entitled to this information in order to make an informed decision.  Mr. White is of the completely opposite opinion, saying that providing such a notice in an application to vote by mail would be more confusing to voters.

It is clear that careful wordsmithing can address that issue while ensuring the rights of all.

For the record, counsel went online and noticed that the County of Santa Barbara took the same approach on its sample ballot materials as CCSF did, and the concern is

that this error is being replicated throughout the state.   A document contrasting the party and NPP sample ballot in San Francisco is attached as Exhibit 11C in the Roguski declaration.  Counsel provided these materials in Exhibit 11 to Mr Roguski for inclusion in his declaration.

Yet another problem with both defendant counties is that they are distributing the applications to vote by mail by electronic mail on their website.  See Exhibit 8-9, Roguski Declaration.  Defense counsel for both counties state that in both counties, if you enter your data into the form, then the NPP data is provided to you and you get that information.  However, it is a "distribution" to post these forms on a public website where citizens perusing the website and trying to make intelligent decisions are not given the NPP information unless they log their data into the site and push "submit".  This violates Election Code 3006© and 3007.7, which incorporates 3006(c) in its provisions in the electronic context of "distribution".

Counsel was unable to get San Francisco or Alameda to change this practice, but counsel did convince San Mateo County to do so and Plaintiffs did not sue them as a result of that positive gesture.  The Roguski Declaration, as a general matter, chronicles from Exhibits 1-14 defects in applications pursuant to 3006 as well as faulty instructions throughout the state, and shows why Plaintiffs ask the court to strongly consider statewide relief in this case.

It should be added that San Francisco failed to inform their voters pursuant to 3006(b)(3) that voters applying to vote by mail have the right to deliver their application directly to the elections county office by May 31.  They are not limited to having to do it by mail.  On a day such as today, May 28, it is not practical to submit the application by mail.  Far better to go in during these last slow days of the election

period by May 31 and review the materials in a calm setting before deciding how to return the ballots to a polling place.

Voters are suffering from great confusion. Besides the aforementioned Ms. Mena's confusion that led to her switch from NPP to Democratic, plaintiff and NPP registrant Ms. Daims is concerned as well about whether she will be able to vote the Democratic ballot. Also concerned is Gary Remer, a voter in Monterey, whose declaration shows that he made a similar switch and witnessed great confusion in this county board of elections about who gets to vote in this election for President and how. Also concerned is Richard Troy, a voter in Alameda County: His detailed declaration shows that despite his deep interest in the process of voting, his experiences with the county board of elections in Alameda left him completely confused.

Mimi Kennedy, a veteran poll worker in Los Angeles County, recounts how many people have made mistakes in the past about thinking that the American Independent Party was the same as no party preference; how many voters are forced to vote provisionally due to failure to bring their vote-by-mail ballots with them to the polls to "surrender" for a replacement ballot; and several other issues that illustrate why voters are suffering from great confusion with this primary.

As counsel never heard from Alameda County counsel despite his post and his call to the defendant Tim Dupuis on May 13, 2016, Plaintiffs filed suit against both entities and the Secretary of State on May 20. Plaintiffs learned that there was an issue in counties about forcing NPP voters to vote provisionally if they wanted to vote for President, as in San Diego (see Declaration of Jennifer Abreu and Exhibits – even the training materials include this admonition to give NPP presidential voters provisional

ballots – on information and belief, these votes are not included in the count until two to four weeks after the election, and only 85% of the time according to leading voter analyst Paul Mitchell), so Plaintiffs amended the complaint to include that issue. A colleague served the Secretary of State on May 23, Mr. Simpich served Alameda County on May 25, and Mr. Simpich had the City served on May 28 even though Mr. White had the amended complaint and counsel have been in steady communication since May 13 (unfortunately, counsel agree on very little).

However, in the days ahead counsel was provided a number of very serious reports stating that in some counties the poll workers were being trained to not inform NPP voters that they had the right to receive a Presidential primary ballot.  Counsel sifted through these numerous reports and obtained declarations from the aforementioned Ms. Abreu of San Diego, Jeff Lewis of Santa Clara County, and Ashley Beck of Orange County.  All of them said that they were told not to inform the voter of this right, but to provide the Presidential primary ballot only when the voter asked for it.

