1  KAMALA D. HARRIS
   Attorney General of California
2  TAMAR PACHTER
   Supervising Deputy Attorney General
3  SHARON L. O'GRADY
   Deputy Attorney General
4  State Bar No. 102356
    455 Golden Gate Avenue, Suite 11000
5   San Francisco, CA  94102-7004
    Telephone:  (415) 703-5899
6   Fax:  (415) 703-1234
    E-mail:  Sharon.OGrady@doj.ca.gov
7  *Attorneys for Defendant Alex Padilla, Secretary of*
   *State*

8

9                IN THE UNITED STATES DISTRICT COURT

10            FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12

13  **VOTING RIGHTS DEFENSE PROJECT,**          Case No. 3:16-cv-02739
    **AMERICAN INDEPENDENT PARTY,**
    **CLARA DAIMS, and SUZANNE**                **OPPOSITION OF THE SECRETARY OF**
14  **BUSHNELL,**                               **STATE TO MOTION FOR**
                                                **PRELIMINARY INJUNCTION**
15                           Plaintiffs,
                                                Date:        June 1, 2016
16             **v.**                            Time:        11:00 a.m.
                                                Dept:        8
17                                              Judge:       William Alsup
    **ALEX PADILLA, in his official capacity as**  Trial Date:  None set
18  **Secretary of State and an indispensable**    Action Filed:  May 20, 2016
    **party, TIM DEPUIS, in his official capacity**
19  **as chief of the Alameda County Registrar of**
    **Voters, JOHN ARNTZ, in his official**
20  **capacity as Director of the San Francisco**
    **Board of Elections, and DOES I-X,**
21
                             Defendants.
22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................................................... 1

Statement of the Case ............................................................................................ 2

Legal Standard ...................................................................................................... 3

Argument ............................................................................................................... 4

    I.    Plaintiffs have no likelihood of success on the merits. ........................... 4

        A.    Plaintiffs' cannot prevail on their complaint, which does not state a claim on which relief may be granted. ......................................... 5

        B.    In particular, Plaintiffs have no likelihood of succeeding on the merits of their federal claims. ........................................................ 7

            1.    Plaintiffs are unlikely to succeed on their First and Fourteenth Amendments claims. ........................................ 7

                a.    The Elections Code does not violate the First or Fourteenth Amendments. ................................... 7

                b.    Plaintiffs are unlikely to succeed on claims of election fraud ........................................... 8

            2.    Plaintiffs have shown no likelihood of prevailing on their Voting Rights Act claims. ....................................... 9

                a.    Plaintiffs have not alleged or shown a race or minority discrimination motive or result. ......................... 9

                b.    Plaintiffs have shown no likelihood of success on their claims based on 52 U.S.C. section 10101(a)(2)(A). ....................................... 10

                c.    Plaintiffs' have no likelihood of prevailing on their 52 U.S.C. section 10101(a)(2)(B) claims. ........................ 10

        C.    Plaintiffs likewise have no likelihood of succeeding on the merits of their California Elections Code claims. ................................... 11

            1.    Plaintiffs' state Elections Code claims cannot support the requested injunction. ........................................ 11

                a.    This Court lacks jurisdiction over Plaintiffs' Elections Code Mandamus claims. ................................. 11

                b.    The Court may not enter an injunction based on Plaintiffs' Elections Code claims. ................................. 11

            2.    Even if the Court properly could consider Plaintiffs' Elections Code claims, Plaintiffs cannot show a likelihood of succeeding on them. ........................................... 12

                a.    The requested injunction should be denied under the doctrine of laches. ................................... 12

                b.    Plaintiffs have not shown a violation of the Elections Code. ................................... 13

    II.    Plaintiffs cannot establish irreparable injury ...................................... 16

i

**TABLE OF CONTENTS**
(continued)

**Page**

III.   The balance of hardships and public interest overwhelmingly weigh against
the requested temporary restraining order............................................................... 17

Conclusion ................................................................................................................................... 18

Opposition of the Secretary of State to Motion for Preliminary Injunction (3:16-cv-02739-WHA )

# TABLE OF AUTHORITIES

**Page**

**CASES**

*3570 East Foothill Blvd., Inc. v. City of Pasadena*
 912 F. Supp. 1257 (C.D. Cal. 1995) ........................................................................3

*Ashcroft v. Iqbal*
 556 U.S. 622 (2009) ..............................................................................................5

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*
 729 F.3d 937 (9th Cir. 2013) ...............................................................................16

*Bell Atlantic Corp. v. Twombly*
 550 U.S. 544 (2007) ..............................................................................................5

*Broyles v. Texas*
 618 F. Supp. 2d 661 (S.D. Tex. 2009) ................................................................8, 9

*Burdick v. Takushi*
 504 U.S. 428 (1992) ..............................................................................................7

*California Democratic Party v. Jones*
 530 U.S. (2000) .....................................................................................................8

*Chalk v. U.S. Dist. Court.*
 840 F.2d 701 (9th Cir. 1988) .................................................................................3

*Clark v. Coye*
 60 F.3d 600 (9th Cir. 1995) ..............................................................................4, 12

*Clark v. Washington*
 366 F.2d 678 (9th Cir.1966) ................................................................................11

*Coalition for Economic Equity v. Wilson*
 122 F.3d 718 (9th Cir. 1997) .................................................................................4

*Costello v. United States*
 365 U.S. 265 (1961) ............................................................................................13

*Cupolo v. Bay Area Rapid Transit*
 5 F. Supp. 2d 1078 (N.D. Cal. 1997) .....................................................................4

*Curry v. Baker*
 802 F.2d 1302 (11th Cir. 1986) ...........................................................................11

*Demos v. U.S. District Court*
 925 F.2d 1160 (9th Cir.1991) ..............................................................................11

**TABLE OF AUTHORITIES**
(continued)

Page

*DISH Network Corp. v. FCC*
   653 F.3d 771 (9th Cir. 2011).................................................................4

*Farris v. Seabrook*
   677 F.3d 858 (9th Cir. 2012).................................................................3

*Forest City Daly Housing v. Town of N. Hempstead*
   175 F.3d 144 (2nd Cir. 1999)...............................................................3

*Friedman c. Snipes*
   345 F. Supp. 2d (S.D. Fla. 2004) .......................................................10

*Garcia v. Google, Inc.*
   786 F.3d 733 (9th Cir. 2015)...............................................4, 5, 12, 16

*Hubbard v. Ammerman*
   465 F.2d 1168 (5th Cir. 1972)............................................................11

