1  DONNA ZIEGLER [142415]
   County Counsel
2  By:  ANDREA WEDDLE [250297]
   Assistant County Counsel
3  RAYMOND S. LARA [213181]
   Senior Deputy County Counsel
4  Office of the County Counsel, County of Alameda
   1221 Oak Street, Suite 450
5  Oakland, California 94612
   Telephone:     (510) 272-6700
6
   Attorneys for Defendant
7  Tim Dupuis, Registrar of Voters for
   The County of Alameda
8

9                    UNITED STATES DISTRICT COURT
10               NORTHERN DISTRICT OF CALIFORNIA

11

12
   VOTING RIGHTS DEFENSE PROJECT, *et al.*,        Case No.  C 16-02739 WHA
13
                              Plaintiffs,          **DEFENDANT TIM DUPUIS' OPPOSITION
14                                                 TO PLAINTIFFS' MOTION FOR
                                                   PRELIMINARY INJUNCTION**
15  v.

16  ALEX PADILLA, *et al.*,

17                              Defendants.
                                                   Complaint filed:   May 20, 2016
18                                                 Date:              June 1, 2016
                                                   Time:              11:00 a.m.
19                                                 Department:        8
                                                   Judge:             Hon. William Alsup
20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

This case is not about constitutional voting rights, or even statutory voting rights.  This case boils down to election policy and administration.  Plaintiffs do not like the Defendants' phrasing or method of advising no preference party voters of their option to vote in the Democratic, American Independent, or Libertarian parties' primaries.  Citing no federal law that supports, or even applies to, their demands, Plaintiffs urge this Court to step in and administer the NPP aspect of the elections for the Defendants.

This is improper for several reasons.  First, Courts consistently refrain from meddling in administrative election affairs.  Second, the Plaintiffs' federal law claims are meritless to the extent they even apply to the issues raised by Plaintiffs.  Third, Federal Courts cannot order a state agency, which includes county under federal case law, to comply with state law.  Finally, the Plaintiffs will not be harmed because, for the most part, the Defendants are doing what they seek in Court.

Because Plaintiffs have not shown a likelihood of success on the merits, irreparable harm, or a balance in their favor, this Court must deny their motion for a preliminary injunction.

## II.  STATEMENT OF FACTS

The ROV conducts all federal, state, and local elections in the County of Alameda (the "County").  The ROV must ensure that it meets state and federal deadlines, trains poll workers, tests equipment, and provides adequate ballots and staff at the polls.  The County has over 833,000 registered voters.  *See* Tim Dupuis Declaration ("Dupuis Decl.") ¶ 2.  As of Friday, May 27, 2016, the Registrar of Voters ("ROV") has received approximately 65,000 vote by mail ballots from registered voters for upcoming election.  *See id.*

This year In California, the Democratic, American Independent ("AIP"), and Libertarian parties will allow no party preference, also known as nonpartisan, voters (referred to herein as "NPP voters") to vote in their presidential primaries for the upcoming election on June 7, 2016.

1  This is commonly known as "cross-over voting."  NPP voters will be able to vote in the primary
2  for these three parties.  *See id.*, ¶ 3.

3       The ROV has engaged in extensive efforts to inform NPP voters of their options to
4  cross-over vote in the upcoming primary election.  The ROV's webpage has had an FAQ page
5  dedicated to cross-over voting since January of this year.  The webpage can be located at:
6  http://www.acgov.org/rov/crossoverfaq.htm.  The webpage lists the three cross-over voting
7  options for NPP voters.  It also highlights in the very first Q/A that "Voters that are not registered
8  with a qualified political party may request a party presidential ballot, **only if the party has**
9  **adopted a party rule permitting this**."  (Emphasis in original.)  At the bottom, it provides the
10 parties that will allow for cross-over voting for the upcoming election. See id., ¶ 4, Ex. A.

11      All County registered voters also receive a "Sample Ballot and Voter Information
12 Pamphlet" (sometimes referred to simply as either "sample ballot" or "voter information
13 pamphlet").  See id., ¶ 8.  A voter may choose to download it or receive it by mail.  All of the
14 sample ballots contain information for all parties and for NPP voters.  Each sample ballot for
15 every voter (regardless of whether the voter registered with a political party or as NPP) contains
16 a page entitled "CROSS-OVER VOTING FOR NONPARTISAN/ NO PARTY PREFERENCE
17 VOTERS."  *See id.*, Ex. D. The page contains information indicating that NPP voters "may
18 request a **party presidential** ballot, **only if the party has adopted a party rule permitting**
19 **this.**" (Emphasis in the original.)  The page then indicates that the NPP voters may request "one
20 of these three party presidential ballots: • American Independent • Democratic • Libertarian."
21 The page also lists a toll free number for the Secretary of State to answer any questions.

