IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VOTING RIGHTS DEFENSE PROJECT, AMERICAN INDEPENDENT PARTY OF CALIFORNIA, CLARA DAIMS, and SUZANNE BUSHNELL,<br><br>Plaintiffs,<br><br>v.<br><br>ALEX PADILLA, in his official capacity as Secretary of State, JOHN ARNTZ, in his official capacity as chief of the San Francisco Department of Elections, TIM DUPUIS, in his official capacity as chief of the Alameda County Registrar of Voters,<br><br>Defendants.<br>_____ / | No. C 16-02739 WHA<br><br><br><br><br>**MEMORANDUM OPINION RE MOTION FOR PRELIMINARY INJUNCTION** |

**INTRODUCTION**

In this action claiming statutory and constitutional violations relating to the dissemination of information regarding procedures for the presidential primary, plaintiffs sought a preliminary injunction. The motion was denied on the record at a hearing. This memorandum opinion sets forth the reasoning for denial of that motion.

**STATEMENT**

This action concerns the dissemination of information regarding voting procedures for the California presidential primary, which is scheduled to occur in six days on June 7, although the vote-by-mail procedure began on May 9. Under California law, an individual who declines to disclose a preference for a political party when registering to vote (a "no-party-preference

voter"), may nevertheless vote in a political party's primary if that party has adopted a rule permitting so-called "crossover ballots." A crossover ballot is the only means by which a no-party-preference voter can vote for a presidential nominee in the upcoming primary. The Democratic Party, the American Independent Party, and the Libertarian Party have elected to permit such crossover ballots. (The Republican Party has not.) Individuals affiliated with a party participating in a given primary cannot obtain a crossover ballot to vote in another party's primary, although they could change their affiliation (including by changing to no party preference) by May 23. Put in practical terms, Republicans could have re-registered as no-party-preference voters and then obtained a crossover ballot to vote in the Democratic primary, provided they changed their affiliation on or before May 23, now more than a week ago. Plaintiffs are supporters of Senator Bernie Sanders and expect their relief will support his campaign. Senator Sanders, however, has no part in this lawsuit.

Defendants Alex Padilla, Secretary of State of California, John Arntz, chief of the San Francisco Department of Elections, and Tim Dupuis, chief of the Alameda County Registrar of Voters, through their respective agencies, engaged in extensive efforts, including distributing information by mail and via the internet, hosting outreach and education events, and buying advertisements in print media and on public transportation, regarding the rights of no-party-preference voters to obtain crossover ballots in order to vote in the three presidential primaries identified above. Defendants also plan to display information about no-party-preference voters' rights prominently at poll stations (Dupuis Decl., Exhs. A, D–F; Arntz Decl., Exhs. A–B, D, F–I, K–T; Reyes Decl., Exhs. A–R). Defendants have made similar efforts to inform voters that they could re-register to vote for a different party or to remove any party affiliation by May 23 (*e.g.*, Arntz Decl., Exh. B).

Plaintiffs' theory in this case is that certain information disseminated as part of the foregoing efforts has been inadequate or misleading. They primarily take issue with the contention that the poll workers in Alameda County have been trained not to affirmatively inform no-party-preference voters of their rights to obtain a crossover ballot, while poll workers in San Francisco (and other counties) have been instructed to affirmatively inform no-party-

preference voters of that option. They also note that no-party-preference voters received applications to vote by mail that set a deadline of April 18 for any request for a crossover ballot, and they received subsequent applications for replacement ballots (in case they later realized they wanted a crossover ballot) with a deadline to make that request by June 1. Finally, they note that individuals that *had* indicated a party preference did not receive any information about what their rights regarding crossover ballots would be should they choose to change their registration.

The Court's ruling on the record followed briefing and oral argument heard on an expedited schedule in order to allow more time for an emergency appeal before the primary. This memorandum opinion amplifies on that ruling.

**ANALYSIS**

A plaintiff seeking a preliminary injunction must satisfy a four-part test established by the Supreme Court in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). Specifically he must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. Our plaintiffs fail at every step.

**1. PLAINTIFFS ARE NOT LIKELY TO SUCCEED ON THE MERITS.**

**A. Constitutional Claims.**

Plaintiffs contend that defendants' conduct constituted arbitrary discrimination in violation of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment, but they cite no authority suggesting this conduct is anything close to a constitutional violation. In *Burdick v. Takushi*, 504 U.S. 428, 434 (1992), the Supreme Court held that in the context of election regulations, we must apply a "flexible standard" that weighs the burdens of the regulation against the government's interest in enacting them. If the burden is severe, the regulation is subject to strict scrutiny, if not, it may be justified by important state interests.

1    Here, the burden on no-party-preference voters, is slight, if it exists at all. Voters must
2 read the materials provided to them to understand their rights; only some counties will spoon-
3 feed the information. The government's interests in arranging for an orderly and fair primary,
4 avoiding voter confusion by providing *too much* information, and ensuring that voters can
5 receive their ballots in a timely manner all plainly justify defendants' conduct.

