1  DENNIS J. HERRERA, State Bar #139669
   City Attorney
2  RONALD D. FLYNN, State Bar #184186
   Chief Deputy City Attorney
3  JON GIVNER, State Bar #208000
   ANDREW SHEN, State Bar #232499
4  JOSHUA S. WHITE, State Bar #237223
   Deputy City Attorneys
5  1 Dr. Carlton B. Goodlett Place
   City Hall, Room 234
6  San Francisco, California 94102-4682
   Telephone:     (415) 554-4661
7  Facsimile:     (415) 554-4699
   E-Mail:        joshua.white@sfgov.org
8

9  Attorneys for Defendant
   JOHN ARNTZ, in his official capacity as
10 Director of the San Francisco Department of
   Elections

11

12

13                    UNITED STATES DISTRICT COURT

14                  NORTHERN DISTRICT OF CALIFORNIA

15

16 VOTING RIGHTS DEFENSE PROJECT,          Case No. 16-cv-02739 WHA
   AMERICAN INDEPENDENCE PARTY,
   CLARA DAIMS, and SUZANNE               **DEFENDANT SAN FRANCISCO DIRECTOR**
17 BUSHNELL,                              **OF ELECTIONS JOHN ARNTZ'S MOTION**
                                          **TO DISMISS;  MEMORANDUM OF POINTS**
18          Plaintiffs,                   **AND AUTHORITIES IN SUPPORT**

19          vs.                           **[FED. R. CIV. P. 12(b)(6)]**

20 ALEX PADILLA, in his official capacity as   Hearing Date:    August 18, 2016
   Secretary of State and an indispensable party,  Time:            8:00 a.m.
21 TIM DEPUIS, in his official capacity as chief   Judge:           Hon. William H. Alsup
   of the Alameda County Registrar of Voters,   Place:           Courtroom 8, 19th Floor
22 JOHN ARNTZ, in his official capacity as
   Director of the San Francisco Board of
23 Elections, and DOES I–X,

24          Defendants.

25

26

27

28

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF
CIVIL PROCEDURE 12(b)(6) FOR FAILURE TO STATE A CLAIM ........................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 2

I.     INTRODUCTION ................................................................................ 2

II.    THE PRESIDENTIAL PRIMARY ELECTION ON JUNE 7, 2016 .................... 2

III.   THE DEPARTMENT'S VOTE-BY-MAIL APPLICATIONS AND VOTER
INFORMATION PAMPHLET .............................................................. 3

IV.   THE ALLEGATIONS IN THE AMENDED COMPLAINT ............................. 5

    A.    The Plaintiffs ..................................................................... 5

    B.    The Causes of Action .......................................................... 5

           1.    First Cause of Action: Voting Rights Act—52 U.S.C. §
10101(A) ................................................................ 5

           2.    Second Cause of Action: Voting Rights Act—52 U.S.C. §
10101(B) ................................................................ 6

           3.    Third Cause of Action: First and Fourteenth Amendments ............ 6

           4.    Fourth Cause of Action: Writ of Mandamus under 28 U.S.C. §
1361 .................................................................... 6

    C.    The Remedies Sought ......................................................... 7

V.     PROCEDURAL HISTORY .................................................................. 7

VI.    LEGAL STANDARD ......................................................................... 7

VII.   ARGUMENT ................................................................................... 8

    A.    This Lawsuit Is Moot Because the Election Has Already Occurred. .......... 8

    B.    Plaintiffs Lack Standing Because Their Injuries Have Always Been
Speculative, and In Any Event, the Action Is Moot Because Both
Plaintiffs Who Have Any Alleged Connection to San Francisco Voted in
the Democratic Presidential Primary. ......................................... 8

    C.    The Causes of Action Fail to State a Claim. ................................ 10

1.    Plaintiffs' Voting Rights Act Claim Under Section 10101(a)(2)(A) Fails Because Voter Registration Is Not At Issue in This Case ....................................................................................10

2.    Plaintiffs' Voting Rights Act Claim Under Section 10101(a)(2)(B) Fails Because The Complaint Fails to Allege a Legally Cognizable Error or Omission on Any Writing Requisite to Voting. ....................................................................................10

3.    Plaintiffs' First and Fourteenth Amendment Claim Fails Because The Department Has Not Burdened Voting Rights. ......................11

4.    Plaintiffs' Request for a Writ of Mandamus Fails for Multiple Reasons. ....................................................................................13

CONCLUSION .................................................................................................................15

## **TABLE OF AUTHORITIES**

**Cases**

*Arizona Libertarian Party v. Reagan*
    798 F.3d 723 (9th Cir. 2015) ...................................................................12

*Ayers-Schaffner v. DiStefano*
    37 F.3d 726 (1st Cir. 1994) ....................................................................12

*Balistreri v. Pacifica Police Dept.*
    901 F.2d 696 (9th Cir. 1990) .....................................................................7

*Barber v. Beard*
    2015 WL 506254 (S.D. Cal., Feb. 5, 2015) ..........................................13

*Burdick v. Takushi*
    504 U.S. 428 (1992) .................................................................................11

*Burns v. Fortson*
    410 U.S. 686 (1973) .................................................................................12

*Ciacci v. Hawaii Government*
    2012 WL 6697569 (D. Hawaii, Dec. 24, 2012) ....................................14

*Clark v. Washington*
    366 F.2d 678 (9th Cir.1966) ...................................................................13

*Crawford v. Marion County Election Board*
    553 U.S. 181 (2008) .................................................................................12

*Demos v. U.S. District Court*
    925 F.2d 1160 (9th Cir. 1991) ................................................................13

*Dudum v. Arntz*
    640 F.3d 1098 (9th Cir. 2011) ................................................................11

*Florida State Conference of N.A.A.C.P. v. Browning*
    522 F.3d 1153 (11th Cir. 2008) ..............................................................10

*Friedman v. Snipes*
    345 F.Supp.2d 1356 (S.D. Fla. 2004) ....................................................10

*Gator.com Corp. v. L.L. Bean, Inc.*
    398 F.3d 1125 (9th Cir. 2005) ..................................................................8

*Griffin v. Burns*
    431 F.Supp. 1361 (Dist. of R.I., May 17, 1977) ...................................13

*Hishon v. King & Spalding*
    467 U.S. 69 (1984) .....................................................................................7

*In re Northpoint Communications Group, Inc., Securities Litigation*
    221 F.Supp.2d 1090 (N.D. Cal., May 28, 2002)......................................................3, 9

*Jablon v. Dean Witter & Co.*
    614 F.2d 677 (9th Cir. 1980) ..............................................................................7

*Katie A., ex rel. Ludin v. Los Angeles Cnty.*
    481 F.3d 1150 (9th Cir. 2007) ............................................................................14

*Lemons v. Bradbury*
    538 F.3d 1098 (9th Cir. 2008) ............................................................................11

*Libertarian Party of Washington v. Munro*
    31 F.3d 759 (9th Cir. 1994) ...............................................................................11

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992)........................................................................................8, 9

*Marston v. Lewis*
    410 U.S. 679 (1973).........................................................................................12

*McCormick v. State Board of Elections*
    374 A.2d 116 (R.I. 1977) ..................................................................................13

*Moss v. U.S. Secret Serv.*
    572 F.3d 962 (9th Cir. 2009) ..............................................................................8

*Newton v. Poindexter*
    578 F.Supp. 277 (E.D. Cal., Jan. 18, 1984) ...........................................................14

*Parrino v. FHP, Inc.*
    146 F.3d 699 (9th Cir. 1998) ...............................................................................3

*Protectmarriage.com-Yes on 8 v. Brown*
    752 F.3d 827 (9th Cir. 2014) ............................................................................8, 9

*Rosario v. Rockefeller*
    410 U.S. 752 (1973).........................................................................................12

*Schwier v. Cox*
    340 F.3d 1284 (11th Cir. 2003) ..........................................................................10

*Todd v. McElhany*
    No. CIV S-11-2346 LKK, 2011 WL 5526464 (E.D. Cal. Nov. 14, 2011) ........................13

*Trueblood v. Washington State Dept. of Soc. and Health Services*
    No. 15-35462, 2016 WL 2610233 (9th Cir. May 6, 2016) ...........................................14

*Wolfson v. Brammer*
    616 F.3d 1045 (9th Cir. 2010) .............................................................................9

**Statutes**

28 U.S.C. § 1361 .................................................................................................6, 13, 14

52 U.S.C.
  § 10101(a)(2)(A) .............................................................................................10
  § 10101(a)(2)(B) .........................................................................................10, 11
  § 10101(B) ........................................................................................................6

Cal. Elections Code
  § 3001 ...............................................................................................................2
  § 3006(a) ...........................................................................................................2
  § 3006(a)(4) .......................................................................................................2
  § 3006(b)(1)-(4) .................................................................................................3
  § 3006(b)(3) .......................................................................................................6
  § 3006(c) ...................................................................................................3, 6, 14
  § 3007.7(e) ..................................................................................................6, 14
  § 3201 ................................................................................................................2
  § 13102(b) ........................................................................................................15

**Rules**

Fed. R. Civ. Proc.
  12(b)(6) .....................................................................................................1, 7, 14

Fed. R. Evid.
  201(b) .........................................................................................................9, 15

**Constitutional Provisions**

U.S. CONST. art III, § 2, cl. 1 ...............................................................................8

**San Francisco Ordinances, Charters & Codes**

S.F. Charter § 13.104 ...........................................................................................3

**NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) FOR FAILURE TO STATE A CLAIM**

Please take notice that on August 18, 2016 at 8:00 a.m., before the Honorable William H. Alsup, in Courtroom 8, at U.S. District Court, 450 Golden Gate Avenue in San Francisco, California, or as soon thereafter as this matter can be heard, Defendant John Arntz, who is the Director of San Francisco's Department of Elections ("Department"), will and hereby does move for dismissal with prejudice of all claims in Plaintiffs' Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

The Department is entitled to dismissal for the same and additional reasons as those articulated in the Court's Order denying Plaintiff's motion for preliminary injunction.  (Docket No. 46.)  Taking all of the allegations in the Amended Complaint as true, the lawsuit is moot, Plaintiffs lack standing, and every cause of action fails to state a claim upon which relief can be granted.  This motion to dismiss is based on this Notice Of Motion and Motion To Dismiss, the Memorandum of Points and Authorities, the Request for Judicial Notice (included on pages 10 and 15 of this document), the Declaration of John Arntz, and the Proposed Order, all filed or lodged herewith, as well as the file in this case, the argument of counsel at the hearing, and any such further matters as the Court deems appropriate.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

As the Court concluded three weeks ago in its Order denying Plaintiff's motion for a preliminary injunction, Plaintiffs' assertion that the San Francisco Department of Elections ("Department") has violated their voting rights is entirely meritless.  Like Plaintiffs' motion for preliminary injunction, the Complaint alleges that the Department has violated the Constitution, the Voting Rights Act, and California law by failing to inform voters who have not expressed a party preference ("No Party Preference" or "NPP" voters) that they can vote in the Democratic, Libertarian, or American Independent presidential primaries on the June 7, 2016 election, and by failing to inform voters who have expressed a party preference that they can change that preference.  On June 2, 2016, the Court rejected every single one of Plaintiffs' legal theories.  (Docket No. 46 ("Order").)  In the intervening three weeks, only one thing has changed:  in addition to failing to state a claim, the case is now moot because the election has already occurred and the alleged "injury" of the two registered San Francisco voter Plaintiffs has been resolved because they actually did vote in the Democratic Party primary.

## II.   THE PRESIDENTIAL PRIMARY ELECTION ON JUNE 7, 2016

Each political party has the option of allowing NPP voters to vote in its presidential primary. For the June 7 election, three political parties chose to do so: the Democratic Party, the American Independent Party, and the Libertarian Party.  Compl. ¶ 3.[1]  An NPP voter who votes in one of these primaries does so using what is sometimes called a "crossover ballot."  *See id.*

A voter who wishes to vote by mail must apply to do so.  *See* Cal. Elections Code § 3001.  A voter may apply to receive a vote-by-mail ballot at every election or may apply to receive such a ballot only for a specific election.  *See id.* §§ 3201; 3006(a)(4).  If a county elections official chooses to mail a vote-by-mail application to registered voters, that application must contain certain information, such as the date by which the application is due, space for the voter's name, address, and signature, as well as the name and date for which the request to vote by mail is made.  *See id.*, § 3006(a); *see also id.* §

---

[1] All references to the Complaint are to the operative Amended Complaint.

3006(b)(1)-(4).  If a county elections official sends a vote-by-mail application to NPP voters, that application must inform the voters that they can vote in a presidential primary for any party that has opened its primary to NPP voters.  *See id.* § 3006(c).  That application must also include the following statement: "I have declined to disclose a preference for a qualified political party. However, for this primary election only, I request a vote by mail ballot for the _____ Party."  *Id.*

### III.   THE DEPARTMENT'S VOTE-BY-MAIL APPLICATIONS AND VOTER INFORMATION PAMPHLET

The Department conducts "all public federal, state, district and municipal elections in the City and County."  S.F. Charter § 13.104.  The Complaint refers to and/or incorporates by reference the Department's online vote-by-mail application and the Department's Voter Information Pamphlet.[2]  Compl., ¶¶ 8-11.  Each is discussed below.

The Department's website offers voters the option to register to vote by mail.  *See* Declaration of John Arntz ("Arntz Dec.") ¶ 2.  The first step in the online application process requires the voter to enter his or her house number, zip code, and date of birth.  *See id.* ¶ 2; Ex. A.  From this information, the Department can determine if the person is an NPP voter.  *See id.*  If so, the application automatically informs the voter that he or she has the option of voting in one of the presidential primaries, and that to do so, the voter must fill out a separate application.  *See id.* ¶ 2; Ex. B.  The page contains a link to that application.  *See id.* ¶ 2; Ex. C.

The Department provides a Voter Information Pamphlet ("VIP") to every registered San Francisco voter.  *See id.* ¶ 3.  The back cover of every VIP contains a vote-by-mail application, and for NPP voters, that application includes the option to select a party preference:

> According to our records, you did not indicate a preference for a qualified political party when you registered to vote.  For this election, the following political parties will allow voters with no party preference to vote in their primary election for President of the United States: American Independent, Democratic, Libertarian.

---

[2] The Court may consider these documents when ruling on the instant motion to dismiss. "When ruling on a motion to dismiss, the district court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the Court takes judicial notice."  *In re Northpoint Communications Group, Inc., Securities Litigation*, 221 F.Supp.2d 1090, 1094 (N.D. Cal., May 28, 2002)  (citing *Parrino v. FHP, Inc.,* 146 F.3d 699, 705–06 (9th Cir. 1998)).

1

> Note: If you do not request the ballot of one of these parties, your ballot will not include a contest for President.
>
> I have declined to disclose a preference for a qualified political party.  However, for this primary election only, I request a vote-by-mail ballot of the _____ party (choose one):
>
> ___American Independent    ___Democratic    ___Libertarian
>
> For more information, call 1-800-345-VOTE, or visit sos.ca.gov.

*See id.* ¶ 3; Ex. D.  The back cover of VIPs mailed to non-NPP voters does not include this language. *See id.* ¶ 3; Ex. E.

Inside the VIP are answers to questions such as "What does party preference mean?"; "How can I find out my party preference?"; "How can I change my party preference?" and "I did not disclose a party preference when I registered to vote.  What ballot will I receive?"  *See id.* ¶ 3; Ex. D at 12-13.  The answer provided to the latter question is:

> All voters, regardless of party preference, can vote in contests for voter-nominated offices, nonpartisan offices, and ballot measures. For the June 7 election, three parties will allow voters with no party preference to participate in their presidential primary elections: the American Independent Party, the Democratic Party, and the Libertarian Party. You can request to vote in one of these party primaries, or you will receive a ballot with no presidential contest.
>
> If you vote by mail: you may request a party ballot by indicating your choice on the Vote-by-Mail Application on the back cover of this pamphlet. The Department of Elections must receive this application no later than  5 p.m. on May 31.
>
> If you vote in person: you may request the ballot of your choice from a poll worker when you sign the roster.

*See id.*  The VIP also provides an easy-to-understand flow chart explaining that NPP voters may vote in any of the three designated presidential primaries, whereas voters registered for a political party may only vote in the party's presidential primary.  *See id.* ¶ 3, Ex. D at 13.  In addition, a letter from Director Arntz at the front of the VIP explains that "the party preference that voters selected when registering to vote determines which candidates will appear on their ballots for these contests," but that three parties have allowed NPP voters to vote in their primaries.  *See id.*, Ex. D at 4.[3]

---

[3] Though not at issue in this motion to dismiss, the Department made extensive additional efforts, including a comprehensive outreach campaign and letters to every San Francisco household, to inform NPP voters of their rights to request crossover ballots and to inform party preference voters of their rights to change party registration.  (*See* Docket No. 35 ("Declaration of San Francisco Director of Elections John Arntz in Opposition to Plaintiffs' Motion for Preliminary Injunction").)  In their arguments in favor of a preliminary injunction, Plaintiffs made no effort to dispute any of these facts.

## IV.   THE ALLEGATIONS IN THE AMENDED COMPLAINT

### A.   The Plaintiffs

Plaintiffs consist of "an unincorporated association based in Oakland, California" called the Voting Rights Defense Project, the American Independent party, and two registered San Francisco voters—Suzanne Bushnell and Clara Daims.  Compl., ¶¶ 13-16.  With regard to Ms. Bushnell, the Complaint alleges she has been injured

> due to the failure of the Defendants to comply with the mandatory notice provisions set forth above. She has "informational standing" due to these omissions by the Defendants, and she is entitled to relief designed to restore her to the situation she would have been in if this information was not denied to her. She is uncertain whether she will be able to obtain a Presidential party ballot for Bernie Sanders if she becomes a no party preference voter.

*See id.* ¶ 18.  Similarly, with regard to Ms. Daims, the Complaint alleges:

> As a no party preference voter in San Francisco and the state of California, she has been injured due to the failure of the Defendants to comply with the mandatory notice provisions set forth above. She has "informational standing" due to these omissions by the Defendants, and she is entitled to relief designed to restore her to the situation she would have been in if this information was not denied to her. She is uncertain whether she will be able to obtain a Presidential party ballot for Bernie Sanders if she remains a no party preference voter.

*See id.* ¶ 19.

### B.   The Causes of Action

#### 1.   First Cause of Action: Voting Rights Act—52 U.S.C. § 10101(A)

Plaintiffs allege that "Defendants, acting under color of state law, applied different standards, practices, or procedures in determining whether party voters would be given voter informational rights than were applied to no party preference voters."  *See id.* ¶ 23.  The Complaint does little to elucidate the "standards, practices, or procedures" to which the latter phrase is referring.  Plaintiffs seem to be relying on Defendants' alleged "failure to inform NPP voters . . . of their right to obtain a 'crossover ballot' and to vote in the Presidential primary" and "the failure to inform party-affiliated voters of their right to re-register as no party preference voters and still receive the Presidential primary ballots of the Democratic, American Independent, and Libertarian parties."  *See id.* ¶ 3.  The Complaint also refers generally to Defendants' alleged practice of treating "voters in a county" different from "other voters in the county."  *See id.* ¶ 6.

1

2.      **Second Cause of Action: Voting Rights Act—52 U.S.C. § 10101(B)**

2

According to the Complaint, "[c]ertain Plaintiffs – or the individuals that they represent – are

3

in imminent danger of being denied the right to vote in the Presidential primary election because of the

4

errors and omissions contained in the mandatory notices containing crucial information necessary in

5

order to obtain the ballot.  These errors or omissions are not material in determining whether these

6

individuals are qualified under State law to vote in the June 2016 Presidential primary election."  *See*

7

*id.* ¶ 27.  There are two alleged "errors or omissions" identified in the Complaint.  *See id.* ¶¶ 8-11.

8

The first is on the Department's online vote-by-mail application, which, according to the

9

Complaint, does not provide to all voters the statement in Elections Code Section 3006(c)—"I have

10

declined to disclose a preference for a qualified political party."  In other words, Plaintiffs allege that

11

the Department violated the Voting Rights Act by failing to tell voters who *have* disclosed a

12

preference for a qualified political party that that they "have declined to disclose a preference for a

13

qualified political party."  Compl. ¶ 8.  The second alleged omission is similar to the first.  The

14

Complaint alleges that the back cover of the VIP should have informed *all* voters, including those who

15

*have* disclosed a preference for a qualified political party that that they "have declined to disclose a

16

preference for a qualified political party."  *See id.* ¶ 9.

17

3.      **Third Cause of Action: First and Fourteenth Amendments**

18

Plaintiffs allege that the Department violated the Constitution by arbitrarily discriminating

19

between NPP and non-NPP voters.  *See id.* ¶ 29.  This alleged discrimination appears to consist of

20

allegedly not informing NPP voters that they can obtain a crossover ballot and allegedly not informing

21

party preference voters that they can change party preference.  *See id.* ¶ 3-5, 9-10.

22

4.      **Fourth Cause of Action: Writ of Mandamus under 28 U.S.C. § 1361**

23

Plaintiffs seek "mandamus pursuant to 28 U.S.C. 1361" for violations of state law.  Compl. ¶¶

24

33-34.  The state laws listed in the Complaint are Elections Code § 3006(c) (requiring mailers to NPP

25

voters who have registered to vote by mail include a crossover ballot request form); Elections Code §

26

3007.7(e) (requiring online vote-by-mail applications to inform NPP voters that they can request a

27

crossover ballot); and Elections Code § 3006(b)(3) (requiring that vote-by-mail application forms tell

28

voters that they can hand deliver the application to the county elections official).  Compl. ¶ 7-11.

C.     The Remedies Sought

The Complaint seeks 11 specific remedies.  Eight of those remedies (Prayers 2-9) seek court orders to prevent certain harms from occurring at the June 7 election.  Specifically, Plaintiffs seek orders requiring the Department to: provide certain information to voters (Prayer 2); have enough ballots (Prayer 3); allow NPP voters to obtain a crossover ballot when voting at a polling (Prayer 4); change its website so voters know they can obtain crossover ballots (Prayer 5); allow NPP voters to write-in the names of presidential primary candidates (Prayer 6); extend the voter registration deadline to allow voters to change party preference (Prayer 7); inform party preference voters that they can switch to NPP (Prayer 8); and issue provisional ballots only if there is no other option (Prayer 9).  The other three remedies sought are declaratory relief (Prayer 1); fees (Prayer 10); and costs (Prayer 11).

## V.     PROCEDURAL HISTORY

Plaintiffs filed their complaint on May 20, 2016, and amended it the same day.  (Docket No. 1; 2.)  Plaintiffs then waited a week to file their motion for preliminary injunction.  (Docket Nos. 12-14, 16-17.)  The Department first appeared in this action on May 31, 2016, opposing Plaintiffs' preliminary injunction motion.  (Docket No. 32.)  On June 1, 2016, the Court held a hearing on Plaintiffs' motion for preliminary injunction, and denied that motion from the bench.  (Docket No. 47.)  The next day, the Court issued an Order setting forth its reasoning for denying the motion.  (Docket No. 46.)  Despite multiple requests from defense counsel, Plaintiffs have refused to dismiss their lawsuit.

## VI.    LEGAL STANDARD

A court may dismiss a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) when "it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations."  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  Dismissal is also proper where the complaint alleges facts that demonstrate that the complaint is barred as a matter of law.  *See Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).  To survive a motion to dismiss, a complaint must state a claim that is facially plausible, that is, "'the non-conclusory factual content,' and

reasonable inferences from that content, must be plausibly suggestive of a claim entitling the Plaintiff

to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

## VII.   ARGUMENT

### A.     This Lawsuit Is Moot Because the Election Has Already Occurred.[4]

"It is the inexorable command of the United States Constitution that the federal courts confine

themselves to actual cases and controversies. See U.S. CONST. art III, § 2, cl. 1." *Gator.com Corp. v.*

*L.L. Bean, Inc.*, 398 F.3d 1125, 1128 (9th Cir. 2005).  Article III requires that an actual controversy

exist at all phases of the litigation. *Protectmarriage.com-Yes on 8 v. Brown*, 752 F.3d 827, 834 (9th

Cir. 2014); *Gator.com*, 398 F.3d at 1128.  Thus, moot claims are not justiciable.  The court "loses its

power to render a decision on the merits of a claim [citation], when [it] can no longer effectively

remedy a 'present controversy' between the parties." *Protectmarriage.com*, 752 F.3d at 834.

Plaintiffs' claims are now moot because the primary election was concluded June 7.  All of

Plaintiffs' allegations are based on events relating to that election.  Compl. ¶¶ 4-5, 7-14, 16, 18-19.

Plaintiffs' alleged injuries and the relief they seek are specific to the election.  There is no justiciable

controversy because the Court is "unable to effectively remedy a present controversy between the

parties where a plaintiff seeks to enjoin an activity that has already occurred, and [the court] cannot

'undo' that action's allegedly harmful effects." *Protectmarriage.com*, 752 F.3d at 834.

### B.     Plaintiffs Lack Standing Because Their Injuries Have Always Been Speculative, and In Any Event, the Action Is Moot Because Both Plaintiffs Who Have Any Alleged Connection to San Francisco Voted in the Democratic Presidential Primary.

Article III requires a plaintiff in federal court to have standing.  *Lujan v. Defenders of Wildlife*,

504 U.S. 555, 561 (1992) (describing standing as "an irreducible constitutional minimum").  To

establish standing, Plaintiffs must show that: (1) they suffered an injury in fact – an invasion of a

legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not

conjectural or hypothetical; (2) there is a causal connection between the injury and the conduct

complained of; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed

---

[4] The two paragraphs in this section are largely identical to those in the Secretary of State's
motion to dismiss, Docket No. 48 at 6.

by a favorable decision.  *Id.* at 560-61 (citations and quotations marks omitted).  Where an allegation of injury is conjectural or hypothetical and not clean-cut and concrete, concepts of standing and ripeness overlap and provide additional ground for dismissing a complaint.  *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010).

Here, the two plaintiffs alleged to have any connection to San Francisco are Suzanne Bushnell and Clara Daims.  The Complaint alleges that Ms. Bushnell, who is a Democrat, was "uncertain" whether she would be able to obtain a Democratic ballot if she became an NPP voter.  Compl. ¶ 18. Not only is this "injury" pure speculation, it is also absurd—if Ms. Bushnell wanted to vote in the Democatic primary, she could have simply remained a Democrat, received her ballot, and voted. Equally speculative is the "injury" of Ms. Daims, an NPP voter who was "uncertain" whether she would be able to vote in the Democratic primary.  Compl. ¶ 19.  But this is not a concrete injury either: if Ms. Daims wished to determine whether she could vote in the Democratic primary, all she had to do was inform the Department of Elections that she wanted to vote in the Democratic primary.  Indeed, as discussed in the next paragraph and footnote 5, she did just that.

These "injuries" are so speculative and baseless that they never satisfied Article III standing requirements.  And even if they ever met that standard, they no longer do.  Ms. Daims and Ms. Bushnell both voted in the Democratic primary, Arntz Dec. ¶ 5,[5] and as such, their claims are moot. *See Protectmarriage.com-Yes on 8,* 752 F.3d at 834.[6]

---

[5] The Department requests that the Court take judicial notice of the fact that Ms. Daims and Ms. Bushnell voted in the Democratic presidential primary at the June 7, 2016 election.  Courts may take judicial notice of facts as part of a motion to dismiss.  *See In re Northpoint Communications Group, Inc., Securities Litigation,* 221 F.Supp.2d at 1094.  "A judicially noticed fact must be one not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  As described in Director Arntz's declaration, the Department maintains a registration database, which includes each voter's voting history.  Arntz Dec. ¶ 4.  Director Arntz checked that database on June 16, 2016 and observed that both Ms. Daims and Ms. Bushnell cast votes in the Democratic presidential primary for the June 7, 2016 election.  *See id.*

[6] The Complaint does not allege that the other two Defendants—the Voting Rights Defense Project and the American Independent Party—suffered any injury.  Even if the Complaint did allege that those Defendants were "injured" by the alleged confusion of NPP voters as to which primary they could vote in, those alleged injuries would be just as speculative as those alleged by Ms. Daims and Ms. Bushnell.

C.     The Causes of Action Fail to State a Claim.

1.     Plaintiffs' Voting Rights Act Claim Under Section 10101(a)(2)(A) Fails Because Voter Registration Is Not At Issue in This Case.

Plaintiffs allege that the Department violated 52 U.S.C. § 10101(a)(2)(A), which states:

> No person acting under color of law shall in determining whether any individual is qualified under State law or laws to vote in any election, apply any standard, practice, or procedure different from the standards, practices, or procedures applied under such law or laws to other individuals within the same county, parish, or similar political subdivision who have been found by State officials to be qualified to vote. . . .

That provision "was designed to eliminate practices that could encumber an individual's ability to register to vote." *Friedman v. Snipes*, 345 F.Supp.2d 1356, 1371 (S.D. Fla. 2004) (citing *Schwier v. Cox*, 340 F.3d 1284, 1297 (11th Cir. 2003). As this Court has already held: "Section 10101(a)(2)(A) concerns voter registration, which is not at issue here." Order at 4.

2.     Plaintiffs' Voting Rights Act Claim Under Section 10101(a)(2)(B) Fails Because The Complaint Fails to Allege a Legally Cognizable Error or Omission on Any Writing Requisite to Voting.

Plaintiffs' claim under Subsection (B)—sometimes referred to as the Voting Rights Act's "materiality provision"—is equally meritless. Originally enacted as part of the Civil Rights Act of 1964, Subsection (B) was a piece of the federal government's effort to enforce voting rights and "counteract state and local government tactics of using, among other things, burdensome registration requirements to disenfranchise African-Americans." *Florida State Conference of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1173 (11th Cir. 2008). Subsection (B) states:

> No person acting under color of law may deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election.

Plaintiffs' Section (B) claim fails because there has been no "error or omission." The alleged omission described in the Complaint is the Department's failure to tell voters who *have* disclosed a preference for a qualified political party that that they *have not* "disclose[d] a preference for a qualified political party." This does not constitute a legally cognizable error or omission within the meaning of the Voting Rights Act because registrars have no legal obligation to make this disclosure, and indeed, doing so would confuse voters. In addition, the alleged error or omission does not occur

on an "application, registration, or other act requisite to voting."  This is because people requesting

crossover ballots have already registered to vote.  As the Secretary of State argues in support of his

motion to dismiss, there is no allegation that the Department rejected any application to register to vote

or attempt to vote.  (Docket No. 48 at 11.)

The Complaint appears to allege that the Department erred within the meaning of Subsection

(B) by failing to tell party preference voters that they can re-register as NPP voters.  Compl. ¶ 3.  Not

only is this supposed error nonsensical—if a party preference voter didn't want to vote in the party's

primary, they could simply choose not to vote in that primary—but Plaintiffs lack standing to assert

this error since they both allege that they wanted to vote in the Democratic primary.  Compl. ¶¶ 18-19.

### 3. Plaintiffs' First and Fourteenth Amendment Claim Fails Because The Department Has Not Burdened Voting Rights.

The Complaint alleges that the Department violated the First Amendment and the Fourteenth

Amendment's Equal Protection Clause.  To assess the constitutionality of election laws, courts apply a

"flexible standard" that weighs the burdens of such regulation against the government's interests in

enacting those laws. *Burdick v. Takushi*, 504 U.S. 428, 434 (1992).  Focusing on "the extent to which

a challenged regulation burdens First and Fourteenth Amendments rights," the Court has applied the

following test:

> . . . when those rights are subjected to severe restrictions, the regulation must be
> narrowly drawn to advance a state interest of compelling importance.  But when
> a state election law provision imposes only reasonable, nondiscriminatory
> restrictions upon the First and Fourteenth Amendment rights of voters, the
> State's important regulatory interests are generally sufficient to justify the
> restrictions.

*Id*. at 434 (quotations and citations omitted).  If the burden is severe, the regulation is subject to strict

scrutiny; if the challenged regulation is reasonable and nondiscriminatory, it may be justified by

important regulatory interests.  The Supreme Court and the Ninth Circuit have consistently applied this

balancing approach in considering First Amendment, Due Process, and Equal Protection challenges to

election laws.  *See Dudum v. Arntz*, 640 F.3d 1098, 1106 n.15 (9th Cir. 2011); *Lemons v. Bradbury*,

538 F.3d 1098, 1103 (9th Cir. 2008).  Courts have occasionally described the test for reasonable,

nondiscriminatory regulations as a "rational basis" test, *Libertarian Party of Washington v. Munro*, 31

F.3d 759, 761 (9th Cir. 1994), under which a plaintiff must demonstrate that the challenged regulation

1  is "not rationally related to a legitimate state interest."  *Arizona Libertarian Party v. Reagan*, 798 F.3d
2  723, 733-34 (9th Cir. 2015).

3          Applying this standard, the courts have upheld a myriad of election regulations as reasonable
4  and non-discriminatory, even where there is a significant possibility that they would burden voters.
5  *See, e.g., Crawford v. Marion County Election Board*, 553 U.S. 181, 185, 202-03 (2008) (plurality
6  opinion) (voter identification); *Rosario v. Rockefeller*, 410 U.S. 752, 760-62 (1973) (advance
7  enrollment requirement for party primary elections); *Burns v. Fortson*, 410 U.S. 686, 686-87 (1973)
8  (requirement that voters register at least 50 days prior to election); *Marston v. Lewis*, 410 U.S. 679,
9  680-81 (1973) (requirement that voters reside in jurisdiction for 50 days prior to registration); *see also*
10  *Ayers-Schaffner v. DiStefano*, 37 F.3d 726, 729 n.8 (1st Cir. 1994) ("It is, of course, well established
11  that states may restrict the voting privilege through residency and other requirements.").

12          Plaintiffs' constitutional claims fail for the reasons already articulated by the Court: "Here, the
13  burden on no-party-preference voters, is slight, if it exists at all.  Voters must read the materials
14  provided to them to understand their rights; only some counties will spoonfeed the information.  The
15  government's interests in arranging for an orderly and fair primary, avoiding voter confusion by
16  providing *too much* information, and ensuring that voters can receive their ballots in a timely manner
17  all plainly justify defendants' conduct."  Order at 4.

18          This ruling is equally applicable in the context of a motion to dismiss.  The Complaint
19  incorporates by reference the Voter Information Pamphlet which, among other things, clearly explains
20  all of the relevant issues in this case, including informing NPP voters that they can obtain a crossover
21  ballot for one of three primaries and informing party preference voters of their right to change their
22  party preference.  As a matter of law, there was no burden on NPP voters or any other voters.  The
23  Department's decision to provide this information to voters—and to not provide the additional,
24  irrelevant information that Plaintiffs demand—was motivated by the legitimate goal of avoiding voter
25  confusion.  Similarly, the Department's online vote-by-mail application did not burden voting rights
26  and was justified by a reasonable governmental interest.  The Department appropriately declined to tell
27  party preference voters that they had not disclosed a party preference.  This decision avoided
28  confusion and, far from burdening voting rights, helped realize them.

At a more general level, there are no cases of which the Department is aware holding that an elections official violates the First or Fourteenth Amendments by failing to provide all voters with identical information.  In support of their preliminary injunction motion, Plaintiffs relied exclusively on one case—*Griffin v. Burns*, 431 F.Supp. 1361, 1363 (Dist. of R.I., May 17, 1977)—but that case is not even remotely apposite.  There, the plaintiffs were absentee voters whose ballots had been rejected following a ruling by the Rhode Island Supreme Court that "there is no constitutional or statutory basis for allowing absentee and shut-in voters to cast their votes in a primary election." *Id.* (quoting *McCormick v. State Board of Elections*, 374 A.2d 116 (R.I. 1977)).  The district court held that categorically rejecting absentee ballots while accepting ballots cast at the polling place violated the Equal Protection Clause.  *Id.*  This case is nothing like *Griffin*.  The Department has complied fully with the law, has appropriately informed voters of their rights, and has not categorically rejected vote-by-mail ballots.

### 4.    Plaintiffs' Request for a Writ of Mandamus Fails for Multiple Reasons.

The Court has already ruled that Plaintiffs' claim for a writ of mandamus is meritless, and the Court's reasoning is equally applicable here:  "Plaintiffs do not assert independent claims based on violations of state law but rather seek a writ of mandamus under federal law compelling defendants to carry out certain alleged duties under state law.  Plaintiffs cite Section 1361 of Title 28 of the United States Code as the authority for that relief, but that provision only grants a district court authority to compel 'an officer or employee of the United States or any agency thereof to perform a duty . . . .' Defendants are all state and local officials, so Section 1361 does not apply."  Order at 4.

The Court's ruling is consistent with applicable caselaw.  "[F]ederal district courts are without power to issue mandamus to direct state courts, state judicial officers, or other state officials in the performance of their duties.  A petition for a writ of mandamus to compel a state court or official to take or refrain from some action is frivolous as a matter of law." *Todd v. McElhany*, No. CIV S-11-2346 LKK, 2011 WL 5526464, at *2 (E.D. Cal. Nov. 14, 2011) (citing, inter alia, *Demos v. U.S. District Court*, 925 F.2d 1160, 1161 (9th Cir. 1991), and *Clark v. Washington*, 366 F.2d 678, 681 (9th Cir.1966)); *Barber v. Beard*, 2015 WL 506254, at *6 (S.D. Cal., Feb. 5, 2015) ("But under the plain language of [28 U.S.C. § 1361], federal district courts do not have mandamus jurisdiction over state

officials."); *Ciacci v. Hawaii Government*, 2012 WL 6697569, at *2 (D. Hawaii, Dec. 24, 2012) ("28 U.S.C. § 1361 provides district courts with jurisdiction in the nature of mandamus to compel officers or employees of the United States—not state agencies or actors like those named as Defendants in this action—to perform a duty owed to a plaintiff."); *Newton v. Poindexter*, 578 F.Supp. 277, 279 (E.D. Cal., Jan. 18, 1984) (holding that federal courts cannot compel action by state officials under 28 U.S.C. § 1361).

There is an additional reason that Plaintiffs' claim under Section 1361 fails. As this Court held in its Order denying Plaintiffs' motion for preliminary injunction: "[I]t is an abuse of discretion for a district court to issue an injunction that requires state officials to do anything more than what is required by federal constitutional or statutory law. See *Trueblood v. Washington State Dept. of Soc. and Health Services*, No. 15-35462, 2016 WL 2610233, at *7 (9th Cir. May 6, 2016) (citing *Katie A., ex rel. Ludin v. Los Angeles Cnty.*, 481 F.3d 1150, 1155 (9th Cir. 2007))." Order at 4-5. That authority is equally applicable in the context of a Rule 12(b)(6) motion.

Even if the Court could reach the merits of Plaintiffs' state law claims, they are meritless. *First*, according to Plaintiffs, the Department's online vote-by-mail application feature violates Elections Code Sections 3006(c) and 3007.7(e) by failing to tell party preference voters that they have not disclosed a party preference (despite the fact that they have, in fact, disclosed a party preference). Plaintiffs' argument ignores the fact that the Department's online vote-by-mail application feature is two-step process, and though the first page does not include the language from Section 3006(c), the second page does. As described above, once a voter inputs his or her house number, zip code, and date of birth, the website determines whether that person is an NPP voter. Arntz Dec. ¶ 2, Ex. A. If so, the next page provides the voter with the information required by Section 3006(c) and includes a link to a vote-by-mail application that includes the language required by Section 3006(c). *See id.* ¶ 2, Ex. B-C.

*Second*, the Complaint alleges that the Department violated Elections Code Section 3006 because the back cover of the VIP sent to NPP voters contains the Section 3006(c) language but the back cover of the VIP sent to party preference voters does not. But again, it is not reasonable to construe Section 3006(c) to mean that voters who *have* disclosed a preference for a qualified political

party must receive a statement saying: "I have declined to disclose a preference for a qualified political party."

*Third*, the Complaint alleges that the Department has not properly notified people registering to vote by mail that they may personally deliver their application to the Department in City Hall.  But when an NPP voter fills out an application to vote by mail on the Department's website, the website states: "You may mail, <u>deliver</u> or fax the form to the address or fax number listed on the application." Arntz Dec., Ex. B (emphasis added).  In addition, the application itself states, "<u>Deliver</u>, mail, or fax the completed application to the address or fax number listed below."  *See id.*, Ex. C.[7]  (emphasis added). That documents can be hand delivered to the Department is also included throughout the VIP.  *See id.*, Ex. D.

*Finally*, to the extent Plaintiffs claim that the Department violated state law by not offering crossover ballots to NPP voters, this claim fails because, as the Court has already ruled: "Contrary to plaintiffs, however, state law does not require defendants to affirmatively inform no-party-preference voters of their rights to obtain a crossover ballot at the polling place.  Section 13102(b) of the California Elections Code provides, '[a]t partisan primary elections, each voter not registered disclosing a preference with any one of the political parties participating in an election shall be furnished only a nonpartisan ballot, unless he or she requests a ballot of a political party' that has authorized crossover ballots.  Thus, the plain language of the statute contemplates that the voter would affirmatively request the crossover ballot."  Order at 5.

## CONCLUSION

For the foregoing reasons, the Court should grant the motion to dismiss without leave to amend, as the flaws described above are fatal and cannot be cured through amendment.

Dated:  June 20, 2016                                   By:     /s/*Joshua S. White*
                                                                        JOSHUA S. WHITE, Attorneys for JOHN ARNTZ

---

[7] As noted above, the Complaint contains a link to the Department's online vote-by-mail application.  Compl. ¶ 8.  For NPP voters, the second page of that application (which appears after they have entered their house number, zip code, and date of birth) includes a link to a form to request a crossover ballot.  Arntz Dec. ¶ 2; Ex. B, C.  The Court should consider this form as part of the instant motion to dismiss both because it is referenced in the Complaint (in paragraphs 8 and 11), and because it satisfies the standard for a judicially noticeable document under Federal Rule of Evidence 201(b). The contents of the form are not subject to reasonable dispute and they are capable of accurate and ready determination simply looking at the website.  Arntz Dec. ¶ 2; Ex. B, C.