DENNIS J. HERRERA, State Bar #139669
City Attorney
RONALD D. FLYNN, State Bar #184186
Chief Deputy City Attorney
JON GIVNER, State Bar #208000
ANDREW SHEN, State Bar #232499
JOSHUA S. WHITE, State Bar #237223
Deputy City Attorneys
1 Dr. Carlton B. Goodlett Place
City Hall, Room 234
San Francisco, California 94102-4682
Telephone:     (415) 554-4661
Facsimile:     (415) 554-4699
E-Mail:        joshua.white@sfgov.org

Attorneys for Defendant
JOHN ARNTZ, in his official capacity as
Director of the San Francisco Department of
Elections

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VOTING RIGHTS DEFENSE PROJECT, AMERICAN INDEPENDENCE PARTY, CLARA DAIMS, and SUZANNE BUSHNELL,<br><br>Plaintiffs,<br><br>vs.<br><br>ALEX PADILLA, in his official capacity as Secretary of State and an indispensable party, TIM DEPUIS, in his official capacity as chief of the Alameda County Registrar of Voters, JOHN ARNTZ, in his official capacity as Director of the San Francisco Board of Elections, and DOES I–X,<br><br>Defendants. | Case No. 16-cv-02739-WHA<br><br>**SAN FRANCISCO DIRECTOR OF ELECTIONS JOHN ARNTZ'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Hearing Date:   August 18, 2016<br>Time:           8:00 a.m.<br>Judge:          Hon. William H. Alsup<br>Place:          Courtroom 8, 19th Floor |

S.F. Dept. of Elections' Reply iso Mot. to Dismiss
Case No. 16-CV-2739-WHA
n:\ethics\li2016\161255\01118139.docx

Plaintiffs ignore virtually all of the arguments in the Department of Elections' ("Department") motion to dismiss. For instance, Plaintiffs do not address the fact that this case is moot because the June 7, 2016 election has already occurred; that to the extent Plaintiffs ever had standing, they no longer do because Suzanne Bushnell and Clara Daims have voted in the Democratic presidential primary election; and that this case is not ripe for the 2020 election because there is no way to know now whether a political party will open its presidential primary to No Party Preference ("NPP") voters, and even if a party did so, that the Department's practices and procedures would be the same in four years as they were in June 2016. In lieu of rebutting or even attempting to rebut those arguments, Plaintiffs recycle the same allegations that the Court has already rejected and the Department's motion to dismiss has already refuted. Indeed, much of Plaintiffs' brief consists of paragraphs that have been copy-pasted verbatim from the Complaint and Plaintiffs' motion for preliminary injunction. The Court should dismiss this lawsuit without leave to amend.

**I.   PLAINTIFFS HAVE WAIVED ALL ARGUMENTS REGARDING STANDING AND MOOTNESS.**

A party's failure to address an argument raised in a motion to dismiss constitutes a waiver of that issue. *See United States v. McEnry*, 659 F.3d 893, 902 (9th Cir. 2011) (where an argument is available but not raised, it is waived); *United States v. Cobb*, No. 2:14-CR-00194-APG-NJ, 2015 WL 518543, at *9 (D. Nev., Feb. 9, 2015); *Hansen v. Long*, 2014 WL 3435871, *14 (C.D. Cal., Jan. 28, 2014) (failure to address argument is a concession that it is correct); *In re Online DVD Rental Antitrust Litig*., No. 09–2029 PJH, 2011 WL 5883772, at *12 (N.D. Cal., Nov. 23, 2011) (absent unusual circumstances, failure to respond to argument on merits "viewed as grounds for waiver or concession of the argument"); *Qureshi v. Countrywide Home Loans, Inc*., No. 09–4198, 2010 WL 841669, at *6 n. 2 (N.D. Cal., Mar. 10, 2010) (holding that the plaintiff abandoned claims by failing to address arguments against them in a motion to dismiss); *Sportscare of America, P.C. v. Multiplan, Inc.*, No. 2:10–4414, 2011 WL 589955, at *1 (D.N.J., Feb. 10, 2011) ("In most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.").

1    Plaintiffs have failed to respond to the Department's arguments regarding the Complaint's
2    Article III deficiencies.  Specifically, Plaintiffs have not contested that: 1) they never had standing
3    because their alleged confusion about the election does not constitute a cognizable injury; 2) to the
4    extent Plaintiffs ever had standing, they no longer do because they voted in the Democratic
5    presidential primary; and 3) this case is moot because the election has already occurred.  Docket No.
6    51 at 8-9.  Indeed, the words "standing" and "moot" do not even appear in Plaintiffs' brief, nor does
7    "Article III."  Because Plaintiffs have conceded that they have no standing and that this case is moot,
8    the Court should dismiss it without leave to amend.

**II.     THIS CASE IS NOT RIPE FOR THE JUNE 2020 ELECTION.**

Plaintiffs argue that they should be allowed to amend their Complaint so that "the discriminatory treatment of the NPPs will [not] be repeated in 2020."  Plaintiffs' Opposition to Motions to Dismiss ("Opp.") at 1.  For several reasons, this lone, conclusory statement does not make the case ripe.  First, there has been no "discriminatory treatment of the NPPs" for the reasons explained in the Department's motion to dismiss, none of which Plaintiffs have even attempted to rebut in their opposition.  Docket No. 51 at 3-15.

Second, even if there had been discriminatory treatment in June 2016, this case is not ripe to remedy a hypothetical harm in 2020.  "Ripeness prevents the court from deciding abstract or theoretical questions which have no concrete impact on the parties."  *State of California v. Federal Energy Reg. Comm'n*, 966 F.2d 1541, 1562 (9th Cir. 1992); *Jacobus v. Alaska*, 338 F.3d 1095, 1104 (9th Cir. 2003) (requirement of ripeness ensures that issues are definite and concrete, not hypothetical or abstract); *Watts v. Petrovsky*, 757 F.2d 964 (8th Cir.1985) (speculative claim was not ripe for review); *West v. Sec. of the Dept. of Transp.*, 206 F.3d 920, 924 (9th Cir. 2000) (courts avoid advisory opinions on abstract propositions of law).  Here, it is pure speculation whether, nearly four years from now, a political party will choose to allow NPP voters to vote in their primary.  California law allows political parties to make that determination before each primary election by providing "written notice . . . to the Secretary of State not later than the 135th day prior" to the election.  *See* Cal. Elections Code § 13102(c).  Even if it was possible to know now what political parties may do in four years, and even if the Department's procedures before the June 7, 2016 election were discriminatory (which they were

not), it offends Article III to allow Plaintiffs to sue the Department now for practices and procedures that may or may not be implemented more than a thousand days from now.

### III.     PLAINTIFFS HAVE WAIVED THEIR CLAIM UNDER 28 U.S.C. § 1361.

Defendants' motions to dismiss, as well as the Court's Order denying Plaintiffs' motion for preliminary injunction (Docket No. 46 ("Order")), explained that the exclusive statute upon which Plaintiffs' rely to seek a writ of mandamus—28 U.S.C. § 1361—is inapplicable to local officials. Plaintiffs' opposition makes no arguments to the contrary, and thus, Plaintiffs have waived all state law claims.

Despite this waiver, Plaintiffs persist in arguing that the Department has violated provisions of the Elections Code. Specifically, Plaintiffs claim that Section 3006(c) obligated the Department to inform voters who *have* disclosed a preference for a qualified political party that that they *have not* "disclose[d] a preference for a qualified political party." Opp. at 3-4, 14. Plaintiffs also claim that poll workers must be trained to inform NPP voters that they can vote in the primary of a party that has opened its primary to NPP voters. Opp. at 8. Plaintiffs further claim that the Department does not inform voters that they can hand-deliver vote-by-mail applications to the Department. Opp. at 5. Not only are these arguments meritless for the reasons set forth in Defendants' motions to dismiss and the Court's Order denying Plaintiffs' motion for preliminary injunction,[1] but there is no statutory basis in the Complaint or Plaintiffs' opposition for vindicating any alleged violations of state law.

### IV.     PLAINTIFFS' VOTING RIGHTS ACT CLAIM UNDER SECTION 10101(a)(2)(A) FAILS.

Plaintiffs make three arguments in support of their Voting Rights Act Subsection (A) claim. Plaintiffs state, without any support, that "there is nothing in the statute that limits this cause of action to voter registration." Opp. at 12. Plaintiffs do not cite—and the Department is not aware of—any

---

[1] Specifically, it is absurd to construe Elections Code Section 3006(c) as requiring registrars to inform voters who *have* disclosed a party preference that they *have not* disclosed a party preference. Regarding the training of poll workers, this Court has already held that Elections Code § 13102(b) does not require poll workers to inform NPP voters that they can obtain a crossover ballot, but rather, that provision "contemplates that the voter would affirmatively request the crossover ballot." Order at 5. Finally, the Department informs voters that they can hand deliver vote-by-mail applications to the Department. Docket No. 51 at 15.

cases involving a Subsection (A) claim that does not relate to voter registration. Indeed, the district court in *Friedman v. Snipes*, 345 F.Supp.2d 1356, 1371 (S.D. Fla. 2004), held that Subsection (A) "was designed to eliminate practices that could encumber an individual's ability to register to vote." (citing *Schwier v. Cox*, 340 F.3d 1284, 1297 (11th Cir. 2003)). Ironically, Plaintiffs' own brief in support of their preliminary injunction motion states that *Friedman* "offers the best guidance in this situation." Docket No. 29 at 20. Because "voter registration . . . is not at issue here," Order at 4, the Court should dismiss Plaintiffs' Subsection (A) claim.

But even if Subsection (A) could be applied to contexts other than voter registration, Plaintiffs' claim still fails. Plaintiffs assert that, "The facts here illustrate a long series of intra-county and inter-county practices where some counties provide the necessary NPP information to NPP voters and some do not; some provide the requisite vote by mail information to all voters and some do not; and some poll workers provide the information needed to NPP voters and some do not. This is an elementary violation of the statute." Opp. at 12. Regarding the supposed "inter-county practices," what a registrar in a different county tells its voters bears no relevance to the information that the Department provided to San Francisco voters, or whether the Department complied with its legal obligations.

Regarding the supposedly differential treatment of NPP and party preference voters, Subsection (A) does not require that every single voter be provided with identical information at the identical moment. In *Gonzalez v. State of Arizona*, 2006 WL 3627297, at *8 (D. Ariz., Sept. 11, 2006), an Arizona law required different types of identification depending on whether an individual is registering to vote or verifying identity on election day. *Id.* at *1. The Court upheld the law, noting: "It is not a violation of subsection (A) for a state to apply different standards to two inherently different procedures." *Id.* at *8. Similarly, nothing in Subsection (A) requires the Department to inform voters who have disclosed a party preference that they have not disclosed a party preference. Those voters are in an "inherently different" position from NPP voters, so they should not receive the same notice from the Department.

## V. PLAINTIFFS' VOTING RIGHTS ACT CLAIM UNDER SECTION 10101(a)(2)(B) FAILS.

Plaintiffs' response as to why their Subsection (B) claim should survive is similarly flawed and inconsistent with the Court's conclusion in its preliminary injunction Order. Plaintiffs' brief simply repeats verbatim the allegations in the Complaint, which are also identical to the arguments made in support of Plaintiffs' preliminary injunction motion. *Compare* Docket No. 2 at ¶ 27 and Docket No. 29 at 20 to Opp. at 13-14. The only difference is that Plaintiffs now acknowledge that "case law is somewhat disfavorable based on the facts at hand," and rely exclusively upon "the 9th circuit case, Churches." Opp. at 15.

In fact, the Ninth Circuit has not decided a Voting Rights Act case with "Churches" in the title, but a district court in Washington has. In *Washington Ass'n of Churches v. Reed*, 492 F.Supp.2d 1264, 1266 (W.D. Wash., Aug. 1, 2006), at issue was a state law that "essentially requires the state to match a potential voter's name to either the Social Security Administration database or to the Department of Licensing database before allowing that person to register to vote." The district court found that the law likely violated Subsection (B) because the state "failed to demonstrate how an error or omission that prevents Washington State from matching an applicant's information is material in determining whether that person is qualified to vote under Washington law." *Id.* at 1270.

The present case is nothing like *Churches*. Unlike in *Churches*, the alleged "error or omission" alleged here—failing to tell voters who *have* disclosed a preference for a qualified political party that that they *have not* "disclose[d] a preference for a qualified political party," *see* Cal. Elections Code § 3006(c)—did not deny or otherwise affect anyone's right to vote. Indeed, the Department's decision not to provide such a misleading notice to party preference voters was entirely appropriate because providing such information would only have confused them. Further, unlike in *Churches*, the alleged "error or omission" did not occur on an "application, registration, or other act requisite to voting," as people requesting crossover ballots have already registered to vote.

## VI. PLAINTIFFS' CONSTITUTIONAL CLAIMS FAIL.

Plaintiffs ignore all of the Department's arguments as to why the Complaint's constitutional claims are meritless. In lieu of even acknowledging the existence of this portion of the Department's brief or attempting to argue why the Court's conclusions in its Order denying the preliminary

injunction do not apply here, Plaintiffs have copy-pasted seven paragraphs from their Complaint and their preliminary injunction motion. Compare Docket No. 2, ¶¶ 29-30 and Docket No. 29 at 20-23 with Opp. at 18-19. By failing to address the Department's arguments, Plaintiffs have waived any argument that their constitutional claims should not be dismissed. Even without a waiver, Plaintiffs' constitutional claims fail for the reasons articulated in the Court's Order and the Department's motion to dismiss. Order at 3-4; Docket No. 51 at 11-13.

**VII. THE COURT SHOULD REJECT PLAINTIFFS' REQUEST TO AMEND THEIR COMPLAINT "TO CONFORM TO PROOF."**

Plaintiffs ask the Court to allow them to amend their Complaint to "conform to proof." This request lacks legal and factual basis. Federal Rule of Civil Procedure 15(b) sets forth the circumstances under which the Court may allow a party to amend its complaint to conform to the evidence presented "during and after trial." Fed. R. Civ. P. 15(b). By its plain language, Rule 15(b) has no application where, as here, there has been no trial.

Even if Rule 15(b) had some applicability before trial, Plaintiffs' request should be denied for multiple reasons. *First*, the "proof" Plaintiffs rely upon does not support any of their claims. That proof appears to consist mainly of two documents that the Court has already considered—the Department's ballot replacement request form and a vote-by-mail application sent to VBM voters. Opp. at 2-3, citing Exhibits 11-A and 11-B to the Dec. of James Roguski. Neither of these documents is misleading or supports any alleged violation of law, for the reasons explained in the Department's opposition to Plaintiffs' motion for preliminary injunction (Docket No. 33 at 10-13) and the Declaration of John Arntz in opposition to Plaintiffs' motion for preliminary injunction (Docket No. 35 at ¶¶ 29-36). Indeed, the Court has already rejected Plaintiffs' arguments that these documents violate any of the laws cited in Plaintiffs' Complaint. There is no reason to allow Plaintiffs to amend their Complaint to relitigate the same issues that the Court has already ruled on.

Plaintiffs' "proof" may also consist of allegations and articles about the conduct of registrars who have not been sued in this case; supposed discrepancies between how different counties' registrars chose to provide information to voters; and supposed voters confusion in other counties. Opp. at 5-9, 12, 13, 16, 18. But none of these allegations or articles bear any relevance to whether the

1  Department complied with the law in informing San Francisco voters about the issues in this case.

2  And in any event, as the Court has already held, the fact that counties may have different approaches

3  does not violate the law.  Order at 4 ("Voters must read the materials provided to them to understand

4  their rights; only some counties will spoonfeed the information. The government's interests in

5  arranging for an orderly and fair primary, avoiding voter confusion by providing too much

6  information, and ensuring that voters can receive their ballots in a timely manner all plainly justify

7  defendants' conduct.").

## CONCLUSION

The Court should grant the motion to dismiss without leave to amend.

Dated: July 5, 2016

            DENNIS J. HERRERA
            City Attorney
            RONALD D. FLYNN
            Chief Deputy City Attorney
            JOSHUA S. WHITE
            Deputy City Attorney

By:    /s/*Joshua S. White*
       JOSHUA S. WHITE

Attorneys for Defendant
JOHN ARNTZ, in his official capacity as Director of the San Francisco Department of Elections

S.F. Dept. of Elections' Reply iso Mot. to Dismiss
Case No. 16-CV-2739-WHA
7
n:\ethics\li2016\161255\01118139.docx