Conversely, witnesses such as Michelle Jenab of Los Angeles stated that they were trained to ask the NPP voter if they would like a Presidential primary ballot.  (Note that despite counsel's best efforts counsel was able to include where she signed the document, but she informed counsel that she signed it in the County of Los Angeles on May 26 – the date is reflected in the electronic signature.) Joshua White, the attorney for the City and County of San Francisco on election matters as counsel understands it from his conversations with him, has told counsel that the City is informing NPP voters that they can request a Presidential primary ballot, and that it is reflected in their training materials, and counsel presently has no evidence to dispute this assertion and does not make this request regarding the San Francisco defendants.

However, the Secretary of State's counsel Ms. Sharon O'Grady informed counsel on May 27 that it is her understanding that the law is that the voter must request the ballot and that there is no duty of the official to offer the ballot – that was counsel's understanding of counsel's conversation with her on that point.  She did not inform counsel of the statute, if there is one.  Her own training materials illustrate that her office states that NPP voters should be advised of the right to obtain a Presidential ballot, a copy is attached as Exhibit 1 to this declaration, see page 3.

The County of Alameda has written counsel and states that their training materials show that poll workers are trained to inform the NPP voter of their right to receive a Presidential ballot.  Plaintiffs' two Alameda County poll worker witnesses are Gabrielle Dolphin (who is a poll worker judge) and pollworker Dawn DelMonte.  Ms. Dolphin came away from her training with the understanding that individual poll workers were free to do as they liked – to inform or not to inform the NPP voter that they had the right to request a Presidential party ballot.  Ms. DelMonte had the experience of her trainer contradicting the training video which said that the poll worker shall inform the NPP voter of the right to request a Presidential party ballot.  She says the trainer said do not provide that information, but wait for the voter to request a Presidential party ballot.

In the last 24 hours, Ms. DelMonte was contacted by an individual working with elections who engaged in extensive inquiry about Ms. DelMonte's recollection.  On information and belief, this included asking questions about the aforementioned pages 43-44  – Ms. DelMonte believes that others may have been listening to this phone call.  On information and belief, other witnesses were present with DelMonte who may be able to back up her story.

Counsel wishes to advise the court that Plaintiffs would like to reserve the right to call one or two of these Alameda County witnesses in order to clarify what happened in this last 24 hours and previous period as well as it appears this sequence of events will be a major matter of contention.

We are asking for an order for poll workers to ask NPP voters whether they want to vote for a presidential candidate in any of the three crossover parties. A training manual doesn't provide a remedy for an NPP voter who doesn't know their rights. The manual is not dispositive of what is actually said to voters at the polling places, or how the trainers were actually trained. The words in the manual do not prove what words are said to the voter in the polling place, or what words were said to the trainer in the training.

The content of the pages relating to crossover voting for nonpartisan voters in the Alameda County poll worker clerk manual (pp 43-44, see exhibit 1 to Gabrielle Dolphin's declaration at docket numbers 14 and 20) is the same as the one for judges/inspectors (pp 67-70), except visually more material is crammed onto one page for the clerks. In two instances, at the bottom of the respective slides, poll workers are told to "advise the Nonpartisan voters they are entitled to vote nonpartisan or in one of the following parties: American Independent, Democratic, Libertarian." The "Roster-Index Page: Crossover Voting for Nonpartisan Voters" page of the inspector manual appears to be an empty green field below the title. (Page 70 in the judge/inspector manual, and not in the clerk manual at all).

In both of the Alameda County poll worker training manuals, there is no mention of Presidential candidates in the nonpartisan crossover voting, unlike in the Los Angeles poll worker training handbook, which specifically instructs poll workers to

ask NPP voters whether they wish to vote for the Presidential candidate for the American Independent, Democratic or Libertarian party. This subtle difference points to an example of how low information voters can be confused. They might not understand that their No Party Preference / NP/ Nonpartisan ballot is missing a Presidential candidate, and most importantly, that the only way they get to vote for a Presidential candidate is by casting one of the crossover ballots. They might not realize that the crossover ballots simply only add the Presidential candidate to their choice of down ballot nonpartisan candidates and that they are not betraying their independent status by choosing a crossover ballot.

It is entirely possible that the County of Alameda is working very hard to make the voting experience a positive one – and the same for San Francisco, and their positive efforts should be commended, however, it is in these subtle wording and visual choices involving both the training materials and the applications to vote for mail and attendant instructions that have important information has been omitted (or ambiguously phrased) to the serious detriment of nonpartisan voters. We have identified these subtle differences, and are concerned that many nonpartisan voters are not informed in a sufficiently clear manner what their rights and duties are. We realize it is a daunting task, but we also wish to help those voters get all the information they need, in as clear and accurate way as possible, to successfully vote according to their wishes.

**THEORIES BEHIND PLAINTIFFS' CAUSES OF ACTION**

This action is brought pursuant to 42 U.S.C. § 1983 to secure equitable relief from Defendants' unlawful deprivation of Plaintiffs' rights, privileges and immunities guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United

States Constitution; Section 2 of the Voting Rights Act of 1965, 52 U.S.C. 10101(a)(2)(A) and (B); and other laws of the United States and the state of California. This action is also brought pursuant to 28 U.S.C. § 1361 to seek a writ of mandamus. Jurisdiction is conferred pursuant to 28 U.S.C. § 1331 and § 1343. Declaratory relief can be sought pursuant to 28 U.S.C. § 2201 and § 2202.

"No right is more precious in a free country than that of having a voice in the election of those who make the laws…" *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964). Plaintiffs bring the instant lawsuit to protect the right to vote by mail, early voting, registration, and informational voting rights of millions of California voters. Nearly 70% of ballots cast in the 2014 California special election were by mail, and over 65% of the ballots cast in the 2012 presidential preference primary were by mail. http://www.sos.ca.gov/elections/historical-absentee/

The impact of failure to inform NPP voters (no party preference voters) of their right to obtain a "crossover ballot" and to vote in the Presidential primary is significant, as is the failure to inform party-affiliated voters of their right to re-register as no party preference voters and still receive the Presidential primary ballots of the Democratic, American Independent, and Libertarian parties. All Californians' voting rights have been and will continue to be denied or unreasonably infringed upon due to the lack of oversight of the California Secretary of State and county Boards of Elections.

This action seeks injunctive relief to redress the widespread and ongoing failure to provide information regarding the protected voting rights of "no party preference" voters to receive a Democratic, American Independent or Libertarian presidential ballot. Inadequate information has also been provided regarding the right of "no party preference voters" to personally deliver their application to vote by mail to the county board of

elections office by May 31, 2016 in order to mail their ballot in by the last day of the primary on June 7.

This failure to provide adequate information is in violation of the Voting Rights Act of 1965, 52 U.S.C.A. § 10101 *et seq*, California Elections Code Section 3000 *et seq.*, and the U.S. Constitution's guarantee of Equal Protection, applied to states pursuant to the Fourteenth Amendment. Plaintiffs are eligible California voters (one Democratic and one no party preference); Voting Rights Defense Project (an organization campaigning to heighten voter education and voter turnout for their candidate Bernie Sanders); and the American Independent Party itself. These Plaintiffs and their associational members have been deprived of voting rights, as have the many similarly situated voters who have complained to their local Boards of Elections regarding applications to vote by mail, early voting, registration, and informational voting rights. Thousands of Californians are in imminent danger of being disenfranchised in the 2016 presidential primary election ending on June 7, 2016, and will continue to be shut out of the democratic process unless and until Defendants reform their voting by mail practices.

Congresss enacted section 2 of the Voting Rights Act of 1965 to prevent certain types of situations. One situation is where some voters in a county are being treated in a different manner from other voters in the county. 52 U.S.C. § 10101(a)(2)(A). The other situation is where individuals are denied the right to vote "because of an error or omission on any record or paper" which is "not material in determining whether such individual is qualified under State law to vote." 52 U.S.C. § 10101(a)(2)(B)

Defendant Tim Dupuis, the chief of the Alameda County Registrar of Voters, has engaged in a pattern and practice that will disenfranchise thousands of Alameda County voters. During the last two weeks, this Defendant distributed a series of notices to

Alameda County voters that did not provide information that is required to be given to California voters pursuant to Elections Code Section 3000 et seq. Because of this failure to provide proper notice, these voters will be unable to vote for the candidate of their choice unless there is prompt and effective intervention by this court.

Specifically, both the Defendants Tim Dupuis and John Arntz (chief of the San Francisco Department of Elections) distributed to the voters an electronic application to vote for mail on Dupuis' Oakland website and Artnz's San Francisco website that violated Elections Code § 3006(c) and 3007.7(e). Both of these applications failed to provide the mandatory notice to all voters of their right to state no party preference; and, further, that a no party preference voter shall be provided with a Democratic, American Independent Party or a Libertarian Party Presidential primary ballot.

Furthermore, Defendant Arntz (and on information and belief, Defendant Dupuis) violated Elections Code Section 3006 by preparing the Voter Information Pamphlet and Sample Ballot in a non-uniform manner. This time, the aforementioned mandatory notice was properly provided at the back page of the pamphlet to all the no party preference voters. However, the mandatory notice was not provided to the voters that were members of political parties. It was mandatory to provide this information by law to all voters, not just the no party preference voters.

The failure to provide this information meant that Bay Area citizens who were members of political parties were not provided with choices that reasonably could have led them to select no party preference and request a Presidential primary ballot. This same error was committed in Santa Barbara County and other counties throughout the state of California. This statewide error occurred even after the Secretary of State created a uniform vote by mail application that conformed with Elections Code 3007.5 and included the proper language that was missing as described above. For reasons of their own, the Defendants and many of their colleagues throughout the state elected not to use the Secretary of State's uniform vote by mail application, but instead omitted essential terms in their applications.

Another essential term that was missing in certain applications created by the Defendants was the mandatory notice contained in Elections Code 3006(b)(3) that applicants to vote by mail have the "legal right" to personally "deliver" the application to the County Elections Office by May 31 rather than rely on mail or fax. These particular application forms would mention the May 31 date, but did not mention the "personal delivery" option or that the applicant had the "legal right" to deliver the application in this fashion.

It is reasonable to assume that this omission will result in more late applications and less early voting, as applicants who deliver the application could receive the proper Presidential primary ballot and vote right there on the spot. In turn, it is reasonable to assume that late applications will result in many more citizens failing to obtain a Presidential primary ballot.

///

**PARTIES TO THE ACTION**

Both Defendants Tim Dupuis and John Arntz, as part of their official duties, are responsible for conducting Federal, State, County, special and local elections. Thus, they are sued in their official capacities. Pursuant to the leadership of these Defendants, the Alameda County Registrar of Voters and the San Francisco Department of Elections prepare the published notices of elections and lists of offices for which candidates are to be nominated. It is the duty of these agencies to prepare and print official and sample ballots; mail sample ballots to registered voters; recruit elecion officers and polling places; and provide the roster and street index and other supplies for use by the election officers at the polls. These agencies are also required to establish and revise voting precincts, provide for the tabulation of returns on election night, and conduct the official canvass of votes cast.

Furthermore, these agencies had the duty to prepare applications to vote by mail that complied with the mandatory notices contained in the uniform vote by mail application prepared by the Secretary of State. As described above, the defendants and similar agencies throughout the state failed in providing these mandatory notices. Based on information and belief, the defendants have been

involved in training poll workers to provide no preference party voters with provisional ballots; the plaintiffs seek an order that a provisional ballot will be given to a voter only when there is no other alternative. News reports state that a high percentage of provisional ballots never make it into the official count.

The Secretary of State Alex Padilla is named as an indispensable party. The Secretary of State created the regulations that the Elections Code rely on. On information and belief, the Secretary of State failed to properly advise the other Defendants, despite the enormous autonomy that the Defendants enjoy in running their own affairs free of interference from the Secretary.  In Wash. Ass'n of Churches v. Reed, 492 F. Supp. 2d 1264, 2006 U.S. Dist. LEXIS 96444 (W.D. Wash. 2006) the court addressed defendant's argument that he is not the proper defendant to this action. Defendant initially asserted that, while he maintains the voter statewide registration list, the counties actually register voters, and therefore he has no direct control over the 39 separately-elected county auditors. Defendant further asserted that these county auditors are not his "agents," such that he could somehow order the counties to register mismatched applicants.

Plaintiffs responded that defendant had undersold his authority, and that he indeed is the proper defendant. As in Washington state, the Secretary of State is the chief elections officer of the state, and he has supervisory control over local elections officials, including the power and responsibility to issue instructions and promulgate rules to ensure that elections are conducted in a uniform manner.  The powers are not as strong as in Washington state, but the facts in this case from the poll workers and the applications to vote by mail show that the Secretary of State is not conducting sufficient guidance in a uniform manner.

Plaintiff Voting Rights Defense Project is an unincorporated association based in Oakland, California. The organizational plaintiff was created to campaign for the success of Bernie Sanders in his quest for votes in the California Presidential primary. It has no formal relationship with the

Sanders campaign. This Plaintiff is engaged in taking action of various kinds with like-minded voters to ensure that the turnout for their preferred candidate is as large as possible. As voting in this primary began on May 9 and will continue until June 7, the primary election has officially begun and the campaigning activity is ongoing.

Plaintiff American Independent Party of California is a political party that has obtained ballot space in California. Elections Code Section 7500. The rules governing its ballot access are contained within Elections Code 6500 *et seq.*; in these sections, this Plaintiff is referred to as simply the American Independent Party.

Plaintiff Suzanne Bushnell is a registered Democratic voter in the City and County of San Francisco. As a Democratic voter in San Francisco and the state of California, she has been injured due to the failure of the Defendants to comply with the mandatory notice provisions set forth above. She has "informational standing" due to these omissions by the Defendants, and she is entitled to relief designed to restore her to the situation she would have been in if this information was not denied to her. She is uncertain whether she will be able to obtain a Presidential party ballot for Bernie Sanders if she becomes a no party preference voter. Her rights as a voter have been chilled as a result.

Plaintiff Clara Daims is a registered no party preference voter in the City and County of San Francisco. As a no party preference voter in San Francisco and the state of California, she has been injured due to the failure of the Defendants to comply with the mandatory notice provisions set forth above. She has "informational standing" due to these omissions by the Defendants, and she is entitled to relief designed to restore her to the situation she would have been in if this information was not denied to her. She is uncertain whether she will be able to obtain a Presidential party ballot for Bernie Sanders if she remains a no party preference voter. Her rights as a voter have been chilled as a result.

**FIRST CAUSE OF ACTION (52 USC 10101(a)(2)(A) and 42 USC 1983)**.

Defendants' actions violate 52 USC 10101(a)(2), generally known as "Section 2" of the Voting Rights Act of 1965. 52 U.S.C. § 10301(a) grants rights to voters by providing, in relevant part:

(2) No person acting under color of law shall – (A) in determining whether any individual is qualified under State law or laws to vote in any election, apply any standard, practice, or procedure difference from the standards, practices or procedures applied under such law or laws to other individuals within the same county, parish, or similar political subdivision who have been found by State officials to be qualified to vote. . .

Private litigants may enforce their rights under 52 U.S.C. § 10101(a) by bringing a suit under 42 U.S.C. § 1983. Defendants, acting under color of state law, applied different standards, practices, or procedures in determining whether party voters would be given voter informational rights than were applied to no party preference voters.  Jeffers v. Clinton, 730 F. Supp. 196, 204 (E.D. Ark. 1989) (three-judge court) (Arnold, J.) (finding that section 2 of the Voting Rights Act "should be construed liberally in favor of its object, which is to open up the electoral process to full participation").   The facts here illustrate a long series of intra-county and inter-county practices where some counties provide the necessary NPP information to NPP voters and some do not; some provide the requisite vote by mail information to all voters and some do not; and some poll workers provide the information needed to NPP voters and some do not.  This is an elementary violation of the statute.  Compare the declarations of the poll workers in San Diego, Orange, and Santa Clara (no notice given) with the policies of San Francisco and Los Angeles (notice given) with the custom of Alameda (Plaintiffs' evidence indicates that poll workers decide for themselves whether or not notice will be given).

**SECOND CAUSE OF ACTION (52 USC 10101(a)(2)(B) and 42 USC 1983)**

52 USC 10101(a)(2)(B) grants rights to voters by providing, in relevant part: "No person acting under color of state law shall … deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual

is qualified under State law to vote in such election." See *Schwier v. Cox*, 412 F. Supp. 2d 1266 (N.D. Ga. 2005) (finding a Georgia requirement that voting registrants disclose Social Security number before voting violated materiality provision of Voting Rights Act), aff'd, 439 F.3d 1285 (11th Cir. 2006).

Certain Plaintiffs – or the individuals that they represent - are in imminent danger of being denied the right to vote in the Presidential primary election because of the errors and omissions contained in the mandatory notices containing crucial information necessary in order to obtain the ballot. These errors or omissions are not material in determining whether these individuals are qualified under State law to vote in the June 2016 Presidential primary election.

Friedman v. Snipes, 345 F. Supp. 2d 1356, 2004 U.S. Dist. LEXIS 23739, 18 Fla. L. Weekly Fed. D 63 (S.D. Fla. 2004) offers the best guidance in this situation.  After analysis, the court ruled against the  Plaintiffs because the errors or omissions did not happen in a record or paper.  In this instance, the 3006 and 3007.7 violations occurred in precisely this manner.  The fact  that Defendants got it right sometimes does not excuse the statutory violation.   It is a serious error and omission that fundamentally impacts the voter's rights to information.   Voters have informational rights that must be assiduously respected.

**THIRD CAUSE OF ACTION (First and Fourteenth Amendments, and 42 USC 1983)**

Defendants' actions violated the 1st Amendment to the United States Constitution and the equal protection clause of the 14th Amendment to the United States Constitution, as the acts of the defendants towards the no party preference voters constituted arbitrary discrimination of these plaintiffs as well as the associational classes that Voting Rights Defense Project and American Independent Party represent.

The First and Fourteenth Amendments of the Constitution require that courts closely scrutinize challenged election regulations, weighing "the character and magnitude of the asserted

injury . . . against the precise interests put forward by the State as justifications for the burden imposed by its rule." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).

The facts here illustrate arbitrary discrimination.  Some CA counties send complete information to NPP voters while others fail to do so.  Similarly, there is a failure to treat similarly situated parties equally under the Elections Code.  California has a very high incidence of by-mail voters compared to other states.   Nearly 70% of ballots cast in the 2014 California special election were by-mail, and over 65% of the ballots cast in the 2012 presidential preference primary were by-mail.  http://www.sos.ca.gov/elections/historical-absentee/  Therefore, the impact of failure to inform NPP voters of their right to vote a Presidential party ballot is significant.

### PRELIMINARY INJUNCTION FACTOR TEST IN FEDERAL CASES

See *Project Vote v. Blackwell,* 455 F.Supp.2d 694,  699  (N.D. Ohio 2006).  In exercising its discretion to enter a preliminary injunction order, this Court must consider four factors:

> "(1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest." Sierra Forest Legacy v. Rey, 577 F.3d 1015, 1021 (9th Cir. 2009) (citing Winter, 555 U.S. at 19).

> Further, the Ninth Circuit's "'serious questions' approach survives Winter when applied as part of the four-element *Winter* test." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011). In other words, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Id.

PLAINTIFFS' AMENDED MEMORANDUM OF POINTS AND AUTHORITIES        21

Any series of events that results in suppression of the vote – intentional or unintentional - "seeks to decrease the number of eligible voters and, generally, take the electoral power away from individuals or groups."  It is an umbrella term that includes a number of practices that have the intent or effect of preventing people or a group of people from voting.

Gilda R. Daniels, *Voter Deception*, 43 Ind. L. Rev. 343, 359 (2010).

Even after the enactment of the federal Voting Rights Act (VRA) eligible citizens have had to navigate "a complicated maze of local laws and procedures" creating obstacles to voting sometimes "as restrictive as the outlawed practices."  H.R. REP. NO. 103-9, at 3. "Voting is of the most fundamental significance under our constitutional structure.'"

Burdick v. Takushi, 504 U.S. 428, 433, 112 S. Ct. 2059, 119 L. Ed. 2d 245 (1992) (quoting Illinois State Bd. of Elections v. Socialist Workers Party, 440 U.S. 173, 184, 99 S. Ct. 983, 59 L. Ed. 2d 230 (1979)).

"It is important to recognize that the four considerations applicable to preliminary injunctions are factors to be balanced and not prerequisites that must be satisfied. These factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements." *In re Eagle-Picher Industries, Inc.,* 963 F.2d 855, 859 (6th Cir. 1992). Thus, "the degree of likelihood of success required may depend on the strength of the other factors." *In re DeLorean Motor Co.,* 755 F.2d 1223, 1229 (6th Cir. 1985). "In general, the likelihood of success that need be shown (for a preliminary injunction) will vary inversely with the degree of injury the plaintiff will suffer absent an injunction." *Friendship Materials, Inc. v. Michigan Brick, Inc.,* 679 F.2d 100, 105 (6thCir. 1982) (internal citation omitted).

*Griffin v. Burns*, (D.R.I. 1977) 431 F.Supp. 1361,  1366  (D.R.I. 1977) is an illustrative case, even when Plaintiffs must hurdle the more difficult argument of equal protection as contrasted to the Voting Rights Act.  The facts concern failure to properly

notify and issue absentee ballots in a Rhode Island primary election.   "The Court rejects any contention that no relief is justified. Plaintiffs have been deprived of a valuable, and fundamental, right. The Court ought to remedy this loss if it can do so equitably. The defendants did not present, and the Court cannot find, any compelling equitable reasons to deny relief" at 1368.

"[T]here is an undoubted right, guaranteed by the constitution, to vote in primary elections on an evenhanded basis together with other qualified voters." Citing *Smith v. Allwright,* 321 U.S. 649, 660-662, 64 S.Ct. 757, 88 L.Ed. 987 (1944); *United States v. Classic,* 313 U.S. 299, 318, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941))

The right to vote on an equal basis with other citizens is a fundamental right in a free society; indeed, in any viable form of representative government. It is preservative of all governmental rights. *Yick Wo. v. Hopkins,* 1886, 118 U.S. 356, 370, 6 S.Ct. 1064, 30 L.Ed. 220, 226. "The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." Citing *Harman v. Forssenius,* 1965, 380 U.S. 528, 537, 85 S.Ct. 1177, 1183, 14 L.Ed.2d 50, 57 (poll tax).

California's vote-by-mail ballot application process for the 2016 presidential primary began on May 9, 2012. CAL. ELEC. CODE §§ 3000, et seq.  See http://sfgov.org/elections/important-election-dates-and-deadlines, showing that the voter by mail application was sent to all voters by May 9.  The San Francisco and Alameda County forms challenged here do not comply with any of the mandates of Elections Code Section 3006(c).   The practices of the Alameda County Board of Elections do not comply with the mandates set out in the guidance materials of either the Secretary of State or of Alameda County.  What is even worse, if possible, is that the problems in the outlying counties are even more severe than in San Francisco or Alameda County.

 In weighing these factors, the public interest in maximizing the vote is high.  The cost of providing information to the voters is low.    The instructions need to be pithy and short.  A

substantial portion of the population struggles with functional illiteracy and cannot be expected to drink from a firehose of information.

**CONCLUSION**

There is no reason for the voter to have to drink from a firehose by absorbing 100 pages of information from the Voters Information Pamphlet circulated in May 2016 to learn how to vote – much less to adopt an argument made by the defense that the 100 pages of information should be considered as part of an application to vote by mail in the relevant instances.

What are other good remedies besides policy guidance to poll workers and a strong PSA outreach with pithy information and the muscle of a court order?  Extending registration would be one good remedy, given the seriousness of the 3006 violations set forth here regarding the applications to vote by mail and the right to personally deliver one's vote-by-mail request to the elections board pursuant to 3006(b)(3).    Another problem was the faulty instructions that often occur in the March to May period while information on the voters is being collected for mailing out the Voters Information Pamphlet.  That is certainly the cause of San Francisco's faulty instructions seen in Exhibit 11.

The court has the power to fashion effective remedies in this context, especially as new citizens are permitted to register between May 23 and Election Day. A remedy should be offered to those who lost the right to vote or had it imperiled due to the errors chronicled in this brief. This is just one ambitious remedy, but any remedy and any order of this court should make it clear that the voting process demands uniformity and fairness – no one wants to create a situation where unscrupulous people can game the system and endanger the integrity of the voting system.

///

_____/s/_____
WILLIAM M. SIMPICH
STEPHEN R. JAFFE
Attorneys for Plaintiffs