*In re Estate of Haskell*
   92 Cal.App.4th 966 (2001)....................................................................9

*In re Town of Sitka*
   11 Alaska 201 (1946)...........................................................................9

*Katie A. ex rel. Ludin v. Los Angeles Cty.*
   481 F.3d 1150 (9th Cir. 2007)........................................................4, 12

*Kozuszek v. Brewer*
   546 F.3d 485 (7th Cir. 2008)................................................................8

*Larry P. v. Riles*
   502 F.2d 963 (9th Cir. 1974)................................................................4

*Mazurek v. Armstrong*
   520 U.S. 968 (1997) .............................................................................3

*McMichael v. County of Napa*
   709 F.2d 1268 (9th Cir. 1983)..............................................................6

*Midgett v. Tri-County Metro. Transp. Dist.*
   254 F.3d 846 (9th Cir. 2001)................................................................4

*Moss v. U.S. Secret Serv.*
   572 F.3d 962 (9th Cir. 2009)................................................................5

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Nken v. Holder*
    556 U.S. 418 (2009) .................................................................................................17

4

5

*Olagues v. Russoniello*
    770 F.2d 791 (9th Cir. 1985) ................................................................................6

6

*Schwier v. Cox*
    42 F. Supp. 2d 1266 (N.D. Ga. 2005) ...............................................................10

7

8

*Smith v. Salt River Project Agric. Improvement & Power Dist.*
    109 F.3d 586 (9th Cir. 1997)............................................................................9, 10

9

*Southwest Voter Registration Educ. Project v. Shelley*
    344 F.3d 914 (9th Cir. 2003)...........................................................................10, 13

10

*Southwest Voter Registration Project v. Shelley*
    278 F. Supp. 2d 1131 (C.D. Cal. 2003)...............................................................13

11

12

*Stanley v. Univ. of S. Cal.*
    13 F.3d 1313 (9th Cir. 1994)..................................................................................3

13

14

*Storer v. Brown*
    415 U.S. 724 (1974) ...............................................................................................7

15

*Swann v. Secretary*
    668 F.3d 1285 (11th Cir. 2012)..............................................................................5

16

17

*Tashjian v. Republican Party of Connecticut*
    479 U.S. 208 (1986) ...............................................................................................7

18

*Texas v. United States*
    523 U.S. 296 (1998) ...............................................................................................6

19

20

*Thomas v. Anchorage Equal Rights Comm'n*
    220 F.3d 11354 (9th Cir. 2000)..............................................................................6

21

22

*Thomas v. County of Los Angeles*
    978 F.2d 504 (9th Cir. 1992)..................................................................................4

23

24

*Thornburg v. Gingles*
    478 U.S. 30 (1986).............................................................................................9, 10

25

26

*Timmons v. Twin Cities Area New Party*
    520 U.S. 351 (1997)............................................................................................7, 8

27

28

v

**TABLE OF AUTHORITIES**
(continued)

Page

*Todd v. McElhany*
   No. CIV S-11-2346 LKK, 2011 WL 5526464 (E.D. Cal. Nov. 14, 2011) ..............................11

*Trueblood v. Wash. State Dept. of Social & Health Servs.*
   -- F.3d --, No. 15-35462, 2016 WL 2610233 (9th Cir., May 6 2016).........................................4

*Wash. Ass'n of Churches v. Reed*
   492 F. Supp. 2d 1264 (W.D. Wash. 2006)...............................................................................6

*Welch v. McKenzie*
   756 F.2d 1311 (5th Cir. 1985)..................................................................................................8

*Winter v. Natural Resources Defense Council, Inc.*
   555 U.S. 7 (2008) .............................................................................................................3, 4, 16

STATUTES

28 U.S.C.
   § 1361...................................................................................................................................2, 11

42 U.S.C.
   § 1983................................................................................................................................2, 8, 9

52 U.S.C.
   § 10101(a)(2)(A) .....................................................................................................................10
   § 10101(a)(2)(B) .....................................................................................................................10
   § 21083....................................................................................................................................13

California Elections Code
   § 340..........................................................................................................................................2
   §§ 2102 and 2107....................................................................................................................12
   §§ 2170-2173...........................................................................................................................13
   § 3001........................................................................................................................................2
   § 3006.................................................................................................................................14, 15
   § 3006 and 3007.7....................................................................................................................13
   § 3006(c)....................................................................................................................................2
   §§ 3006(c), 3205(b), 13102(b)..................................................................................................7
   § 3007......................................................................................................................................15
   § 3007.7(a)...............................................................................................................................14
   § 3105........................................................................................................................................2
   §§ 7500, 6500-6524 ................................................................................................................16
   §§ 9092, 13314(a) ....................................................................................................................12
   § 13102(b)................................................................................................................................14
   § 14102, 14299 ........................................................................................................................15

Opposition of the Secretary of State to Motion for Preliminary Injunction (3:16-cv-02739-WHA )

# TABLE OF AUTHORITIES
## (continued)

Page

California Evidence Code
  § 664........................................................................................................15, 16

**CONSTITUTIONAL PROVISIONS**

United States Constitution
  First Amendment..........................................................................................2, 8
  Fourteenth Amendment................................................................................2, 8

**COURT RULES**

United States District Court
  Local Rule 7-2(b)(4) ........................................................................................2
  Local Rule 7-2(c) ............................................................................................1

**OTHER AUTHORITIES**

Assembly Bill 1436........................................................................................13

Opposition of the Secretary of State to Motion for Preliminary Injunction (3:16-cv-02739-WHA )

# INTRODUCTION

This action presents an ostensible challenge to the process by which presidential primaries are held in California.  On the eve of the California primary election, Plaintiffs have sued the California Secretary of State and two county elections officials.  By their motion Plaintiffs ask the Court to give them, on an emergency basis, an injunction that would include:

- An order requiring day-of-voting registration, a program that under California law will not be operational until 2018, and logistically could not be implemented for an election that will occur in less than one week;

- An order directing "all poll workers" to provide voters with certain information that, while a practice encouraged as part of the State's goal of providing voters with a positive Election Day experience, is not a requirement of the Elections Code; and

- An order requiring "public service announcements," that, to the extent relevant or accurate, add nothing to massive voter outreach that the Secretary has made and is continuing to make with respect to the upcoming election,

In addition, Plaintiffs ask the Court to order unspecified parties, but presumably county registrars of voters across the state, to comply with Elections Code requirements concerning provision of ballots at polling places, where Plaintiffs have presented no evidence that the county elections officials intend to do anything less than their legal duties.[1]

Changing the rules in the middle of an election is unfair to the voters, candidates and elections officials, but more importantly, it threatens the integrity of the election process.  And last minute requests for extraordinary relief distract from the work that must be done in the few days that remain before the election.

Plaintiffs' motion – and this lawsuit – is frivolous.  The motion should be denied.

---

[1] Plaintiffs' motion omits a proposed order, required by Local Rule 7-2(c), so the precise relief they seek is not clear.

1

**STATEMENT OF THE CASE**

The presidential primary election in California is set for June 7, 2016, a date established in California Elections Code section 340.  The last day to register to vote, or to re-register to vote to change parties or to become a no party preference (NPP) voter, was May 23, 2016.  Military and overseas ballots were sent out between April 8 and April 23, 2016.  CAL. ELEC. CODE § 3105.  Vote-by-mail voting has been going on for weeks.  *Id.* § 3001.

The vote by mail applications include language advising NPP voters of their right to request a primary ballot for those political parties that have opted to allow NPP voters to participate in their primary elections.  CAL. ELEC. CODE § 3006(c).  In addition to printed vote by mail applications, local elections officials may, but are not required to, offer an electronic vote by mail application.  Voters also may establish permanent vote by mail voter status.  *Id.* § 3201.  Prior to every partisan primary election, county elections officials are required to send out a notice and application to every NPP voter who is also a permanent vote-by-mail voter, informing the voter "that he or she may request a vote by mail ballot for a particular party for the primary election, if that political party adopted a party rule" allowing NPP voters to vote in their primary.  *Id.* § 3205(b).  The accompanying application allows the NPP voter to write in the political party ballot he or she wishes to receive.  *Id.*

Plaintiffs filed this action on May 20, 2016.[2]  The Complaint alleges violations of the Voting Rights Act, 42 U.S.C. § 1983 and the First and Fourteenth Amendments of the United States Constitution.  In addition, the Complaint contains a claim for writ of mandamus under 28 U.S.C. § 1361, based on Defendants' alleged violations of the California Elections Code.  On the evening of May 27, 2016, one week after the action was filed and less than two weeks before the presidential primary, Plaintiffs filed a motion for preliminary injunction, and requested an expedited hearing.[3]

---

[2] Plaintiffs served the complaint on the Secretary of State on May 24, 2016.

[3] Plaintiffs' notice of motion omitted the memorandum of points and authorities that is required to be included in the motion under Local Rule 7-2(b)(4).  This Court entered a scheduling order that required Plaintiffs to serve all Defendants with the motion and all supporting papers no later than 4:00 p.m. on May 28, 2016.  Just before 4:00 p.m. Plaintiffs filed

(continued…)

2

1

**LEGAL STANDARD**

2     "'[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be

3     granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Mazurek v.*

4     *Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted).  A Plaintiff seeking a preliminary

5     injunction must satisfy a four-part test set out by the United States Supreme Court in *Winter v.*

6     *Natural Resources Defense Council, Inc*., 555 U.S. 7, 20 (2008).  That is, it must "establish

7     [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the

8     absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an

9     injunction is in the public interest." *Id*.; *see Farris v. Seabrook*, 677 F.3d 858, 864 (9th Cir.

10    2012).

11        Further, the primary purpose of a preliminary injunction is to preserve the status quo while

12    a case is decided on the merits.  *Chalk v. U.S. Dist. Court*., 840 F.2d 701, 704 (9th Cir. 1988).

13    While a prohibitory injunction preserves the status quo, a mandatory injunction "goes well

14    beyond simply maintaining the status quo pendente lite [and] is particularly disfavored." *Stanley*

15    *v. Univ. of S. Cal*., 13 F.3d 1313, 1320 (9th Cir. 1994) (citation omitted).  When a party requests a

16    mandatory preliminary injunction, "the district court should deny such relief 'unless the facts and

17    law clearly favor the moving party.'" *Id*. (citation omitted); *3570 East Foothill Blvd., Inc. v. City*

18    *of Pasadena*, 912 F. Supp. 1257, 1261 (C.D. Cal. 1995) ("preliminary injunctions which change

19    the status quo are 'viewed with hesitancy and carry a heavy burden of persuasion'") (internal

20    citation omitted).  That close inquiry should be even more rigorous when the preliminary

21    injunction, if ordered, would give the Plaintiffs "substantially all of the relief sought and that

22    relief cannot be undone even if Defendant prevails at trial on the merits." *Forest City Daly*

23

24    _____

      (…continued)

25    a document that was titled "Memorandum of Points and Authorities in Support of Plaintiffs'
      Request for Preliminary Injunctive Relief," but the 19-page document consisted entirely of pasted

26    up pieces of a previously-filed declaration of counsel, excerpts from Plaintiffs' complaint, and a
      concluding statement that Plaintiffs intended to ask the court's permission to provide a modified

27    brief at 5:00 p.m. that would fix "word processing errors."  It was after 6 p.m. before Plaintiffs
      filed, without an application seeking leave, a 25-page "amended" memorandum.

28

1   *Housing v. Town of N. Hempstead*, 175 F.3d 144, 150 (2nd Cir. 1999); *Larry P. v. Riles*, 502 F.2d

2   963, 965 (9th Cir. 1974).

3        A plaintiffs' evidentiary burden in seeking provisional relief in advance of trial is more

4   rigorous when the plaintiff seeks to enjoin governmental action taken in the public interest

5   pursuant to statutory provisions. *Midgett v. Tri-County Metro. Transp. Dist.*, 254 F.3d 846, 851

6   (9th Cir. 2001); *see also Thomas v. County of Los Angeles*, 978 F.2d 504, 508 (9th Cir. 1992).

7   Thus, "[a] strong factual record is therefore necessary before a federal district court may enjoin a

8   State agency." *Cupolo v. Bay Area Rapid Transit*, 5 F. Supp. 2d 1078, 1085 (N.D. Cal. 1997)

9   (citing *Thomas*, 978 F.3d at 508). Moreover, "it is clear that a state suffers irreparable injury

10  whenever an enactment of its people or their representatives is enjoined." *Coalition for Economic*

11  *Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997). Thus, "a federal court must exercise

12  restraint when a plaintiff seeks to enjoin any non-federal government agency, be it local or state."

13  *Midgett*, 254 F.3d at 851.

14       Finally, *a federal court may not enjoin a state agency based on an alleged violation of state*

15  *law*. The court will be deemed to have abused its discretion if its injunction "require[s] more

16  state officials than is necessary to ensure their compliance with federal law." *Clark v. Coye*, 60

17  F.3d 600, 604 (9th Cir. 1995); *See Trueblood v. Wash. State Dept. of Social & Health Servs.*,

18  -- F.3d --, No. 15-35462, 2016 WL 2610233 (9th Cir., May 6 2016); *Katie A. ex rel. Ludin v. Los*

19  *Angeles Cty.*, 481 F.3d 1150, 1155 (9th Cir. 2007).

20  **ARGUMENT**

21  **I.   PLAINTIFFS HAVE NO LIKELIHOOD OF SUCCESS ON THE MERITS.**

22       The first element in *Winter*'s four-factor test for determining whether a preliminary

23  injunction should issue, and the most important, is whether Plaintiffs can show they are likely to

24  succeed on the merits of their claim. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).

25  "Because it is a threshold inquiry, when 'a plaintiff has failed to show the likelihood of success

26  on the merits, [the court] need not consider the remaining three [*Winter* elements]'." *Id.* (quoting

27  *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937 (9th Cir. 2013).

28  Here, Plaintiffs' burden is "doubly demanding" because they are seeking a mandatory injunction,

and therefore "must establish that the law and facts *clearly favor* [their] position." *Id*. This, Plaintiffs have not done.

### A.    Plaintiffs' Cannot Prevail on Their Complaint, Which Does Not State a Claim on Which Relief May Be Granted.

To state a claim on which Plaintiffs could be entitled to relief, their complaint[4] must state a claim that is facially plausible, that is, "'the non-conclusory factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the Plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  "Determining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 622, 670 (2009); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Plaintiffs' complaint simply does not plausibly suggest a claim entitling them to any federal court relief.  Here, the Complaint alleges in general terms a "failure to inform NPP voter (no party preference voters) of their right to obtain a 'crossover ballot' and vote in the Presidential primary," and an alleged "failure to inform party-affiliated voters of their right to re-register as no party preference voters and still receive the Presidential primary ballots of the Democratic, American Independent, and Libertarian parties."  Complaint ¶ 3. This does not plausibly state a claim for relief.  *See Swann v. Secretary*, 668 F.3d 1285, 1289 (11th Cir. 2012) (inmate lacked standing to bring 1983 claim based on elections officials' failure to send absentee ballot to inmate's jail address where inmate did not request that the ballot be sent there).  At the threshold, no preliminary injunction should be entered based on a facially defective complaint.

Indeed, Plaintiffs' complaint is unintelligible.  Their prayer seeks a declaratory judgment that "Defendants' challenge and removal procedures" violate the Voting Rights Act and the federal constitution, but the allegations of the complaint do not explain, describe, or even mention, any challenge and removal procedures, much less allege facts showing that any such procedures violate federal law.[5]

---

[4] All references herein are to Plaintiffs' First Amended Complaint.

[5] Plaintiffs have asked the Court to allow them to amend the complaint to conform to

(continued…)

1    Moreover, the Complaint is insufficient to show standing.  In order to have standing,

2  Plaintiffs must show "first, a 'distinct and palpable' injury to the plaintiff, be it 'threatened or

3  actual'; second, a 'fairly traceable causal connection' between that injury and the challenged

4  conduct of the defendants; and third, a 'substantial likelihood' that the relief requested will

5  redress or prevent the injury."  *Olagues v. Russoniello*, 770 F.2d 791, 796 (9th Cir. 1985)

6  (quoting *McMichael v. County of Napa*, 709 F.2d 1268, 1269-70 (9th Cir. 1983).  Similarly, "[a]

7  claim is not ripe for adjudication if it rests upon contingent future events that may not occur as

8  anticipated, or indeed may not occur at all."  *Texas v. United States*, 523 U.S. 296, 300 (1998);

9  *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 11354, 1138 (9th Cir. 2000).  Except for

10  vague and sweeping generalizations, Plaintiffs have failed to plead, much less prove, any

11  threatened or actual injury.

12    Even if the Court were to overlook these fundamental problems, Plaintiffs have not joined

13  in this lawsuit 56 of the 58 county elections officials against whom Defendants seek injunctive

14  relief.  Plaintiffs seek a broad injunction requiring specific actions in connection with a state-wide

15  election that is run by *local elections officials*.  *See* Motion at 2-3; Prayer to Amended

16  Complaint.[6]

17    Plaintiffs' complaint, even taken as true, does not state a claim on which any relief may be

18  granted, let alone the extraordinary remedy of a mandatory injunction that would provide

19  Plaintiffs the ultimate relief they seek in the action.

20

21

22  _____

23  (…continued)
proof, but their evidence adds nothing to their allegations.

24    [6] Plaintiffs do not allege that the Secretary controls local election officials, and indeed the
Complaint concedes that he does not.  Complaint ¶ 15.  Thus Plaintiffs' reliance on *Wash. Ass'n*

25  *of Churches v. Reed*, 492 F. Supp. 2d 1264 (W.D. Wash. 2006), which involved a statute that
gave the Washington Secretary of State "the authority to instruct and compel county election

26  official to comply with the laws, rules and guidelines governing elections," and in which
Plaintiffs were seeking to enjoin an election-related statute, is misplaced.  An injunction directed

27  to the Secretary cannot impose mandates on county election officials who are not parties to this
litigation.

28

1

**B.    In Particular, Plaintiffs Have No Likelihood of Succeeding on the Merits of Their Federal Claims.**

2

3

**1.    Plaintiffs are unlikely to succeed on their First and Fourteenth Amendments claims.**

4

**a.    The Elections Code does not violate the First or Fourteenth Amendments.**

5

6    At least some of Plaintiffs' allegations appear to be an attack on the Elections Code, since

7    Plaintiffs complain, for example, that party-affiliates must affirmatively be informed that they

8    may re-register as NPP voters, and that NPP voters must be offered Democratic, American

9    Independent Party or Peace and Freedom ballots by poll worker on Election Day, neither of

10   which is a requirement of the Elections Code.  *See* CAL. ELEC. CODE §§ 3006(c), 3205(b),

11   13102(b).

12   The Constitution grants to the States "a broad power to prescribe the 'Times, Places and

13   Manner of holding Elections for Senators and Representatives,' Art. I, § 4, cl. 1."  *Tashjian v.*

14   *Republican Party of Connecticut*, 479 U.S. 208, 217 (1986).  As a practical matter, elections

15   cannot be conducted in the absence of extensive state regulation of the election process:

16   "Common sense, as well as constitutional law, compels the conclusion that government must play

17   an active role in structuring elections; 'as a practical matter, there must be a substantial regulation

18   of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to

19   accompany the democratic processes.'"  *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (quoting

20   *Storer v. Brown*, 415 U.S. 724, 730 (1974)); *accord*, *Timmons v. Twin Cities Area New Party*,

21   520 U.S. 351, 358 (1997) ("States may, and inevitably must, enact reasonable regulations of

22   parties, elections, and ballots to reduce election- and campaign-related disorder.").

23   In elections cases, the Supreme Court has developed a balancing test to accommodate

24   speech rights and a State's interest in preserving fair and impartial elections.  First, a court must

25   weigh the character and magnitude of the burden the State's rule imposes on those rights against

26   the interests the State contends justify that burden, and consider the extent to which the State's

27   concerns make the burden necessary."  *Timmons v. Twin Cities Area New Party*, 520 U.S. 351,

28   358 (citations and internal quotations omitted).

7

1

2

> Regulations imposing severe burdens on plaintiffs' rights must be narrowly
> tailored and advance a compelling state interest.  Lesser burdens, however, trigger
> less exacting review, and a State's important regulatory interests will usually be
> enough to justify reasonable, nondiscriminatory restrictions.  . . . .  No bright line
> separates permissible election-related regulation from unconstitutional infringements
> on First Amendment freedoms.

3

4

5    *Timmons*, 520 U.S. at 358-359 (citations and internal quotations omitted).

6        Plaintiffs' complaint contains only a general allegation, quoted in Plaintiffs' Amended

7    Memorandum, that "the acts of the defendants' toward no party preference voters constituted

8    arbitrary discrimination of these plaintiffs as well as the associational classes that Voting Rights

9    Defense Project and American Independent Party represent."  Complaint ¶ 29; Amended

10   Memorandum at 9.  Plaintiffs do not explain why the First or Fourteenth Amendment is violated

11   by imposing on an NPP voter the de minimis burden of having to request a party presidential

12   primary ballot, or how a party-affiliated voter is unduly burdened because the state does not

13   affirmatively notify that voter that he or she will have to re-register to vote if he or she wishes to

14   vote for a candidate of another political party.

15       Simply treating NPP voters differently from party voters is not a constitutional violation.[7]

16              **b.        Plaintiffs are unlikely to succeed on claims of election fraud.**

17       To the extent Plaintiffs' claims can be construed as claims for election fraud, Plaintiffs still

18   cannot prevail on their First and Fourteenth Amendment claims.  A violation of federal

19   constitutional law under section 1983 requires "willful conduct" that "undermines the organic

20   processes by which candidates are elected." *Kozuszek v. Brewer*, 546 F.3d 485, 488 (7th Cir.

21   2008); *Broyles v. Texas*, 618 F. Supp. 2d  661, 694 (S.D. Tex. 2009).  A violation exists only

22   when election irregularities implicate "the very integrity of the electoral process," and "reach a

23   point of patent and fundamental unfairness."  *Welch v. McKenzie*, 756 F.2d 1311, 1314 (5th Cir.

24   1985).

25

26   _____

27       [7] In fact, First Amendment associational rights allow the *exclusion* of NPP voters from
     party primaries altogether.  *California Democratic Party v. Jones*, 530 U.S. 567. 570-71, 575-76
28   (2000).

8

Nothing in the complaint or Plaintiffs' evidence suggests purposeful or systematic discriminatory conduct.  At the most generous, Plaintiffs' claims could be construed as alleging isolated incidents of election irregularity, which are not sufficient to support a claim under section 1983.  "Garden variety" irregularities such as miscounting votes, counting votes illegally cast, arbitrarily rejecting certain ballots, or providing incorrect information to individual voters are not enough to implicate section 1983, *see Broyles*, 618 F. Supp. 2d at 694 (collecting cases cited therein), and Plaintiffs' allegations do not rise even to this level.  For example, in *Broyles*, the court concluded that poll officials' failure on scores of occasions to offer a provisional ballots and their provision of inaccurate information about the ballot did not violate section 1983.  *Id.*  Here, Plaintiffs' main complaint is that Defendants did not do enough – in Plaintiffs' view – to make voters aware of laws that the voters are already presumed to know.   *See In re Estate of Haskell*, 92 Cal.App.4th 966, 973 (2001); *In re Town of Sitka*, 11 Alaska 201, 208 (1946).  They have neither alleged nor proffered evidence of any discriminatory intent.  None of the declarations Plaintiffs have submitted in support of their claim indicate systematic discriminatory conduct; indeed, none of those declarations establish that anyone actually has been denied the right to register to vote or to vote.[8]

> ## 2.   Plaintiffs have shown no likelihood of prevailing on their Voting Rights Act claims.
>
> ### a.   Plaintiffs have not alleged or shown a race or minority discrimination motive or result.

The Voting Rights Act was intended to eliminate racial discrimination in voting requirements.  *Thornburg v. Gingles*, 478 U.S. 30, 47 (1986); *Smith v. Salt River Project Agric. Improvement & Power Dist.*, 109 F.3d 586, 595 (9th Cir. 1997) (in determining whether challenged voting practice violates Voting Rights Act a court must determine whether the process is equally open to minority voters).  Plaintiffs do not and cannot allege that the alleged

---

[8] Many of the declarants reported incidents that do not involved any conduct of the Secretary of State or the San Francisco or Alameda elections officials.  Any claims against the elections officials in Monterey, Orange, San Diego or any other county would have to be asserted in an action against those persons.

9

1   wrongdoing is tied to "social and historical conditions," for example, that "cause an inequality in

2   the opportunities enjoyed by black and white voters to elect their preferred representatives."

3   *Thornburg v. Gingles*, 478 U.S. 30, 47 (1986); *see Southwest Voter Registration Educ. Project v.*

4   *Shelley*, 344 F.3d 914, 918 (9th Cir. 2003). Plaintiffs do not purport to identify the alleged injury

5   with any particular race or minority group. *See Smith v. Salt River Project*, 109 F.3d 586, 595

6   (9th Cir. 1997). Accordingly, Plaintiffs' claims under the Voting Rights Act fail.

7   **b.   Plaintiffs have shown no likelihood of success on their claims
         based on 52 U.S.C. section 10101(a)(2)(A).**

8

9   Even if Plaintiffs could overcome the threshold defect in their Voting Rights Claim – that

10  they have neither alleged or proved injury to a particular race of minority group – Plaintiffs'

11  claim under 52 U.S.C. section 10101(a)(2)(A) would fail. That statute prohibits elections

12  officials from discriminating between individuals within the same county or other political

13  subdivision with respect to voter registration – in determining whether an individual is *qualified*

14  *to vote under state law*. Plaintiffs are not being denied the right to register to vote. Section

15  10101(a)(2)(A) does not require that elections officials provide voters differently situated with the

16  same information.

17  **c.   Plaintiffs' have no likelihood of prevailing on their 52 U.S.C.
         section 10101(a)(2)(B) claims.**

18

19  Plaintiffs' claim under section 10101(a)(2)(B) of the Voting Rights Act is meritless.

20  Section 10101(a)(2)(B) prohibits a state from refusing to allow an individual to register to vote

21  based on an immaterial error or omission in the registration application. *Friedman v. Snipes*, 345

22  F. Supp. 2d 1356, 1370-73 (S.D. Fla. 2004). This statute is wholly irrelevant to the petitioners'

23  claims in this case. There is no allegation in the Complaint that any of the Defendants have

24  improperly rejected any application to register to vote, much less that they have done so on the

25  basis of an immaterial error or omission in the registration application. The decision in *Schwier*

26  *v. Cox*, 42 F. Supp. 2d 1266 (N.D. Ga. 2005), in which the court held that the Voting Rights Act

27  was violated when elections officials refuse to allow voters to register unless they provide social

28

10

1   security numbers – information protected from disclosure under federal law and immaterial to the

2   voter registration process – is simply inapposite.

3   **C.   Plaintiffs Likewise Have No Likelihood of Succeeding on the Merits of Their California Elections Code Claims.**

4

5   **1.   Plaintiffs' state Elections Code claims cannot support the requested injunction.**

6   **a.   This Court lacks jurisdiction over Plaintiffs' Elections Code Mandamus Claims.**

7

8       Plaintiffs' Elections Code claims are set forth in Plaintiffs' "Fourth Cause of Action,"

9   which seeks "mandamus pursuant to 28 U.S.C. 1361." This Court lacks jurisdiction over that

10  mandamus claim. Section 1361 provides: "The district courts shall have original jurisdiction of

11  any action in the nature of mandamus to compel an *officer or employee of the United States or*

12  *any agency thereof* to perform a duty owed to the Plaintiff." (Emphasis added.) It does not give

13  federal courts mandamus jurisdiction over state officials. "[F]ederal district courts are without

14  power to issue mandamus to direct state courts, state judicial officers, or other state officials in

15  the performance of their duties. A petition for a writ of mandamus to compel a state court or

16  official to take or refrain from some action is frivolous as a matter of law." *Todd v. McElhany,*

17  No. CIV S-11-2346 LKK, 2011 WL 5526464, at *2 (E.D. Cal. Nov. 14, 2011) (citing, inter alia,

18  *Demos v. U.S. District Court*, 925 F.2d 1160, 1161 (9th Cir.1991), and *Clark v. Washington*, 366

19  F.2d 678, 681 (9th Cir.1966)).

20  **b.   The Court may not enter an injunction based on Plaintiffs' Elections Code claims.**

21

22      Even if the Court could exercise jurisdiction over Plaintiffs' Elections Code claims, those

23  claims cannot support the injunction Plaintiffs seek. The federal courts should not intervene in

24  state elections to decide issues of state law where no federal question is involved. *Curry v. Baker*,

25  802 F.2d 1302, 1315 (11th Cir. 1986); *Hubbard v. Ammerman*, 465 F.2d 1168 (5th Cir. 1972).

26  And a federal court abuses its discretion if it enters any injunction – much less a preliminary

27  injunction – that "requires any more of state officers than demanded by federal constitutional or

28

1   statutory law." *Katie A. ex. rel. Ludin v. Los Angeles Cty.*, 481 F.3d at 1155; *Clark v. Coye*, 60

2   F.3d at 604 (9th Cir. 1995).  Thus Plaintiffs' Elections Code claims are legally insufficient.

3                    **2.    Even if the Court properly could consider Plaintiffs' Elections Code
                            claims, Plaintiffs cannot show a likelihood of succeeding on them.**

4

5          Even if the Court were to consider Plaintiffs' state law claims, which it should not,

6   Plaintiffs have not shown that they are likely to succeed on them, much less that the law and facts

7   clearly favor their position, which is their burden.  *See Garcia v. Google, Inc.*, 786 F.3d at 740.

8                        **a.    The requested injunction should be denied under the doctrine
                                of laches.**

9

10         Plaintiffs have waited too long to assert their claims, to Defendants' prejudice.  The Voter

11  Information Guide went through a public review period from February 23, 2016 to March 14,

12  2016, during which time anyone seeking to challenge its content could have filed a petition for

13  writ of mandamus.  Declaration of Steven J. Reyes in Opposition to Application for Temporary

14  Restraining Order (Reyes Declaration) ¶ 6; CAL. ELEC. CODE §§ 9092, 13314(a).  The application

15  to vote by mail has been posted to the Secretary of State website since 2002.  Reyes Declaration

16  ¶ 22 & Exs. S & T.  Nothing in Plaintiffs' complaint suggests that Plaintiffs did not discover, and

17  could not in the exercise of reasonable diligence have discovered, the alleged problems long ago.[9]

18         Yet Plaintiffs waited until just days before the election before filing this action, and

19  inexplicably delayed a week after filing this action before seeking their motion for an injunction.

20  The Secretary of State has been, and is continuing to engage in, appropriate outreach efforts.

21  Reyes Declaration ¶¶ 2-21, 23 & Exs. A-Q.  Plaintiffs' own evidence indicates that many, if not

22  most, poll workers have already been trained for their Election Day duties.  The last day to

23  register to vote has passed, and the last day to request a vote by mail ballot will have passed,

24  before this motion is heard.  Re-opening registration to allow voting through June 7, 2016 would

25  violate Elections Code sections 2102 and 2107.  Moreover, it is simply not logistically possible.

26

27         [9] The fact that Plaintiffs' *counsel* claim to have only recently learned of alleged problems
    is irrelevant.

28

1   *See* Declaration of Susan Lapsley in Opposition to Motion for Preliminary Injunction (Lapsley

2   Declaration) ¶¶ 2-12.  Same day conditional voting will be possible in California on January 1 of

3   the year following the year California has fully deployed the uniform, centralized statewide voter

4   registration database required by the Help America Vote Act, 52 U.S.C. section 21083.  *See* 2012

5   Cal. Stat. Ch. 497 (Assembly Bill 1436); CAL. ELEC. CODE §§ 2170-2173.  But that deployment is

6   not yet complete.  Lapsley Declaration ¶¶ 5-7.

7   　　　"Under the equitable doctrine of laches, the Court may deny an injunction to a plaintiff who

8   fails diligently to assert his claim. 'Laches requires proof of (1) lack of diligence by the party

9   against whom the defense is asserted, and (2) prejudice to the party asserting the defense.'"

10   *Southwest Voter Registration Project v. Shelley*, 278 F. Supp. 2d 1131, 1137-38 (C.D. Cal. 2003)

11   (quoting *Costello v. United States*, 365 U.S. 265, 282 (1961)).[10]  Here, the requirements for

12   laches – lack of diligence on Plaintiffs' part and prejudice to Defendants – have been met.

13   　　　　　　　　　**b.   Plaintiffs have not shown a violation of the Elections Code.**

14   　　　Plaintiffs' Elections Code claims also fail on the merits.  The *only* factual allegation made

15   against the Secretary in the complaint is a bare allegation, on information and belief, that "the

16   Secretary of State failed properly to advise the other Defendants."  Amended Complaint ¶ 15.

17   And the very next sentence concedes that the county Defendants have "enormous autonomy" to

18   run their affairs "free from interference from the Secretary."  *Id*.  Although Plaintiffs allege that

19   the Secretary of State is an "indispensable party," it is not clear what if any relief they are seeking

20   from him. *See id*., Prayer; Amended Memorandum at 2-4.

21   　　　Plaintiffs argue that the county Defendants' electronic voter registration applications violate

22   Elections Code section 3006 and 3007.7 by not providing "mandatory notice to all voters of their

23   right to state no party preference, and, further, that a no party preference voter shall be provided

24   with Democratic, American Independent Party or Libertarian Party Presidential primary ballot"

25   Complaint ¶ 8.  But section 3006 and 3007 apply only to applications for a vote by mail ballot,

26

27   　　　[10] The district court decision in *Southwest* was reversed by a panel of the Ninth Circuit,
344 F.3d 882 (2003).  On rehearing *en banc* the Ninth Circuit affirmed the district court decision,
but did not address the laches issue.  344 F.3d 914 (2003).

28

1   and the applications are not required to include the notice language Plaintiffs claim.  Section 3006

2   simply requires that the application

3       shall inform the voter that *if he or she has declined to disclose a preference for a*
        *political party*, the voter may request a vote by mail ballot for a particular political

4       party for the partisan primary election, if that political party has adopted a party rule,
        duly noticed to the Secretary of State, authorizing that vote. . . .  The application shall

5       contain a checkoff box with a conspicuously printed statement that reads substantially
        similar to the following: "I have declined to disclose a preference for a qualified

6       political party.  However, for this primary election only, I request a vote by mail
        ballot for the _____ Party."  The name of the political party shall be personally

7       affixed by the voter.

8   CAL. ELEC. CODE § 3006 (emphasis added).  The Secretary of State has done much more than the

9   statute requires.  He has engaged in extensive outreach to inform all voters about their ability to

10  register as NPP voters and to vote in a primary election for a party that allows NPP voters to do

11  so.  Reyes Declaration ¶¶ 2-21 and Exs. A-R.  And it is worth noting that county elections

12  officials are not required to provide electronic vote by mail applications at all.  The Elections

13  Code merely gives the local elections officials the option to do so.  CAL. ELEC. CODE § 3007.7(a)

14  ("The local elections official *may* offer a voter the ability to electronically apply for a vote by

15  mail voter's ballot." (emphasis added)).  If Plaintiffs could show a problem with the electronic

16  applications, the remedy would simply be to remove that option, and require all voters to use a

17  printed application.

18      Although not pleaded in the Complaint, Plaintiffs' motion appears to argue that the

19  Elections Code requires that all poll workers must inform NPP voters of the right to receive a

20  presidential ballot, and that the failure of some poll workers to do so would violate the Elections

21  Code.  Motion at 3.  Plaintiffs are simply incorrect.  Elections Code section 13102(b) states "At

22  partisan primary elections, each voter not registered disclosing a preference with any one of the

23  political parties participating in an election shall be furnished only a nonpartisan ballot, *unless he*

24  *or she requests a ballot of a political party* and that political party, by party rule duly noticed to

25  the Secretary of State, authorizes a person who has declined to disclose a party preference to vote

26  the ballot of that political party."  (Emphasis added.)   The Secretary of State's poll workers

27  instruction guide encourages poll workers to affirmatively ask NPP voters if they wish to request

28  a party presidential ballot.  But the fact that the Secretary of State encourages, and elections

14

1    officials may choose to instruct poll workers to do more than is legally required does not mean

2    that a failure to do so a violation of the Elections Code.[11]

3         Plaintiffs' argument that the county Defendants violated Elections Code section 3006 "by

4    preparing the Voter Information Pamphlet and Sample Ballot in a non-uniform manner" also

5    fails.  Preliminarily, section 3006 sets forth requirements for voter registration applications, not

6    voter information pamphlets and sample ballots.  The Secretary of State is required to, and did,

7    prepare a uniform application format for a vote by mail ballot.  CAL. ELEC. CODE § 3007.

8    However, the statute expressly provides that "[t]he uniform format need not be utilized by

9    elections officials in preparing a vote by mail voter's ballot application to be included with the

10   sample ballot."  Id.

11        Neither the Complaint nor Plaintiffs' motion includes any factual basis for Plaintiffs'

12   request for an injunction order "[e]nsuring that sufficient ballots forms for all of the Presidential

13   primary candidates are at all of the polling places on June 7."  Complaint, Prayer.  The Elections

14   Code contains specific provisions relating to ballots, CAL. ELEC. CODE § 14102, 14299, and

15   Plaintiffs have not alleged that Defendants have violated, or have threatened to violate, these

16   provisions. Due to the heightened interest in this election, the Secretary of State has urged county

17   elections officials to ensure polling places have ample ballots, and has reminded them of their

18   statutory obligation to have alternative procedures in place in the event there are insufficient

19   ballots at a precinct.  Reyes Declaration ¶¶ 19-20 & Exs. P, Q.  There is no basis for presuming

20   that Defendants will not properly perform their legal duties.  See CAL. EVID. CODE § 664.

21        Finally, in support of their motion, Plaintiffs have filed declarations by individuals who

22   complain about individual incidents involving elections officials who are not parties to this action.

23   See Declaration of Mark Seidenberg.  While the Secretary of State is not in a position to address

24   factual allegations pertaining to events in which the Secretary of State's Office was not involved,

25        _____

          [11] Plaintiffs own evidence shows that several counties instruct poll workers to
26   affirmatively ask NPP voters if they wish to receive a party ballot.  See, e.g., Ex. 3 to Declaration
     of Ashkey Beck (Doc. ## 22, 22-1, 23) (Beck Declaration), Doc # 25 at 35,  Doc # 25-1 at 85,
27   Doc # 25-2 (Orange County); Declaration of Michelle M. Jenab, Doc. # 26-2 (Jenab Declaration)
     (Los Angeles County); Declaration  of Mimi Kennedy (Doc. # 26-1) (Kennedy Declaration) ¶ 7
28   (Los Angeles County).

1   it appears that, of those described with sufficient detail to be understood, most of the incidents

2   were either resolved or simply reflect Plaintiffs' misinterpretations of the elections laws.  None

3   indicate that any County is engaged in elections misconduct.

4       In short, even if Plaintiffs' purported Elections Code claims were relevant to this

5   proceeding, and they are not, they fail on the merits.

6   **II.   PLAINTIFFS CANNOT ESTABLISH IRREPARABLE INJURY**

7       Because Plaintiffs have failed to establish a likelihood of success on the merits, the Court

8   need not consider the other elements of the four-part test in *Winter,* 555 U.S. at 20.  *Garcia v.*

9   *Google, Inc.*, 786 F.3d at 740; *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729

10  F.3d at 944.  Plaintiffs' alleged harm is described primarily in terms of abstract speculation – the

11  individual Plaintiffs *might* be denied a "Presidential party ballot for Bernie Sanders."  Complaint

12  ¶¶ 18-19.[12]  Plaintiffs also imply that some NPP voters *might* not be aware that they can

13  personally deliver their application to vote by mail to the county board of elections office by May

14  31, 2016, and that some "party-affiliated voters" *might*  be unaware that they can re-register as

15  NPP voters and receive a Democratic Party primary ballot.  *See* Complaint ¶¶ 3-4. The American

16  Independent Party does not allege that it has or will suffer any harm.[13]  Under California law, "[i]t

17  is presumed that official duty has been regularly performed."  CAL. EVID. CODE § 664.  Plaintiffs

18  have proffered nothing to rebut the presumption that Defendants have and will follow the law in

19  connection with the June 7, 2016 presidential primary.  Plaintiffs' declarations describing alleged

20  voter confusion, even if accepted, is not irreparable harm.  The Secretary of State has widely

21  disseminated information fully informing NPP voters of their right to receive a presidential ballot.

22  

23  [12] Indeed, Ms. Bushnell is a registered Democrat who speculates that *if* she decides to change to a no party preference voter right before the presidential primary, she *might* be denied a ballot of the Democratic slate.  The notion of filing a federal lawsuit ostensibly to preserve the option to disassociate oneself from the Democratic Party so as to be able to vote in the Democratic presidential primary as an NPP voter piles speculation upon speculation.  Moreover, the time to do so has passed; the deadline to change party affiliation or to register was May 23.

26  [13] The American Independent Party has been a registered political party for more than 40 years.  See CAL. ELEC. CODE §§ 7500, 6500-6524 (enacted by Stats. 1994, Ch. 920, Sec. 2).  The Complaint contains no hint as to why the American Independent Party suddenly has a problem with the election process this year.

28  

16

1    Reyes Declaration ¶¶ 2-21 and Exs. A-R.  Plaintiffs have not established any harm, much less

2    irreparable harm.

3    **III.    THE BALANCE OF HARDSHIPS AND PUBLIC INTEREST OVERWHELMINGLY WEIGH
         AGAINST THE REQUESTED TEMPORARY RESTRAINING ORDER.**

4

5         The harm to the opposing party and weighing the public interest, "merge when the

6    Government is the opposing party."  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  Granting

7    Plaintiffs the relief they seek of ordering voter registration to be reopened cannot be achieved in

8    time for the June 7 election, and would be costly at any time.  Lapsley Declaration ¶¶ 2-12.  If

9    voters were to be told that they could register and vote through June 7, when there is no process

10   by which that could happen, confusion and disarray would ensue.  Ordering the Secretary of State

11   to issue a "public service announcement" with the content Plaintiffs demand would spread

12   misinformation.  And Plaintiffs' demand that the announcements be sent out "statewide" over

13   radio and television would be costly.  Plaintiffs' demand that all poll workers be ordered to offer

14   a presidential ballot to an NPP voter, even when the voter has not requested it, omits any

15   explanation as to how that could occur.  The poll workers are hired by local elections officials,

16   not the Secretary of State.  Poll worker training likely has been completed in most, if not all,

17   jurisdictions.  *See, e.g.*, Jenab Declaration ¶ 2; Kennedy Declaration ¶ 7; Declaration of Jennifer

18   J. Abreu (Doc. # 24) ¶ 3; Beck Declaration ¶ 3.; Declaration of Dawn DelMonte (Doc. # 19-3)

19   ¶ 2.  And since only two counties have been sued in this litigation, there is no mechanism for

20   ordering the other 56 counties to impose requirements on their poll workers.

21        Issuance of any injunction in this case would improperly and incorrectly communicate that

22   the Secretary of State is not doing his job with respect to this election, and the elections officials

23   are not doing theirs.  To allow this unprecedented disruption would undermine the hard work of

24   thousands of poll workers, and California elections officials, who are working tirelessly to

25   conduct a successful election.  Both the law and the public interest require that Plaintiffs not be

26   allowed to use the Court to case a cloud over the legitimacy of the election.  The public interest

27   requires that the election proceed without judicial interference.

28

**CONCLUSION**

The Court should deny the motion for preliminary injunction.

Dated:  May 31, 2016                              Respectfully Submitted,

                                                  KAMALA D. HARRIS
                                                  Attorney General of California
                                                  TAMAR PACHTER
                                                  Supervising Deputy Attorney General


                                                  /s/ Sharon L. O'Grady

                                                  SHARON L. O'GRADY
                                                  Deputy Attorney General
                                                  *Attorneys for Defendant Alex Padilla,*
                                                  *Secretary of State*

SA2015102025
VRDP Opposition -Final.doc.

18