22      In addition to these communications, the ROV has conducted 63 outreach and education
23 events and news releases to over 40 Media outlets in 9 languages.  More specific to NPP
24 voters, the ROV has used its social media to get the information out to them. *See id.*, ¶ 9, Ex. E.

25      The initial page of the ROV's website also has a direct link to the vote by mail application
26 for NPP voters at http://www.acgov.org/rov/documents/vbmBallotApplication.pdf.  *See id.*, ¶5.
27 The application provides the option to choose a ballot for the AIP, Democratic, or Libertarian
28 parties.  The application is specific to cross-over voting during primary elections and a hard

2

copy must be submitted to the ROV.  The application states that the ROV must receive it by 5:00 pm on May 31, 2016 with the date in bold lettering. *See id.*, ¶5, Ex. B.  Plaintiffs provide an application in one of their declarations.  That application is a generic vote by mail application for all voters for all elections.  Unlike the cross-over application, It can be filled out and submitted electronically. *See id.* ¶ 6.  Cross-over vote by mail applications cannot be submitted electronically. *See id.*  This is why the ROV has a separate vote by mail application for cross-over voting.

The outreach specifically to NPP voters will continue to Election Day.  The ROV has over 4,000 poll workers signed up for the upcoming election.  The ROV has conducted over 300 training sessions for these poll workers. *See id.*, ¶ 10.  Each training session covers in detail how to handle NPP cross-over voting at the polls.  Each poll worker is trained to advise all NPP voters at the polling places that they have the option to cross-over vote on the Democratic, AIP, or Libertarian ballots. At the training, the poll workers are shown a mock-video that details the steps for advising an NPP voter of his or her cross-over voting options. *See id.*, ¶¶ 11-14.

Each polling place will also have a "Primary Ballot Flow Chart."  Taken from the training materials, the flow chart highlights the ballots that an NPP voter may receive, instructs the poll worker to advise NPP voters of their right to vote in one of three cross over parties, and provides verbatim, in bold red lettering, how to advise the NPP voter.  The bold red lettering reads: "As a Nonpartisan Voter, you are entitled to vote Nonpartisan or in one of the following parties: American Independent, Democratic, or Libertarian." The flow chart is strategically placed in front of the poll worker in charge of the roster index, which is where a voter signs right before obtaining a ballot. *See id.*, ¶ 15, Ex. F.  Each polling place will also have a sign from the Secretary of State that advises NPP voters that they can vote in the presidential primary for the Democratic, AIP, or Libertarian parties.

One thing that cannot occur today or at the polls is voter registration.  The deadline to register or change party preference was last week.  The ROV needs this time period between the deadline and Election Day to sort and batch all registration forms received.  Staff then reviews and researches party changes for prior registrations, cross over requests, vote by mail

status. Often, staff will discover errors, including incorrect or business addresses. Staff must then follow up to contact voters due to missing required information on voter registration forms. The research continues to ensure that no prior ballots were issued. If they were issued, the ROV must suspend the prior ballot and reissue the new ballot. Further research continues to cover DMV files, state records for the deceased, and possible duplicates in other counties or states. The infrastructure does not exist to speed up this process or have it completed on site at the polling places on Election Day. *See id.,* ¶ 18.

## III. ARGUMENT

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 129 S.Ct. 365, 374-75 (2008) (rejecting the "too lenient" Ninth Circuit standard that Plaintiffs rely upon here).

Plaintiffs miss the mark on every element of the test. First, Plaintiffs are not likely to succeed on the merits of their constitutional arguments. Plaintiffs' First Amendment and Equal Protection claims fail because the ROV's training of poll workers, cross-over vote by mail application, and outreach do not impose any burden, much less a severe burden, as that term has been applied by the Supreme Court and the Ninth Circuit. Second, Plaintiffs' claims resting on the Voting Rights Act are completely misplaced. Finally, Plaintiffs state statutory claims are not a proper subject for a federal preliminary injunction. Federal courts will only issue an injunction against a state agency, including counties, to enforce federal law.

"When the district court imposes a preliminary injunction on a state agency, a strong factual record is necessary; our review of the injunction must be more rigorous when we review an injunction against a state as opposed to a federal agency, since the Supreme Court requires a showing of an intentional and pervasive pattern of misconduct in order to enjoin a state agency." *Thomas v. County of Los Angeles*, 978 F.2d 504, 508 (9th Cir. 1992), as amended

4

1 (Feb. 12, 1993) (citing Rizzo v. Goode, 423 U.S. 362, 375, 96 S.Ct. 598, 606, 46 L.Ed.2d 561

2 (1976)).

### A. Plaintiffs Have Failed To Meet Their Burden Of Showing A Likelihood Of Success On The Merits.

#### 1. Plaintiffs' Constitutional Claims Fail.

Plaintiffs are not likely to prevail on the merits of their First Amendment and Equal Protection challenges to the County's administration of its election. These challenges typically apply to regulations and state laws, not election administration, which is the gravamen of Plaintiffs' motion. "Although federal courts closely scrutinize state laws whose very design infringes on the rights of voters, federal courts will not intervene to examine the validity of individual ballots or supervise the administrative details of a local election." Griffin v. Burns, 570 F.2d 1065, 1078 (1st Cir.1978).

Even assuming the ROV's election administration of notification and poll worker training were subject to constitutional challenge, they would pass muster. The level of judicial scrutiny for challenges to voting regulations under the First Amendment and the Equal Protection Clause depends on the character and magnitude of the burden on voters. Regulations imposing severe burdens are subject to strict scrutiny and must be narrowly tailored to advance a compelling government interest. See Burdick v. Takushi, 504 U.S. 428, 434 (1992). These burdens that require strict scrutiny typically apply to regulations that unreasonably deprive some residents from voting in a unit election or dilute the voting power of some voters. See Lemons v. Bradbury, 538 F.3d 1098, 1104 (9th Cir. 2008) (internal quotations and citations omitted). Lesser burdens trigger a less exacting review and the government's regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions. "Courts will uphold as 'not severe' restrictions that are generally applicable, even-handed, politically neutral, and which protect the reliability and integrity of the election process." Rubin v. City of Santa Monica, 308 F.3d 1008, 1014 (9th Cir. 2002).

Here, the ROV imposes no burden that deprives a voter from voting or dilutes the voting power of some voters.  Just the opposite is true.  The ROV has conducted extensive outreach efforts to NPP voters regarding their cross-over voting options.  The ROV has sent a sample ballot to each NPP voter in the County that notifies him or her of the cross-over option; posted a vote by mail application that is specific to cross-over voting; set up a FAQ webpage on its website specific to cross-over voting; trained all of its poll workers to advise NPP voters of their options; and developed polling place materials for each precinct to do the same.  These administrative policies do not restrict any citizen's right to vote or dilute any voting power.  These administrative policies help NPP voters use their cross-over voting options.  Plaintiffs may second-guess the ROV's administrative policies, buy they have not provided any evidence that the efforts have been ineffective, much less restrictive.  Plaintiffs cite one County voter's declaration in their motion, but have not provided it for the Court's consideration.  A declaration without a signature is not valid evidence; a declaration missing entirely is even less valid.  *See Thomas*, 978 F.2d at 508 (strong factual record for an injunction against a state agency).

## 2.  Plaintiffs' Voting Rights Act Claims Fail.

Plaintiffs' Voting Rights Act ("Act") claims fare even worse.  By its own terms the Act does not apply here.  The first relevant section states:

> No person acting under color of law shall [P] (A) in determining whether any individual is qualified under State law or laws to vote in any election, apply any standard, practice, or procedure different from the standards, practices, or procedures applied under such law or laws to other individuals within the same county, parish, or similar political subdivision who have been found by State officials to be qualified to vote;

52 U.S.C.A. § 10101 (a)(2)(A).

Without citing any case, Plaintiffs simply conclude that the alleged "failure to provide adequate information is in violation of the [Act]."  The plain language does not apply to poll worker training, informing voters of their rights, or mailings.  Plaintiffs' own case cuts against their argument.  The Court in *Friedman v. Snipes*, 345 F.Supp.2d 1356, 1371 (S.D. Fla. 2004) rejected a claim based on the Act.  The Court denied a preliminary injunction because concluded that it the error did not pertain to voter eligibility.  The methods used to inform voters had nothing to do with determining voter eligibility.

Plaintiffs' claim under subparagraph (a)(2)(B) also fails on the plain language of the

statute.  Under that section, a person may not

> deny the right of any individual to vote in any election because of an error or
> omission on any record or paper relating to any application, registration, or other
> act requisite to voting, if such error or omission is not material in determining
> whether such individual is qualified under State law to vote in such election;

52 U.S.C.A. § 10101(a)(2)(B).

Plaintiffs have cited no case law that equates informing voters with denying an individual

the right to vote.   On its face, again, the statutory language has nothing to do with the

allegations of Plaintiffs' pleadings.  A district court should not issue an injunction when the

injunction in question is not of the same character, and deals with a matter lying wholly outside

the issues in the suit.  *Kaimowitz v. Orlando, Fla.*, 122 F.3d 41, 43 (11th Cir.), opinion amended

on reh'g, 131 F.3d 950 (11th Cir. 1997).  The Act's provisions on their face do not apply or deal

with the underlying matter of informing voters.  Consequently, the Plaintiffs claims will fail on the

merits.

### 3.  Plaintiffs' State Law Claims Fail.

The only remaining claims concern state statutes.  A federal injunction cannot issue

against any of the Defendants on this claim.  "Federal courts must make sure that the remedy

protects the plaintiffs' federal constitutional and statutory rights but does not require more of

state officials than is necessary to assure their compliance with federal law."  *Clark v. Coye*, 60

F.3d 600, 603-04 (9th Cir. 1995); *see also Beauchamp v. Los Angeles Cty. Metro. Transp.

Authority*, 191 F.3d 459 (9th Cir. 1999) (same rule for county agencies).  In other words, "a

federal court has no power to order a state officer exercising delegated authority to comply with

duties imposed by state law." *Grand River Enterprises Six Nations, Ltd. v. Beebe*, 467 F.3d 698,

701-02 (8th Cir. 2006) (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106,

(1984)).

Even assuming this Court could enjoin any of the Defendants on an issue solely related

to state law, the ROV complies with the state law.  California Election Code section 3006(c)

requires that an NPP voter's vote by mail application contain language that reads "substantially

---

**Dupuis' Opposition to Plaintiffs' Mot. for Preliminary Injunction, Case No.  C 16-02739 WHA**

similar" to the following: "I request a vote by mail ballot for the ___ Party." Here, the ROV's

application states: "**Notice to No Party Preference/Nonpartisan voter ONLY**: If you wish to

receive a ballot for one of the following Political parties for this election only, please check the

party below: o American Independent [P] o Democratic [P] o Libertarian." (Emphasis in

original.) See Dupuis Decl., ¶ 5. This language is "substantially similar" to the language

outlined in section 3006(c), and Plaintiffs do not claim otherwise.

### 4.  Plaintiffs' Claims For Relief Not Based On Any Law Fail.

Plaintiffs seek an order "that the defendants be enjoined to order their poll workers to

inform all NPP voters of their right to receive a presidential ballot and that this be enforced

statewide against all elections officials." Plaintiffs' Memorandum of Points and Authorities In

Support of Plaintiffs' Request For Preliminary Injunctive Relief ("MPA") at 2, paragraph 3.

Plaintiffs cite to no law that requires poll workers to notify NPP voters of their options. For this

reason alone, this claim for relief fails. (There is more on this issue below.)

### B.  *Plaintiffs Will Not Suffer Irreparable Injury.*

A preliminary injunction may only be granted when the moving party has demonstrated a

real likelihood of irreparable injury or harm. *Winter,* 129 S.Ct. at 375. "Speculative injury does

not constitute irreparable injury sufficient to warrant granting a preliminary injunction. A plaintiff

must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must

*demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief."

*Caribbean Marine Servs. Co., Inc. v. Baldridge,* 844 F.2d 668, 674 (9th Cir. 1988) (emphasis in

original; internal citations omitted). A preliminary injunction cannot issue based only on the

possibility of some remote future injury because "injunctive relief [is] an extraordinary remedy

that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."

*Winter,* 129 S.Ct. at 375-76.

Plaintiffs' claims of irreparable injury are undermined by their delay. They filed this

lawsuit on May 20, 2016, but did not serve the County until May 25, 2016. They did not file their

1   moving papers until more than a week later on May 28, 2016. Ignoring this Court's admonition,

2   the Plaintiffs did not explain the reason for their delay. This behavior seriously undercuts any

3   claim of immediate harm. See Oakland Tribune, Inc. v. Chronicle Pub. Co., 762 F.2d 1374,

4   1377 (9th Cir. 1985) (stating "a long delay before seeking a preliminary injunction implies a lack

5   of urgency and irreparable harm").

6        More importantly, the Plaintiffs have not shown that they would suffer irreparable harm

7   absent a court order. As noted above, the Plaintiffs want an order that "the defendants be

8   enjoined to order their poll workers to inform all NPP voters of their right to receive a presidential

9   ballot and that this be enforced statewide against all elections officials." MPA, at 2, paragraph

10  3. The ROV, however, does exactly what Plaintiffs are seeking and more. The ROV trains

11  every poll worker to advise the NPP voters of their cross-over voting options. At the training, the

12  ROV provides materials that not only explicitly instructs the poll workers to notify the NPP voters

13  of their cross-over options, but even provides the language to be used verbatim. The training

14  also shows an enactment of how to instruct an NPP voter. See Dupuis Decl., ¶¶ 11-14. Just in

15  case the poll worker did not get it at the training, the ROV provides a flow chart that shows the

16  cross-over options, instructs the poll worker to advise the NPP voter about cross-over voting,

17  and, again, provides the language to be used verbatim. See Virginian Ry. Co. v. System Fed'n

18  No. 40, 300 U.S. 515, 550, (1937) ( "[A] court of equity may refuse to give any relief when it is

19  apparent that that which it can give will not be effective or of benefit to the plaintiff.").

20       Plaintiffs provide two declarations from poll workers saying that the NPP voter

21  admonition was not clear enough. Those declarations are largely based on hearsay and should

22  be disregarded for that reason alone. See Thomas, 978 F.2d at 508 ("When the district court

23  imposes a preliminary injunction on a state agency, a strong factual record is necessary"). More

24  importantly, the ROV has provided declarations from a supervisor at Ms. Dolphin's training and

25  Ms. DelMonte's trainer himself. These declarations establish that the instruction to Ms. Dolphin

26  and Ms. DelMonte was clear: poll workers were told to advise NPP voters of their cross-over

27  voting options. In Ms. DelMonte's case, the video that enacts the NPP voter advisement was

28

9

1    played twice.  A court order would not change their misunderstanding.  *See* Declaration of

2    Claudia Guzman; Declaration of Ricardo Reynoso.

3            Plaintiffs even encourage the Court to wordsmith the instruction to the poll workers.

4    Plaintiffs propose using the term "Presidential primary" as opposed to the party name.  Again,

5    this is inappropriate as courts do not "supervise the administrative details of a local election."

6    *Griffin*, 570 F.2d at 1078. And Plaintiffs provide no evidence that their alternative is any better.

7            In sum, Plaintiffs cannot show irreparable harm because: (1) they have no evidence of a

8    single Alameda County voter who was, is, or will be confused or disenfranchised, much less an

9    NPP voter, and (2) the ROV is already doing what they seek for the most part.

### C.  *The Balance of Hardships Strongly Tips In Favor Of Denying The Motion.*

        In "balanc[ing] the hardships of the public interest against a private interest, the public

interest should receive greater weight." *Fed. Trade Comm'n v. Affordable Media, LLC*, 179 F.3d

1228, 1236 (9th Cir. 1999) (quoting *Fed. Trade Comm'n v. World Wide Factors, Ltd.*, 882 F.2d

344, 347 (9th Cir 1989)). In the elections context, the Court should act with particular caution

because "[c]ourt orders affecting elections, especially conflicting orders, can themselves result

in voter confusion and consequent incentive to remain away from the polls." *Purcell v.*

*Gonzalez*, 549 U.S. 1, 4-5 (2006).  For these reasons, the Supreme Court has advised that

courts "should consider the proximity of a forthcoming election and the mechanics and

complexities of state election laws, and should act and rely upon general equitable principles."

*Reynolds v. Sims*, 377 U.S. 533, 585 (1964).

        Here, the forthcoming election is a week away (even though Plaintiffs filed the lawsuit

over 10 days ago). Without the proper infrastructure do same day vetting, same day registration

would lead to rampant voter fraud, threatening all of the elections on the ballot.  Because the

ROV provides most of the other forms of relief, forcing it to divert recourses at this point also tips

in favor of denying the motion.

## IV. CONCLUSION

For the foregoing reasons, this Court must deny Plaintiffs' Motion For Preliminary Injunction in its entirety.

DATED:   May 31, 2016                    DONNA ZIEGLER, County Counsel,


                                         By _____ /s/ Raymond S. Lara _____
                                         Raymond S. Lara, Senior Deputy County
                                         Counsel, Attorneys for Tim Dupuis, the
                                         Registrar of Voters, the County of Alameda