### B. Voting Rights Act Claims.

Plaintiffs also contend that defendants violated Sections 10101(a)(2)(A) and (B) of Title 52 of the United States Code. Section 10101(a)(2)(A) concerns voter registration, which is not at issue here. Section 10101(a)(2)(B), on the other hand, prohibits a state from denying the right to vote "because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election." Plaintiffs' theory is that defendants have violated Section 10101(a)(2)(B) by omitting the statements regarding no-party-preference voters from materials distributed to voters that *had* indicated a party preference, but there is no evidence of the possibility that anyone may be denied the right to vote as a result of that omission. Defendants have, in fact, extensively campaigned to inform voters about their rights, so in the unlikely circumstance that a voter timely removed her party affiliation but still sought to vote in a presidential primary via crossover ballot, ample information has been disseminated to inform her of that right.

Thus, plaintiffs have failed to show any likelihood of success on their Voting Rights Act claims.

### C. Claim for Mandamus.

Plaintiffs do not assert independent claims based on violations of state law but rather seek a writ of mandamus under federal law compelling defendants to carry out certain alleged duties under state law. Plaintiffs cite Section 1361 of Title 28 of the United States Code as the authority for that relief, but that provision only grants a district court authority to compel "an officer or employee *of the United States* or any agency thereof to perform a duty . . . ." Defendants are all state and local officials, so Section 1361 does not apply. Moreover, it is an

4

abuse of discretion for a district court to issue an injunction that requires state officials to do anything more than what is required by federal constitutional or statutory law. *See Trueblood v. Washington State Dept. of Soc. and Health Services*, No. 15-35462, 2016 WL 2610233, at *7 (9th Cir. May 6, 2016) (citing *Katie A., ex rel. Ludin v. Los Angeles Cnty.*, 481 F.3d 1150, 1155 (9th Cir. 2007)).

Plaintiffs' delay in bringing this motion has left too little time for any relief anyway, save and except for possibly relief at polling places. Contrary to plaintiffs, however, state law does not require defendants to affirmatively inform no-party-preference voters of their rights to obtain a crossover ballot at the polling place. Section 13102(b) of the California Elections Code provides, "[a]t partisan primary elections, each voter not registered disclosing a preference with any one of the political parties participating in an election shall be furnished only a nonpartisan ballot, unless he or she requests a ballot of a political party" that has authorized crossover ballots. Thus, the plain language of the statute contemplates that the *voter* would affirmatively request the crossover ballot.

As stated, the Court is without jurisdiction to issue an injunction against our defendants based on a state law duty, but plaintiffs have not shown that they could succeed on the merits in any case.

### 2. NO IRREPARABLE HARM.

Plaintiffs' theory of harm rests entirely on speculation. They contend no-party-preference voters might be denied crossover ballots or might be unaware of their rights, and they are concerned that defendants will act contrary to the law although there is no factual basis for that concern. Defendants have already undertaken significant efforts to inform voters, particularly no-party-preference voters, of their rights, and voters will have additional information in front of them at their respective polling places. Far from establishing irreparable harm might occur, plaintiffs have failed to show that they would suffer any harm as a result of a denial of their motion.

### 3. BALANCE OF THE EQUITIES AND PUBLIC INTEREST.

In *Reynolds v. Sims*, 377 U.S. 533, 585 (1964), the Supreme Court cautioned:

5

> [U]nder certain circumstances, such as where an impending election is imminent and a State's election machinery is already in progress, equitable considerations might justify a court in withholding the granting of immediately effective relief in a legislative apportionment case, even though the existing apportionment scheme was found invalid. In awarding or withholding immediate relief, a court is entitled to and should consider the proximity of a forthcoming election and the mechanics and complexities of state election laws, and should act and rely upon general equitable principles. With respect to the timing of relief, a court can reasonably endeavor to avoid a disruption of the election process which might result from requiring precipitate changes that could make unreasonable or embarrassing demands on a State in adjusting to the requirements of the court's decree.

In *S.W. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 919 (9th Cir. 2003), our court of appeals applied the same principle in the context of an injunction in a Voting Rights Act case (as here):

> In this case, hardship falls not only upon the putative defendant, the California Secretary of State, but on all the citizens of California, because this case concerns a statewide election. The public interest is significantly affected. For this reason our law recognizes that election cases are different from ordinary injunction cases. *See, e.g.*, *Reynolds v. Sims*, 377 U.S. at 585, 84 S.Ct. 1362. Interference with impending elections is extraordinary, *id.*, and interference with an election after voting has begun is unprecedented.

Although plaintiffs became aware of many of the alleged irregularities and inaccuracies herein at least as early as May 13, they did not file this motion until 7:00 p.m. on Friday, May 27, just eleven days before the election. Moreover, although the Court set a briefing and hearing schedule just three minutes after the motion was filed, plaintiffs' delays ensured that the motion could not be heard and decided until June 1, less than a week before the primary. Plaintiffs' proposed relief, to the extent it is feasible at all, would no doubt *cause* voter confusion by changing the rules in the middle of the primary and changing the messaging about voters' rights. Voters have already received clear enough instructions, submitted their vote-by-mail applications, and some votes have already been cast. The extraordinary remedy that plaintiffs seek is not warranted.

Plaintiffs' contention that they could not file the complaint or this motion because they were developing their theory based on poll-worker training rings hollow. Plaintiffs should have

6

been investigating that issue from the outset, and they should have sought relief as to the claims they already knew about immediately. Moreover, plaintiffs delayed more than twenty-four hours between informing the deputy courtroom clerk that they would seek to be heard on a request to shorten time to hear this motion and actually filing this motion.

**CONCLUSION**

The reasons stated above required denial of plaintiffs' motion for a preliminary injunction.

Dated: June 2, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE